UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO **00-6309**

18 U.S.C. 1962(d)
18 U.S.C. 1963
18 U.S.C. 1955
18 U.S.C. 1956
18 U.S.C. 1957
18 U.S.C. 1511
18 U.S.C. 894
18 U.S.C. 892
18 U.S.C. 2

UNITED STATES OF AMERICA,          )
        Plaintiff,          )
                     )
v.          )
                     )
STEVE RAFFA,          )
    aka "Uncle Steve,"          )
JOHN MAMONE,          )
    aka "Big John,"          )
FRED MORGENSTERN,          )
DAVID MORGENSTERN,          )
JOSEPH SILVESTRI,          )
JULIUS BRUCE CHIUSANO,          )
MICHAEL BUCCINNA,          )
    aka "Mikey Boots,"          )
JEFFREY BASS,          )
    aka "the Professor,"          )
FREDERICK SCAROLA,          )
GIUSEPPE BELLITTO,          )
    aka "Joe Baldy,"          )
MARK CARATTINI,          )
PAUL DIFILIPPI,          )
ANSON KLINGER,          )
JOSEPH SPITALERI,          )
CHARLES CLAY,          )
PEGGY PRESTON,          )
MARK WEISS,          )
JACOLYN BARUCH, and          )
DAVID BELL          )
        Defendants.          )
_____ )



**INDICTMENT**

The Grand Jury charges that:



## GENERAL ALLEGATIONS

1.    At times material to this indictment, Cash 96 Corporation was a Florida corporation, whose business was located at 3591 North Andrews Ave., Oakland Park, Florida. Cash 96 Corporation was engaged in the check cashing business, as well as in assisting the enterprise in the laundering of substantial proceeds derived from the commission of repeated criminal activity.

2.    At times material to this indictment, Check Cashing Unlimited, Inc., d/b/a Check Cashing Unlimited, was a Florida corporation, whose business was located at 5701 Margate Blvd., Margate, Florida. Check Cashing Unlimited was engaged in the check cashing business, as well as in assisting the enterprise in the laundering of substantial proceeds derived from the commission of repeated criminal activity.

3.    At times material to this indictment, Gold Coast Check Cashing, Inc. was a Florida corporation, whose businesses were located at 5701 Margate Blvd., Margate, Florida, and at 3591 North Andrews Ave., Oakland Park, Florida, among other locations. Gold Coast Check Cashing, Inc. was engaged in the check cashing business, as well as in assisting the enterprise in the laundering of substantial proceeds derived from the commission of repeated criminal activity.

4.    At all times material to this indictment, Checking Exchange, Inc., d/b/a Check Cashing Unlimited II, was a Florida corporation, whose business was located at 2603 N. Dixie Highway, Wilton Manors, Florida. Check Cashing Unlimited II was engaged in the check cashing business, as well as in assisting the enterprise

2

in the laundering of substantial proceeds derived from the commission of several criminal acts.

5. At times material to this indictment, Akel of Boca Raton, Inc., d/b/a Akel's Market, was a Florida corporation, whose business was located at 504 N.W. 6th Street, Pompano Beach, Florida. Akel's Market was engaged in the check cashing business, as well as in assisting the enterprise in the laundering of substantial proceeds derived from the commission of several criminal acts.

6. At times material to this indictment, Sanjo Center, Inc., was a Florida corporation, whose business was located at 4137 N.W. 135th Street, Opa-Locka, Florida. Sanjo Center was engaged in rental management.

7. At times material to this indictment, Gateway Transportation Services, Inc., was a Florida corporation, whose business was located at 7770 W. Oakland Park Blvd., Sunrise, Florida. Gateway Transportation Services was engaged in arranging for transportation of goods throughout the United States, as well as providing telephones and vehicles to members of the criminal enterprise to facilitate the commission of several racketeering acts.

8. At times material to this Indictment, International Mercantile Corporation, a/k/a IMC, Ltd., was an entity not registered to do business in the State of Florida. IMC Ltd., was controlled and operated by defendant JOSEPH SPITALERI as part of a telemarketing fraud operation within the Southern District of Florida.

3

## COUNT 1

1.  The General Allegations numbered one (1) through eight (8) inclusively are realleged and incorporated herein by reference.

### INTRODUCTION

At all times relevant to this Indictment:

1.   The members and associates of the Trafficante Organized Crime Family of La Cosa Nostra (hereafter referred to as "the Trafficante Family"), were a criminal organization that operated in the Southern District of Florida, Tampa, Florida, and elsewhere.

2.   The Trafficante Family operated through groups of individuals headed by "captains," who were referred to as "capos" or "skippers." These groups, which were referred to as "crews," and "regimes," consisted of "made" members of the Trafficante Family, who were also referred to as "soldiers," and of non-member criminal associates of the Family.

3.   In the Southern District of Florida, defendant STEVE RAFFA operated and maintained a "crew" for the Trafficante Family that engaged in various criminal acts, including loansharking, extortion, money laundering, and illegal gambling, among other crimes.   The "crew" was directly supervised by defendant JOHN MAMONE who reported directly to defendant STEVE RAFFA.   This "crew" consisted of "made" members of the Trafficante Family and of certain non-member criminal associates of the Family.

4.   The Federal Bureau of Investigation conducted undercover investigations in which cooperating witnesses, who previously had been associated with organized crime groups that operated in the

4

Southern District of Florida and elsewhere, worked in an undercover capacity for the purpose of gathering evidence concerning the criminal activities of the members as described below, as well as others engaged in criminal activities on behalf of other racketeering enterprises.

## THE ENTERPRISE

5.   At all times relevant to this Indictment, in the Southern District of Florida and elsewhere, defendants STEVE RAFFA, JOHN MAMONE, FRED MORGENSTERN, DAVID MORGENSTERN, JOSEPH SILVESTRI, JULIUS BRUCE CHIUSANO, MICHAEL BUCCINNA, JEFFREY BASS, GIUSEPPE BELLITTO, MARK CARATTINI, ANSON KLINGER, JOSEPH SPITALERI, MARK WEISS, JACOLYN BARUCH, and DAVID BELL constituted an enterprise within the meaning of Title 18, United States Code, Section 1961 (4), that is, a group of individuals associated in fact.  The purpose of the enterprise was to enrich its members through various criminal activities, including the making and collecting of extortionate loans, interference of commerce by threats of violence, money laundering, obstruction of state and local law enforcement, the operation of illegal gambling businesses, bank fraud, mail and wire fraud, the sale and receipt of stolen goods, interstate and foreign travel in aid of racketeering, and through the collection of unlawful debt.

## THE CONSPIRACY

6.    From in or about 1995, the exact date being unknown to the Grand Jury, and continuing thereafter up to and including the date of the return of the Indictment, in the Southern District of Florida and elsewhere, the defendants,

STEVE RAFFA,
JOHN MAMONE,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
JULIUS BRUCE CHIUSANO,
MICHAEL BUCCINNA,
JEFFREY BASS,
GIUSEPPE BELLITTO,
MARK CARATTINI,
ANSON KLINGER,
JOSEPH SPITALERI,
MARK WEISS,
JACOLYN BARUCH, and
DAVID BELL,

together with others, being persons employed by and associated with the enterprise described in paragraph 5, of this count, which enterprise engaged in, and the activities of which affected, interstate and foreign commerce, knowingly, willfully and unlawfully did combine, conspire, confederate, and agree together, and with each other, and with persons known and unknown to the Grand Jury, to violate Title 18, United States Code, Section 1962(c), that is, to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise through a pattern of racketeering activity as defined by Title 18, United States Code, Sections 1961(1) and (5) as set forth in paragraph 7 below, and through the collection of unlawful debts as defined by Title 18, United States Code, Section 1961(6), and as set forth in paragraph 8 below.

6

## PATTERN OF RACKETEERING ACTIVITY

7.    The pattern of racketeering activity that the defendants agreed would be committed in the conduct of the affairs of the enterprise consisted of multiple acts involving violations of the following laws:

A.    Sale and receipt of stolen goods, in violation of and indictable under Title 18, United States Code, Section 2315;

B.    Engaging in monetary transactions in property derived from specified unlawful activity and conspiracy to do so, in violation of and indictable under Title 18, United States Code, Sections 1956 and 1957;

C.    Laundering of monetary instruments and conspiracy to do so, in violation of and indictable under Title 18, United States Code, Section 1956;

D.    Conducting, financing, managing, supervising and directing illegal gambling businesses, in violation of and indictable under Title 18, United States Code, Section 1955;

E.    Interstate travel or transportation in aid of racketeering enterprises, in violation of and indictable under Title 18, United States Code, Section 1952;

F.    Obstruction of state and local law enforcement, in violation of and indictable under Title 18, United States Code, Section 1511;

G.    Bank fraud, in violation of and indictable under Title 18, United States Code, Section 1344;

H.    Mail fraud, in violation of and indictable under Title 18, United States Code, Section 1341;

7

I.   Wire fraud, in violation of and indictable under Title 18, United States Code, Section 1343;

J.   Collection of extensions of credit by extortionate means and conspiracy to do so, in violation of and indictable under Title 18, United States Code, Section 894; and,

K.   Making extortionate extensions of credit and conspiracy to do so, in violation of and indictable under Title 18, United States Code, Section 892.

## COLLECTION OF UNLAWFUL DEBT

8.   The collection of unlawful debt through which the defendants and their coconspirators agreed to conduct and participate, directly and indirectly, in the conduct of the affairs of the enterprise consisted of the collection from various individuals of unlawful debts, as that term is defined by Title 18, United States Code, Section 1961(6), to wit: a) a debt which was incurred and contracted in gambling activity and which was incurred in connection with the business of gambling, which activity and business were in violation of the laws of the United States and Florida; and b) debts which were unenforceable under State and Federal law in whole and in part as to principal and interest because of the laws relating to usury and which were incurred in connection with the business of lending money at a rate usurious under State and Federal law, where the usurious rate was at least twice the lawfully enforceable rate.

## MANNER AND MEANS OF THE CONSPIRACY

9.    It was part of the conspiracy that each defendant agreed that a conspirator would commit at least two racketeering acts, or participate in the collection of at least one unlawful debt, in conducting the affairs of the enterprise.

10.    It was further part of the conspiracy that defendants STEVE RAFFA and JOHN MAMONE would supervise and direct members of the conspiracy in the commission of various criminal acts as set forth in paragraph 7, above, for the economic benefit of the members of the enterprise

11.    It was further part of the conspiracy that defendants STEVE RAFFA and JOHN MAMONE would supervise and coordinate the activities of the large-scale illegal gambling business that were operated by defendants JULIUS BRUCE CHIUSANO, MICHAEL BUCCINNA, JEFFREY BASS, GIUSEPPE BELLITTO, MARK CARATTINI, ANSON KLINGER, JACOLYN BARUCH, and other coconspirators for the benefit of the enterprise.

12.    It was further part of the conspiracy that defendants JULIUS BRUCE CHIUSANO, MICHAEL BUCCINNA, JEFFREY BASS, GIUSEPPE BELLITTO, MARK CARATTINI, ANSON KLINGER, JACOLYN BARUCH, and other coconspirators would manage the day-to-day operation of the illegal gambling business on behalf of defendants STEVE RAFFA and JOHN MAMONE, which included the collection of gambling debts, among other activities.

13.    It was further part of the conspiracy that defendants STEVE RAFFA, JOHN MAMONE, GIUSEPPE BELLITTO, MICHAEL BUCCINNA, MARK WEISS, and DAVID BELL would use threats of violence and physical

9

violence in the collection of loanshark and gambling debts from victims of the enterprise.

14. It was further part of the conspiracy that defendant JOHN MAMONE and other persons involved in the illegal gambling business would use a corrupt City of Margate police officer, to obstruct state and federal law enforcement investigations of the illegal gambling business being operated by the enterprise.

15. It was part the conspiracy that defendants STEVE RAFFA, JOHN MAMONE, GIUSEPPE BELLITTO, MARK WEISS, MICHAEL BUCCINNA and other coconspirators would operate a loanshark business that involved making extortionate loans to borrowers and using extortionate means in collecting debts from either borrowers or losing bettors who incurred gambling debts to the enterprise.

16. It was further part of the conspiracy that defendant JOHN MAMONE and other coconspirators would negotiate counterfeit checks through check cashing stores under the control of the enterprise for the purpose of generating profits.

17. It was further part of the conspiracy that defendants JOHN MAMONE, GIUSEPPE BELLITTO and other coconspirators would obtain and sell stolen property for the purpose of generating substantial profits on behalf of the enterprise.

18. It was further part of the conspiracy that defendants STEVE RAFFA, JOHN MAMONE, FRED MORGENSTERN, GIUSEPPE BELLITTO, JULIUS BRUCE CHIUSANO, MICHAEL BUCCINNA, and other coconspirators would supervise and control the business operations of check cashing stores located in South Florida for the purpose of

10

promoting and concealing the criminal activities engaged in by members of the enterprise.

19. It was further part of the conspiracy that defendant MICHAEL BUCCINNA and other coconspirators would act as "straw" owners and/or managers of various check cashing stores for the purpose of concealing the true interests of defendants STEVE RAFFA, JOHN MAMONE, FRED MORGENSTERN, GIUSEPPE BELLITTO, JULIUS BRUCE CHIUSANO and other coconspirators for the benefit of the enterprise.

20. It was further part of the conspiracy that defendants STEVE RAFFA, JOHN MAMONE, FRED MORGENSTERN, GIUSEPPE BELLITTO, JULIUS BRUCE CHIUSANO, MICHAEL BUCCINNA, and MARK WEISS would use check cashing stores controlled by the enterprise as a means of collecting illegal proceeds from loanshark borrowers and losing bettors who were victims of the enterprise.

21. It was further part of the conspiracy that defendant JOSEPH SPITALERI and other conspirators would supervise the operation of telemarketing businesses that engaged in mail and wire fraud for the purpose of enriching members of the enterprise.

22. It was further part of the conspiracy that defendants STEVE RAFFA, JOHN MAMONE, DAVID BELL and other conspirators would provide assistance to defendant JOSEPH SPITALERI in the operation of telemarketing fraud activities.

23. It was further part of the conspiracy that defendants STEVE RAFFA, JOHN MAMONE, MICHAEL BUCCINNA, JULIUS BRUCE CHIUSANO and other conspirators would provide the services of various check cashing stores for the purpose of promoting the operation of and

11

concealment of the illegal proceeds derived from the telemarketing fraud committed by defendant JOSEPH SPITALERI and other persons for the enrichment of the enterprise.

24.   It was further part of the conspiracy that defendants STEVE RAFFA, JOHN MAMONE, FRED MORGENSTERN, DAVID MORGENSTERN, MICHAEL BUCCINNA, JOSEPH SILVESTRI, JULIUS BRUCE CHIUSANO, MARK WEISS and other coconspirators would assist a criminal group operating in South Carolina, which engaged in an investment fraud scheme involving mail and wire fraud in return for a share of the illegal proceeds obtained from investor/victims.

25.   It was further part of the conspiracy that the criminal group from South Carolina would send and transport personal checks in an amount exceeding $30,000,000 in criminally derived property obtained from defrauded investors throughout the United States to defendant JOHN MAMONE, FRED MORGENSTERN, DAVID MORGENSTERN, MICHAEL BUCCINNA and other co-conspirators for the purpose of promoting the investment fraud scheme and concealing the location of the criminally derived proceeds for the benefit of the enterprise.

26.   It was further part of the conspiracy that defendants JOHN MAMONE, FRED MORGENSTERN, DAVID MORGENSTERN, MARK WEISS and other coconspirators would further assist the criminal group from South Carolina by depositing personal checks from victims into accounts maintained by the enterprise's check cashing stores.

27.   It was further part of the conspiracy that defendants FRED MORGENSTERN, DAVID MORGENSTERN and other coconspirators would assist the criminal group from South Carolina by transferring the illegally derived funds through various financial institutions in

12

South Florida to bank accounts in the Bahamas, England and Switzerland. Said defendants were involved in the fraud for the purpose of promoting the investment fraud scheme and concealing the location of the criminally derived proceeds from the victim/investors and law enforcement for the benefit of the enterprise.

28. It was further part of the conspiracy that coconspirators would take all steps necessary to prevent the detection by law enforcement of the criminal activities for the benefit of the enterprise.

All in violation of Title 18, United States Code, Section 1962(d).

## COUNT 2

1. The General Allegations numbered one (1) through eight (8) inclusively are realleged and incorporated herein by reference.

2. From in or about 1995 and continuing thereafter up to and including the date of the return of this Indictment, in the Southern District of Florida and elsewhere, defendants,

STEVE RAFFA,
JOHN MAMONE,
JULIUS BRUCE CHIUSANO,
JEFFREY BASS,
MICHAEL BUCCINNA,
GIUSEPPE BELLITTO,
MARK CARATTINI,
ANSON KLINGER,
CHARLES CLAY, and
JACOLYN BARUCH,

and other persons known and unknown to the Grand Jury, knowingly conducted, financed, managed, supervised, directed, and owned all or part of an illegal gambling business which involved five or more

persons who conducted, financed, managed, supervised, directed, and owned, all or part of such business and which had a gross revenue of two thousand dollars ($2,000) or more on one or more single days and was in substantially continuous operation for a period in excess of thirty days, and which business was in violation of the laws of the State of Florida, Sections 849.26 and other applicable law.

All in violation of Title 18, United States Code, Sections 1955 and 2.

### COUNT 3

1.    The General Allegations numbered one (1) through eight (8) inclusively are realleged and incorporated herein by reference.

2.    From in or about 1999, and continuing thereafter up to and including the date of the filing of this Indictment, in the Southern District of Florida, and elsewhere, the defendants,

STEVE RAFFA,
JOHN MAMONE,
FREDERICK SCAROLA, and
CHARLES CLAY,

unlawfully, willfully and knowingly did combine, conspire, confederate and agree together with each other and with others known and unknown to the Grand Jury to obstruct the enforcement of the criminal laws of the State of Florida, that is, Section 849.26 Florida Statutes and other applicable laws, with the intent to facilitate an illegal gambling business.

3.    At all times during the course of the conspiracy, defendant CHARLES CLAY was an appointed official of the State of

14

Florida, that is, a sworn police officer of the City of Margate, Florida, Police Department.

4.  At all times during the course of the conspiracy, the defendants, STEVE RAFFA, JOHN MAMONE, and FREDERICK SCAROLA and other conspirators conducted, supervised, directed, and owned all or part of an illegal gambling business in Broward County, which said business included but was not limited to bookmaking in violation of the laws of the State of Florida.

5.  At all times during the course of the conspiracy, the illegal gambling business involved five or more persons who conducted, financed, managed, supervised, directed and owned all or part of the business, and the business remained in substantially continuous operation for a period in excess of thirty days.

## OVERT ACTS

In furtherance of the conspiracy and to effect the objects thereof, the defendants and their coconspirators committed in the Southern District of Florida, at least one of the following overt acts, among others.

1.  On or about February 4, 2000, in the Southern District of Florida, defendant FREDERICK SCAROLA advised defendant JOHN MAMONE that defendant CHARLES CLAY had recently learned that the FBI was investigating Gold Coast Check Cashing located in Margate, Florida.

2.  On or about February 4, 2000, in the Southern District of Florida, defendant FREDERICK SCAROLA informed another person that there was a source with the Margate Police Department who warned FREDERICK SCAROLA of an FBI investigation of Gold Coast Check Cashing in Margate, Florida.

3.    On or about February 11, 2000, in the Southern District of Florida, defendant FREDERICK SCAROLA informed another person that based upon information provided by a Margate police officer that members of the illegal gambling business should refrain from visiting Gold Coast Check Cashing in Margate, Florida because the business was under investigation by the FBI.

4.    On February 11, 2000, in the Southern District of Florida, defendant FREDERICK SCAROLA met with defendant CHARLES CLAY at Bobby Rubino's Restaurant in North Lauderdale, Florida.

All in violation of Title 18, United States Code, Section 1511.

## COUNT 4

1.    From in or about 1996 and continuing thereafter up to and including the date of the return of this Indictment, in the Southern District of Florida and elsewhere, the defendants,

STEVE RAFFA,
JOHN MAMONE,
JULIUS BRUCE CHIUSANO,
GIUSEPPE BELLITTO, and
MARK WEISS,

did knowingly conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to make extortionate extensions of credit as defined by Title 18, United States Code, Section 891 to numerous individuals in South Florida.

All in violation of Title 18, United States Code, Section 892(a).

## COUNT 5

1.   From in or about 1996 and continuing thereafter up to and including the date of the return of this Indictment, in the Southern District of Florida and elsewhere, the defendants,

STEVE RAFFA,
JOHN MAMONE,
JULIUS BRUCE CHIUSANO,
MICHAEL BUCCINNA,
GIUSEPPE BELLITTO,
PAUL DIFILIPPI,
MARK WEISS, and
DAVID BELL,

did knowingly conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to participate in the use of extortionate means to collect and attempt to collect extensions of credit as defined by Title 18, United States Code, Section 891 from numerous individuals in South Florida.

All in violation of Title 18, United States Code, Section 894(a)(1).

## COUNT 6

1.   From in or about 1996 and continuing thereafter up to and including the date of the return of this Indictment, in the Southern District of Florida and elsewhere, the defendants,

STEVE RAFFA,
JOHN MAMONE,
FRED MORGENSTERN,
JULIUS BRUCE CHIUSANO,
MICHAEL BUCCINNA,
JEFFREY BASS,
MARK  CARATTINI,
ANSON KLINGER,
PEGGY PRESTON, and
JACOLYN BARUCH,

17

did knowingly conspire, confederate, and agree with each other and
with other persons known and unknown to the Grand Jury to commit
offenses against the United States, that is, to violate Title 18,
United States Code, Sections 1956(a)(1)(A)(i) and (B)(i).

### THE PURPOSE AND OBJECT OF THE CONSPIRACY

2.    It was the purpose and object of the conspiracy: to
knowingly and willfully conduct and attempt to conduct financial
transactions affecting interstate and foreign commerce, that is the
cashing of checks which involved the proceeds of specified unlawful
activity, that is, illegal gambling businesses, in violation of
Title 18, United States Code, Section 1955, and extortionate credit
transactions, in violation of Title 18, United States Code,
Sections 892 and 894; and with the intent to promote the carrying
on of said specified unlawful activities, and knowing the
transactions were designed in whole or in part to conceal and
disguise the nature, location, source, ownership and  control of
the proceeds of said specified unlawful activities and knowing that
the property involved represented the proceeds of some form of
unlawful activity.

All in violation of Title 18, United States Code, Section
1956(h).

### COUNT 7

1.    From in or about 1998, and continuing thereafter up to
and including in or about April, 2000, at Broward County, in the
Southern District of Florida and elsewhere, the defendants,

STEVE RAFFA,
JOHN MAMONE,

18

JULIUS BRUCE CHIUSANO,
MICHAEL BUCCINNA, and
JOSEPH SPITALERI,

did knowingly conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, that is, to violate Title 18, United States Code, Sections 1956(a)(1)(A)(i) and (B)(i) and Section 1957.

## THE PURPOSE AND OBJECT OF THE CONSPIRACY

2.    It was the purpose and object of the conspiracy:

a.    to knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, that is the cashing of checks which involved the proceeds of specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of said specified unlawful activities, and knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activities and knowing that the property involved represented the proceeds of some form of unlawful activity; and,

b.    to knowingly and willfully engage and attempt to engage in monetary transactions affecting interstate and foreign commerce in criminally derived property that was of a value greater than $10,000, which was from specified unlawful activity that is described in paragraph two (2)(a), above, which is incorporated herein by reference.

19

All in violation of Title 18, United States Code, Section 1956(h).

## COUNTS 8-13

1.    On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida and elsewhere, the defendants,

STEVE RAFFA,
JOHN MAMONE,
JULIUS BRUCE CHIUSANO,
MICHAEL BUCCINNA, and
JOSEPH SPITALERI,

knowing that the property involved represented the proceeds of some form of unlawful activity, did knowingly and willfully conduct and attempt to conduct financial transactions and did aid and abet, counsel, command, induce, and cause the conducting of financial transactions in various amounts affecting interstate and foreign commerce, as described below, each transaction occurring on or about the date indicated and constituting a separate Count of the Indictment, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, as set forth in Counts 8 through 13.   By these financial transactions, the defendants intended to promote the carrying on of said specified unlawful activities, and knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and  control of the proceeds of said specified unlawful activities.

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|------------------------|
| 8 | November 10, 1999 | $30,000.00 | Negotiation of check Number #002567209, payable to International Mercantile Corp. drawn on Account #1890300139 at the Huntington Bank at Akel's Market. |
| 9 | November 10, 1999 | $20,000.00 | Negotiation of check Number #002567210 payable to International Mercantile Corp. drawn on Account #1890300139 at the Huntington Bank at Akel's Market. |
| 10 | November 17, 1999 | $30,000.00 | Negotiation of check Number #002567221, payable to International Mercantile Corp. drawn on Account #1890300139 at Huntington Bank at Akel's Market. |
| 11 | November 23, 1999 | $2,000.00 | Negotiation of check Number #1098, payable to IMC, Ltd. drawn on Account #68622011 at the Bank of Illinois at Akel's Market. |
| 12 | November 23, 1999 | $6,000.00 | Negotiation of check Number #8116, payable to IMC, Ltd. drawn on Account #36020055009 at Home Federal Bank at Akel's Market. |
| 13 | November 23, 1999 | $2,000.00 | Negotiation of check Number #4856, payable to IMC, Ltd. drawn on Account #543465397 the Educators Credit Union of Illinois at Akel's Market. |

All in violation of Title 18, United States Code, Sections 1956 (a)(1)(A)(i)and(B)(i) and 2.

## COUNTS 14-16

1.    On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida and elsewhere, the defendants,

STEVE RAFFA,
JOHN MAMONE,
JULIUS BRUCE CHIUSANO,
MICHAEL BUCCINNA, and
JOSEPH SPITALERI,

did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occuring on or about the date indicated and constituting a separate count of the Indictment, by through and to a financial institution, affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from a specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 14 | November 10, 1999 | $30,000.00 | Negotiation of check Number #002567209, payable to International Mercantile Corp. drawn on Account #1890300139 at the Huntington Bank at Akel's Market. |

22

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|---------------------|
| 15 | November 10, 1999 | $20,000.00 | Negotiation of check Number #002567210 payable to International Mercantile Corp. drawn on Account #1890300139 at the Huntington Bank at Akel's Market. |
| 16 | November 17, 1999 | $30,000.00 | Negotiation of check Number #002567221, payable to International Mercantile Corp. drawn on Account #1890300139 at Huntington Bank at Akel's Market. |

All in violation of Title 18, United States Code, Sections 1957 and 2.

### COUNT 17

1.    From in or about September 1999, and continuing thereafter up to and including February, 2000, at Broward County, in the Southern District of Florida and elsewhere, the defendants,

                    STEVE RAFFA,
                    JOHN MAMONE,
                 FRED MORGENSTERN,
                 DAVID MORGENSTERN,
                 JOSEPH SILVESTRI,
              JULIUS BRUCE CHIUSANO,
                 MICHAEL BUCCINNA,
                PEGGY PRESTON, and
                    MARK WEISS,

did knowingly conspire, confederate, and agree with each other and with other persons known and unknown to the Grand Jury to commit offenses against the United States, that is, to violate Title 18,

United States Code, Sections 1956(a)(1)(A)(i) and (B)(i) and Section 1957.

## THE PURPOSE AND OBJECT OF THE CONSPIRACY

2.   It was the purpose and object of the conspiracy:

a.   to knowingly and willfully conduct and attempt to conduct financial transactions affecting interstate and foreign commerce, that is the cashing of checks which involved the proceeds of specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, with the intent to promote the carrying on of said specified unlawful activities, and knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activities and knowing that the property involved represented the proceeds of some form of unlawful activity; and,

b.   to knowingly and willfully engage and attempt to engage in a monetary transaction affecting interstate and foreign commerce in criminally derived property that is of a value greater than $10,000, which is from specified unlawful activity that is described in paragraph two (2)(a) above, which is incorporated herein by reference.

All in violation of Title 18, United States Code, Section 1956(h).

24

## COUNTS 18 - 45

1.   On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida and elsewhere, the defendants,

STEVE RAFFA,
JOHN MAMONE,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
JULIUS BRUCE CHIUSANO,
MICHAEL BUCCINNA,
PEGGY PRESTON, and
MARK WEISS,

knowing that the property involved represented the proceeds of some form of unlawful activity, did knowingly and willfully conduct and attempt to conduct financial transactions in various amounts affecting interstate and foreign commerce, as described below, each transaction occurring on about the date indicated and constituting a separate Count of the Indictment, which transactions involved the proceeds of specified unlawful activity, that is, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343, as set forth in Counts 18 through 45.   By these financial transactions, the defendants intended to promote the carrying on of said specified unlawful activities, and knowing the transactions were designed in whole or in part to conceal and disguise the nature, location, source, ownership and control of the proceeds of said specified unlawful activities.

25

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|----------------------|
| 18 | September 29, 1999 | $261,914.21 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 19 | October 5, 1999 | $577,296.94 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 20 | October 12, 1999 | $297,000.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 21 | October 12, 1999 | $449,578.26 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 22 | October 12, 1999 | $262,259.16 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 23 | October 12, 1999 | $250,940.77 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 24 | October 22, 1999 | $266,602.02 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 25 | October 28, 1999 | $233,294.52 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|----------------------|
| 26 | November 2, 1999 | $142,922.33 | Deposit of Chemical Trust checks into Republic Security Bank, account number 0173004466 |
| 27 | November 8, 1999 | $263,867.87 | Deposit of Chemical Trust checks into Republic Security Bank, account number 0173004466 |
| 28 | November 10, 1999 | $184,068.57 | Deposit of Chemical Trust checks into Republic Security Bank, account number 0173004466 |
| 29 | November 15, 1999 | $402,137.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 30 | November 16, 1999 | $292,244.32 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 31 | November 17, 1999 | $350,000.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 32 | December 1, 1999 | $374,180.24 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 33 | December 7, 1999 | $1,250,174.70 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 34 | December 15, 1999 | $258,654.13 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 35 | December 21, 1999 | $651,567.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|---|---|---|---|
| 36 | December 21, 1999 | $598,990.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 37 | December 22, 1999 | $827,689.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 38 | December 23, 1999 | $300,358.99 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 39 | December 28, 1999 | $622,159.55 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 40 | December 29, 1999 | $297,019.68 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 41 | October 20, 1999 | $425,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclay's Bank, London, England, Account Number 63772677 |
| 42 | November 3, 1999 | $550,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclay's Bank, London, England, Account Number 63772677 |
| 43 | November 4, 1999 | $1,000,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclay's Bank, London, England, Account Number 63772677 |

| COUNT | DATE | AMOUNT | FINANCIAL TRANSACTION |
|-------|------|--------|------------------------|
| 44 | November 15, 1999 | $1,000,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclay's Bank, London, England, Account Number 63772677 |
| 45 | December 17, 1999 | $500,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclay's Bank, London, England, Account Number 63772677 |

All in violation of Title 18, United States Code, Sections 1956 (a)(1)(A)(i) and (B)(i) and 2.

### COUNTS 46- 70

1.    On or about the dates enumerated as to each of these Counts of the Indictment, in the Southern District of Florida, and elsewhere, the defendants,

STEVE RAFFA,
JOHN MAMONE,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
JULIUS BRUCE CHIUSANO,
MICHAEL BUCCINNA,
PEGGY PRESTON, and
MARK WEISS,

did knowingly engage and attempt to engage and did aid and abet, counsel, command, induce, and procure and cause the engaging and attempts to engage in the following monetary transactions in various amounts, as described below, each transaction occurring on or about the date indicated and constituting a separate count of the Indictment, by through and to a financial institution,

29

affecting interstate and foreign commerce, in criminally derived property of a value greater than $10,000, that is, the deposit, withdrawal, and transfer of funds, such property having been derived from a specified unlawful activity, specifically, mail fraud, in violation of Title 18, United States Code, Section 1341, and wire fraud, in violation of Title 18, United States Code, Section 1343.

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 46 | September 29, 1999 | $261,914.21 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 47 | October 5, 1999 | $577,296.94 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 48 | October 12, 1999 | $297,000.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 49 | October 12, 1999 | $449,578.26 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 50 | October 12, 1999 | $262,259.16 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 51 | October 12, 1999 | $250,940.77 | Deposit of Chemical Trust Checks into Gold Coast - Admiralty Bank, account number 300139047 |
| 52 | October 22, 1999 | $266,602.02 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|-------|------|--------|----------------------|
| 53 | October 28, 1999 | $233,294.52 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 54 | November 15, 1999 | $402,137.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 55 | November 16, 1999 | $292,244.32 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 56 | November 17, 1999 | $350,000.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 57 | December 1, 1999 | $374,180.24 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 58 | December 7, 1999 | $1,250,174.70 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 59 | December 15, 1999 | $258,654.13 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 60 | December 21, 1999 | $651,567.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 61 | December 21, 1999 | $598,990.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 62 | December 22, 1999 | $827,689.00 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |

| COUNT | DATE | AMOUNT | MONETARY TRANSACTION |
|---|---|---|---|
| 63 | December 23, 1999 | $300,358.99 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 64 | December 28, 1999 | $622,159.55 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 65 | December 29, 1999 | $297,019.68 | Deposit of Chemical Trust Checks into Americas Resource Citibank, account number 3200395518 |
| 66 | October 20, 1999 | $425,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclay's Bank, London, England, Account Number 63772677 |
| 67 | November 3, 1999 | $550,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclay's Bank, London, England, Account Number 63772677 |
| 68 | November 4, 1999 | $1,000,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclay's Bank, London, England, Account Number 63772677 |
| 69 | November 15, 1999 | $1,000,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclay's Bank, London, England, Account Number 63772677 |
| 70 | December 17, 1999 | $500,000.00 | Outgoing wire transfer from Citibank to The Falcon Trust, in Barclay's Bank, London, England, Account Number 63772677 |

All violation of Title 18, United States Code, Sections 1957 and 2.

## FORFEITURE

1.    Count 1 of this indictment is realleged and hereby incorporated herein by reference for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 1963.

Through the pattern of racketeering activity, defendants

STEVE RAFFA,
JOHN MAMONE,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
JULIUS BRUCE CHIUSANO,
MICHAEL BUCCINNA,
JEFFREY BASS,
GIUSEPPE BELLITTO,
MARK CARATTINI,
ANSON KLINGER,
JOSEPH SPITALERI,
MARK WEISS,
JACOLYN BARUCH, and
DAVID BELL,

i.    acquired and maintained interests in violation of Title 18, united States Code, Section 1962, which interests are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(1);

ii.    an interest in, security of, claims against, and property and contractual rights which afford a source of influence over the enterprise named and described herein which they established, operated, controlled, conducted, and participated in the conduct of, in violation of Title 18, United States Code, Section 1962, which interests, securities, claims, and rights are subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(2);

iii. property constituting and derived from proceeds which the defendants obtained, directly and indirectly, from racketeering

33

activity in violation of Title 18, United States Code, Section 1962, which property is subject to forfeiture to the United States pursuant to Title 18, United States Code, Section 1963(a)(3).

Such forfeitable interests include, but are not limited to, the following:

A.   Approximately $34,200,000 in United States currency and interest and proceeds that the defendants obtained, directly and indirectly, from the aforesaid pattern of racketeering activity during the period charged in Count 1, in violation of Title 18, United States Code, Sections 1962 and 1963(a)(3).

B.   All interest in Gold Coast Check Cashing, Inc., doing business as Gold Coast Check Cashing, a Florida corporation, located at 5701 Margate Blvd., Margate, Florida and at 3591 N. Andrews Ave., Oakland Park, Florida.

C.   All interest in Check Cashing Unlimited, Inc., a Florida corporation, doing business as Check Cashing Unlimited, located at 5701 Margate Blvd., Margate, Florida.

D.   All interest in Cash 96 Corporation, a Florida corporation, doing business as Cash 96, located at 3591 N. Andrews Ave., Oakland Park, Florida.

E.   All interest in Sanjo Center, Inc., a Florida corporation, whose business address is 4137 NW 135th Street, Opa-Locka, Florida.

F.   All interest in Gateway Transportation Services, Inc., a Florida corporation, whose business address in 7770 W. Oakland Park Blvd., Sunrise, Florida.

If any of the above-described forfeitable property as a result

34

of any act or omission of a defendant or the defendants:

1. cannot be located upon the exercise due diligence;

2. has been transferred to, sold to, or deposited with a third person;

3. has been placed beyond the jurisdiction of the court;

4. has been substantially diminished in value; or

5. has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of said defendants up to the value of the above-described forfeitable property, including but not limited to:

(a) One parcel of real estate located at 1960 Augusta Terrace, Coral Springs, Florida;

(b) One parcel of real estate located at 4147 Northwest 135th Street, Opa-Locka, Dade County, Florida;

(c) One parcel of real estate located at 4119 Northwest 135th Street, Opa-Locka, Dade County, Florida;

(d) One parcel of real estate located at 4097 Northwest 135th Street, Opa-Locka, Dade County, Florida;

(e) One parcel of real estate located at 4039 Northwest 135th Street, Opa-Locka, Dade County, Florida;

(f) One parcel of Real Estate located at 15641 Southwest 16th Street, Pembroke Pines, Florida, Broward County, Florida;

(g) One parcel of real estate with the following Legal Description:

Lots 19 and 20, in Block 1, of ST. JAMES PARK NORTH, according to the plat thereof, recorded in Plat Book 3, at Page 33, of the Public Records of Broward County, Florida.

(h) One parcel of real estate known as 1590 Northwest 13th Street, Boca Raton, Florida;

(i)  One parcel of real estate known as 11637 Kensington Court, Boca Raton, Florida;

(j)  One parcel of real estate known as 7534 Estrella Circle, Boca Raton, Florida;

All pursuant to Title 18, United States Code, Section 1963.

2.  Counts six through seventy of this indictment are realleged and hereby incorporated by reference herein for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 982. As a result of the offenses charged in Counts six through seventy of this indictment, defendants

STEVE RAFFA,
JOHN MAMONE,
FRED MORGENSTERN,
DAVID MORGENSTERN,
JOSEPH SILVESTRI,
JULIUS BRUCE CHIUSANO,
MICHAEL BUCCINNA,
JEFFREY BASS,
GIUSEPPE BELLITTO,
MARK CARATTINI,
ANSON KLINGER,
JOSEPH SPITALERI,
PEGGY PRESTON,
MARK WEISS,
JACOLYN BARUCH, and
DAVID BELL,

shall forfeit to the United States all property, real and personal, involved in the aforesaid offenses and all property traceable to such property, as to which property the defendants are jointly and severally liable, including but not limited to the following:

A.  All property to be forfeitable in paragraphs 1(A) through 1(F) of the Forfeiture Section of this indictment relating to Count One of this Indictment, as set forth above, which is incorporated herein by reference as if set forth in full.

If any of the above-described forfeitable property as a result of any act or omission of a defendant or the defendants:

36

1.  cannot be located upon the exercise due diligence;

2.  has been transferred to, sold to, or deposited with a third person;

3.  has been placed beyond the jurisdiction of the court;

4.  has been substantially diminished in value; or

5.  has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to Title 18, United States Code, Section 1963(m), to seek forfeiture of any other property of said defendants up to the value of the above-described forfeitable property, including but not limited to:

(a) One parcel of real estate located at 1960 Augusta Terrace, Coral Springs, Florida;

(b) One parcel of real estate located at 4147 Northwest 135th Street, Opa-Locka, Dade County, Florida;

(c) One parcel of real estate located at 4119 Northwest 135th Street, Opa-Locka, Dade County, Florida;

(d) One parcel of real estate located at 4097 Northwest 135th Street, Opa-Locka, Dade County, Florida;

(e) One parcel of real estate located at 4039 Northwest 135th Street, Opa-Locka, Dade County, Florida;

(f) One parcel of Real Estate located at 15641 Southwest 16th Street, Pembroke Pines, Florida, Broward County, Florida;

(g) One parcel of real estate with the following Legal Description:

Lots 19 and 20, in Block 1, of ST. JAMES PARK NORTH, according to the plat thereof, recorded in Plat Book 3, at Page 33, of the Public Records of Broward County, Florida.

(h) One parcel of real estate known as 1590 Northwest 13th Street, Boca Raton, Florida;

(i)  One parcel of real estate known as 11637 Kensington Court, Boca Raton, Florida;

(j)  One parcel of real estate known as 7534 Estrella Circle, Boca Raton, Florida;

All pursuant to Title 18, United States Code, Section 982.

A TRUE BILL

_____
FOREPERSON

_____
GUY A. LEWIS
UNITED STATES ATTORNEY

_____
J. BRIAN McCORMICK
ASSISTANT UNITED STATES ATTORNEY

_____
DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA**

v.

STEVE RAFFA, et al

**CASE NO.** _____

**CERTIFICATE OF TRIAL ATTORNEY***

**Superseding Case Information**:

**Court Division**: (Select One)

New Defendant(s)     Yes ___  No ___
Number of New Defendants     ___
Total number of counts     ___

___ Miami   ___ Key West
x__ FTL   ___ WPB ___ FTP

I do hereby certify that:

1.    I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2.    I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3.    Interpreter:          (Yes or No) _No_____
      List language and/or dialect _____

4.    This case will take _30_  days for the parties to try.

5.    Please check appropriate category and type of offense listed below:
      (Check only one)                              (Check only one)

| | | | | |
|---|---|---|---|---|
| I | 0 to 5 days | _____ | Petty | _____ |
| II | 6 to 10 days | _____ | Minor | _____ |
| III | 11 to 20 days | _____ | Misdem. | _____ |
| IV | 21 to 60 days | __x__ | Felony | __x__ |
| V | 61 days and over | _____ | | |

6.    Has this case been previously filed in this District Court? (Yes or No) _No__
If yes:
Judge: _____     Case No. _____
(Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) No_____
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: search warrants 00-4603-Snow & 00-4604-Snow_____
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____     District of _____

Is this a potential death penalty case? (Yes or No) _No_____

7.    Does this case originate from a matter pending in the U. S. Attorney's Office prior to April 1, 1999? _X_ Yes _X_ No    If yes, was it pending in the Central Region? _X_ Yes __ No

8.    Did this case originate in the Narcotics Section, Miami? __ Yes _X_ No

_Diana W. Fernandez_

DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY
COURT I.D.# A5500017

*Penalty Sheet(s) attached

REV.6/27/00

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   STEVE RAFFA

Count #: 1      18 U.S.C. 1962(d)      Rico Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2      18 U.S.C. 1955      Illegal Gambling Business

*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #: 3      18 U.S.C. 1511      Obstruction of Justice

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #: 4      18 U.S.C. 892(a)      Conspiracy to Make Extortionate Extensions of Credit

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 5      18 U.S.C. 894(a)(1)    Conspiracy to Use Extortionate Means to Collect Extensions of Credit

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   STEVE RAFFA

Counts #: 6, 7, 17        18 U.S.C. 1956(h)              Money Laundering Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 8-13, 18-45      18 U.S.C. 1956(a)(1)(A) & (B)(i)      Money Laundering

*Max. Penalty:  20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 14-16, 46-70      18 U.S.C. 1957        Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:   JOHN MAMONE

Count #: 1    18 U.S.C. 1962(d)    Rico Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2    18 U.S.C. 1955    Illegal Gambling Business

*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #: 3    18 U.S.C. 1511    Obstruction of Justice

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #: 4    18 U.S.C. 892(a)    Conspiracy to Make Extortionate Extensions of Credit

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 5    18 U.S.C. 894(a)(1)    Conspiracy to Use Extortionate Means to Collect Extensions of Credit

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   JOHN MAMONE

Counts #: 6, 7, 17         18 U.S.C. 1956(h)              Money Laundering Conspiracy

\*Max. Penalty:  20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 8-13, 18-45      18 U.S.C. 1956(a)(1)(A) & (B)(i)    Money Laundering

\*Max. Penalty:  20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 14-16, 46-70     18 U.S.C. 1957     Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

\*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   FRED MORGENSTERN

Count #: 1                18 U.S.C. 1962(d)    RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Counts #: 6, 17          18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 18-45          18 U.S.C. 1956(a)(1)(A) & (B)(i)    Money Laundering

*Max. Penalty:   20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 46-70          18 U.S.C. 1957    Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty:  10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  DAVID MORGENSTERN

Count #: 1          18 U.S.C. 1962(d)    RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 17          18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 18-45          18 U.S.C. 1956(a)(1)(A) & (B)(i)    Money Laundering

*Max. Penalty:   20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 46-70          18 U.S.C. 1957    Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty:  10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:    JOSEPH SILVESTRI

Count #: 1    18 U.S.C. 1962(d)    RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #:17    18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #:  18-45    18 U.S.C. 1956(a)(1)(A) & (B)(i)    Money Laundering

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #:46-70    18 U.S.C. 1957    Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty:10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   JULIUS BRUCE CHIUSANO

Count #: 1    18 U.S.C. 1962(d)    Rico Conspiracy

---

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2    18 U.S.C. 1955    Illegal Gambling Business

---

*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #:  4    18 U.S.C. 892(a)    Conspiracy to Make Extortionate Extensions of Credit

---

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 5    18 U.S.C. 894(a)(1)    Conspiracy to Use Extortionate Means to Collect Extensions of Credit

---

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Counts #: 6, 7 & 17    18 U.S.C. 1956(h)    Money Laundering Conspiracy

---

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:    JULIUS BRUCE CHIUSANO

Counts #: 8-13, 18-45        18 U.S.C. 1956(a)(1)(A) & (B)(i)        Money Laundering

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 14-16, 46-70          18 U.S.C. 1957          Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  MICHAEL BUCCINNA

Count #: 1      18 U.S.C. 1962(d)    Rico Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2      18 U.S.C. 1955      Illegal Gambling Business

*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #: 5      18 U.S.C. 894(a)(1)   Conspiracy to Use Extortionate Means to Collect Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Counts #: 6, 7 & 17       18 U.S.C. 1956(h)       Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 8-13, 18-45      18 U.S.C. 1956(a)(1)(A) & (B)(i)    Money Laundering

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:   MICHAEL BUCCINNA

Counts #: 14-16, 46-70          18 U.S.C. 1957          Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   JEFFREY BASS

Count #: 1     18 U.S.C. 1962(d)    RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2     18 U.S.C. 1955      Illegal Gambling Business

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #: 6     18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:   FREDERICK SCAROLA

Count #: 3     18 U.S.C. 1511        Obstruction of Justice

*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   GIUSEPPE BELLITTO

Count #: 1     18 U.S.C. 1962(d)     Rico Conspiracy

\*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2     18 U.S.C. 1955     Illegal Gambling Business

\*Max. Penalty:  5 years' imprisonment and up to a $250,000 fine

Count #:  4     18 U.S.C. 892(a)     Conspiracy to Make Extortionate Extensions of Credit

\*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 5     18 U.S.C. 894(a)(1)   Conspiracy to Use Extortionate Means to Collect Extensions of Credit

\*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  MARK CARATTINI

Count #: 1     18 U.S.C. 1962(d)     RICO Conspiracy

\*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2     18 U.S.C. 1955     Illegal Gambling Business

\*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #: 6     18 U.S.C. 1956(h)     Money Laundering Conspiracy

\*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   PAUL DIFILIPPI

Count #:5       18 U.S.C. 894(a)(1)     Conspiracy to Use Extortionate Means to Collect Extensions of Credit

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   ANSON KLINGER

Count #: 1    18 U.S.C. 1962(d)    RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2    18 U.S.C. 1955    Illegal Gambling Business

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #: 6    18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### PENALTY SHEET

Defendant's Name:   JOSEPH SPITALERI

Count #: 1     18 U.S.C. 1962(d)     RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 7     18 U.S.C. 1956(h)          Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 8-13      18 U.S.C. 1956(a)(1)(A) & (B)(i)      Money Laundering

*Max. Penalty:20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 14-16          18 U.S.C. 1957      Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

*Max. Penalty:10 years' imprisonment and up to a $250,000 fine

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   CHARLES CLAY

Count #: 2      18 U.S.C. 1955      Illegal Gambling Business

_____

_____

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #:3      18 U.S.C. 1511      Obstruction of Justice

_____

_____

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #:

_____

_____

*Max. Penalty:

Count #:

_____

_____

*Max. Penalty:

Count #:

_____

_____

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   PEGGY PRESTON

Counts #: 6 & 17          18 U.S.C. 1956(h)    Money Laundering Conspiracy

---

*Max. Penalty:  20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

---

Counts #: 18-45          18 U.S.C. 1956(a)(1)(A) & (B)(i)      Money Laundering

---

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

---

Counts #: 46-70          18 U.S.C. 1957      Engaging in Monetary Transactions in Property Derived from Specified Unlawful Activities

---

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine

---

Count #:

---

*Max. Penalty:

---

Count #:

---

*Max. Penalty:

---

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:  MARK WEISS

Count #: 1    18 U.S.C. 1962(d)    RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 4    18 U.S.C. 892(a)    Conspiracy to Make Extortionate Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #: 5    18 U.S.C. 894(a)(1)    Conspiracy to Use Extortionate Means to Collect Extensions of Credit

*Max. Penalty: 20 years' imprisonment and up to a $250,000 fine

Count #:17    18 U.S.C. 1956(h)    Money Laundering Conspiracy

*Max. Penalty:20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Counts #: 18-45    18 U.S.C. 1956(a)(1)(A) & (B)(i)    Money Laundering

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA
# PENALTY SHEET

Defendant's Name:   MARK WEISS

Counts #:46-70      18 U.S.C. 1957       Engaging in Monetary Transactions in Property
                                         Derived from Specified Unlawful Activities

_____

_____

*Max. Penalty: 10 years' imprisonment and up to a $250,000 fine
_____

Count #:
_____

_____

*Max. Penalty:
_____

Count #
_____

_____

*Max. Penalty:
_____

Count #:
_____

_____

*Max. Penalty:
_____

Count #:
_____

_____

*Max. Penalty:
_____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   JACOLYN BARUCH

Count #: 1      18 U.S.C. 1962(d)      RICO Conspiracy

*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #: 2      18 U.S.C. 1955        Illegal Gambling Business

*Max. Penalty: 5 years' imprisonment and up to a $250,000 fine

Count #: 6      18 U.S.C. 1956(h)     Money Laundering Conspiracy

*Max. Penalty: 20 years' imprisonment and up to a $500,000 fine or twice the value of the funds involved in the transaction

Count #:

*Max. Penalty:

Count #:

*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:   DAVID BELL

Count #: 1     18 U.S.C. 1962(d)     Rico Conspiracy

\*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #:5     18 U.S.C. 894(a)(1)     Conspiracy to Use Extortionate Means to Collect Extensions of Credit

\*Max. Penalty:  20 years' imprisonment and up to a $250,000 fine

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

Count #:

\*Max. Penalty:

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

REV. 12/12/96