UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 00-6309-CR-SEITZ(s)(s)

UNITED STATES OF AMERICA,            )
                                     )
    Plaintiff,                       )
                                     )
vs.                                  )
                                     )
JOHN MAMONE, et al.,                 )
                                     )
    Defendants.                      )
_____)



## RESPONSE TO COURT'S INQUIRY RE DISCOVERY MATERIALS PRESENTLY LOCATED IN SOUTH CAROLINA

COME NOW the Defendants, FRED MORGENSTERN, DAVID MORGENSTERN, JOSEPH SILVESTRI and MARK WEISS,[1] by and through John R. Howes, Esq., counsel for Fred Morgenstern and "lead counsel" for Court Appointed Counsel with respect to this matter, and files the instant response to the Order of the Court concerning the disclosure by the Government and the making available to counsel for the parties the materials that are presently located in Greenville, South Carolina.

---

[1] The fifth known defendant who is known to have court appointed counsel is Peggy Preston. Ms. Preston is not named in the latest superseding indictment and AUSA Brian McCormick informed the Court at the time of the Status Conference that Ms. Preston would be entering a plea. Mr. White was therefore not contacted with regard to this matter.

1

1. The undersigned had conversations with Ms. Jhones and Ms. Fernandez and Mr. McCormick on Tuesday, September 25th and Ms. Jhones has had contact with the Government as late as today.

2. In the undersigned's conversation with Ms. Fernandez/Mr. McCormick, the undersigned was informed that, despite Mr. McCormick's representation to the Court that an exhibit list had been compiled in South Carolina that no such exhibit list had in fact been created. Further, Mr. McCormick informed the undersigned that the prosecutor in South Carolina had been hospitalized for the past three weeks, a fact that he was not aware of at the time that he made his representations to the Court.

3. The conversation between the undersigned and counsel for the Government was not very fruitful; it quickly degenerated into a question and answer/interrogation session with none of the questions dealing with the requested disclosure of information but rather with the nature and timing of the undersigned's requests for information from the copying service in South Carolina.[2]

---

[2] Although the Court did not ask the Government to file any response to the Court's inquiry, the Government saw fit to file a "Notice Concerning Status Conference". The undersigned will address this document more fully in another pleading dealing with the misrepresentations that the Government made, either willful or negligent, at the time of the Status Conference, and the misrepresentations contained in the Government's "Notice". At this time the undersigned believes that it is sufficient to attach the draft copy of a letter received this date from Julie Gossett from Legal Eagle setting forth the conversation that she had with Government counsel and the misrepresentations that she has found in their pleading and the misrepresentations that they made to her at the time of their conversations. The following quote from the letter is informative. After Ms. Gossett inquired of the AUSAs in South Florida whether or not some of their inquiries may be

2

4. Ms. Jhones has today advised the undersigned that Mr. McCormick has refused to produce the requested documents in Florida. It is therefore her position on behalf of David Morgenstern that:

    a) an inventory of the content of the boxes in South Carolina should be made so that she can determine what materials that she needs in order to defend her client;

    b) based upon the position taken by the Government here that these materials are needed for the trials in South Carolina, it is therefore pointless to ask the Court to produce these items in Florida based upon the Government's refusal to do so; and

    c) It is therefore necessary for counsel for the Defendants to travel to South Carolina in order to obtain an adequate assessment of the discovery.

5. The undersigned has conferred with Emmanuel Perez, Esq., counsel for Joseph Silvestri. Mr. Perez has advised the undersigned that he would like the opportunity to review the evidence, preferably here in Florida where the seizures of the majority of the documents took place.

---

in violation of Mr. Morgenstern's attorney-client privilege the following occurred: . "At this point, I asked whether this or any of our conversation was privileged and stated that I did not want to disclose any information that might fall into this category. <u>Diane Fernandez assured me if anything was privileged it would be disregarded by their office.</u>" (Emphasis added.) Gossett's letter at page two.

6. The undersigned has conferred with Phillip Horowitz, Esq., counsel for Mark Weiss. Mr. Horowitz has authorized the undersigned to advise the Court that he would rely upon the undersigned's review of the documents and it has been agreed that the undersigned would make arrangements to get copies of any documents requested by Mr. Horowitz for his client available to him.

7. The undersigned, on behalf of Fred Morgenstern, has had one brief afternoon session to review all of the materials in South Carolina. This occurred not because of the disclosure of the existence of these materials by the Government but <u>despite</u> its failure to disclose the existence of said documents. At the time that travel permission was granted for Fred Morgenstern to travel to South Carolina the undersigned and the Defendant had no idea whatsoever how much material was there and how much the Government had failed to disclose.

Upon reviewing those boxes of documents, several things came to light. First, many if not most of the material that was there came from South Florida.[3] In discussion with Mr. Morgenstern today it was determined that some of the boxes had "inventories" in them. This is in direct contradiction to Mr. McCormick's

---

[3]Today the undersigned has obtained from the Clerk's Office copies of two search warrants that were served in this District, Case Nos. 00-4603-SNOW and 00-4604-SNOW. The warrants were served in January, 2000 and were unsealed in December 2000 but have never been made known to the Defendant. The Government has, in passing, mentioned that search warrants had been served, but these warrants, <u>directed at the Defendant</u> and others have never been made known to the undersigned. What is perhaps most significant to the instant matter is that many of the documents which the Defendant seeks copies of were seized from a business involved in the instant case which the Defendant had an interest in managing.

position that no inventories have been conducted. Because Legal Eagle has a good working relationship with the prosecutors in South Carolina and because they are experienced in this business, the first thing that they did upon taking custody of the boxes was to photograph each. Attached to this Response are photocopies of the "inventories" that are clearly visible inside some of the boxes that were seized here in Ft. Lauderdale.

There was some question at the time of the last hearing before the Court as to whether the quality of the documents sought to be copied by Legal Eagle were of sufficient quality and clarity so that they would be legible, there having been substantial difficulties with the quality of the work put out by the copying company and the scanned documents here. To assuage the concerns of those who expressed concern about the quality of the scanning, copy of the document, in black and white although produced in color on disc can be seen. What is particularly significant to the Defendant, Fred Morgenstern, is that contained within the few samples that were forwarded by Legal Eagle was a copy of a negotiated check from the account of the Defendant and his wife and one page from a document authored by Virgil Womack, the major witness against the Defendant in this case, indicating his plans to flee the jurisdiction. This is clearly *Brady* material as far as the Defendant is concerned and, despite the fact that the Government has not so

informed the Defendant, *Giglio/Napue* material as well since, despite this fact Mr. Womack is presently on bond while cooperating with the Government.

So, this is not a simple matter of the Defendant seeking the proverbial "needle in a haystack" or hoping to find a "smoking gun". Rather, it is more like elephants grazing in short grass. The Defendant knows the nature of the documents which he seeks to have copied for his use, both to introduce at trial and to impeach Virgil Womack and other Government witnesses. He simply needs full disclosure from the Government of all of the items that he is entitled to and then a free, unobstructed and unfettered use of those materials in order to prepare for trial.

DATED this 1st day of October, 2001.

*[signature]*
JOHN R. HOWES, ESQ.
JOHN R. HOWES, P.A.
Counsel for Defendant Fred Morgenstern
633 S.E. 3rd Ave., Suite 4R
Ft. Lauderdale, Fl. 33301
Telephone: 954.763.6003
Dade: 305.945.2854
Fla. Bar No. 219193

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of the foregoing Response to Court's Inquiry re Discovery Materials Presently Located in South Carolina has been served by Regular Mail this 1st day of October, 2001 on the following counsel:

J. Brian McCormick,
Assistant U.S. Attorney
500 East Broward Blvd.
Suite #700
Fort Lauderdale, FL 33394

Emmanuel Perez, Esq.
2121 Ponce de Leon Blvd.
Suite #290
Coral Gables, FL 33134-5222

James Benjamin, Esq.
1 Financial Plaza
Suite #1615
Fort Lauderdale, FL 33394

Neil M. Nameroff, Esq.
100 Southeast 2nd Avenue
Suite #3350
Miami, FL 33131

Philip R. Horowitz, Esq.
12651 South Dixie Hwy.
Suite #328
Miami, FL 33156

Donald R. Spadaro, Esq.
100 South Federal Hwy.
Suite #103
Fort Lauderdale, FL 33316

Michael Tarre, Esq.
2 S. Biscayne Blvd.
Suite 3250
Miami, Fl. 33131

David B. Rothman, Esq.
First Union Financial Center
200 South Biscayne Blvd.
Suite #2690
Miami, FL 33131

Brian L. Tannenbaum, Esq.
First Union Financial Center
200 South Biscayne Blvd., Suite 2690
Miami, FL 33131

Jon May, Esq.
200 East Broward Blvd.
Suite #1210
Fort Lauderdale, FL 33301

Jeffrey M. Harris, Esq.
1 East Broward Blvd.
Suite #1500
Fort Lauderdale, FL 33301

Howard Srebnick, Esq.
201 S. Biscayne Blvd.
Suite 1300
Miami, Fl. 33131

Peter Raben, Esq.
2665 South Bayshore Drive
Suite #1206
Coconut Grove, FL 33133

| | |
|---|---|
| Brian H. Bieber, Esq.<br>2600 Douglas Road<br>Penthouse #1<br>Coral Gables, FL 33134 | Jayne C. Weintraub, Esq.<br>100 SE 2nd St.<br>Suite 3550<br>Miami, Fl. 33131 |
| David G. Vinikoor, Esq.<br>420 Southeast 12th Street<br>Fort Lauderdale, FL 33316 | Ana M. Jhones, Esq.<br>Bayside Plaza, Suite #625<br>330 Biscayne Blvd.<br>Miami, FL 33132 |
| Richard Hamar, Esq.<br>Maria Hamar, Esq.<br>2437 Briarcrest Road<br>Beverly Hills, CA 90210 | David Tarlow, Esq.<br>2121 Ponce De Leon Blvd.<br>Suite 1901<br>Miami, FL. 33131 |

*[signature]*
JOHN R. HOWES, ESQ.

ofc\MorgensternResponse

October 1, 2001

<u>BY FIRST CLASS MAIL AND BY FACSIMILE – (954) 462-2255</u>

John R. Howes, Esq.
Attorney at Law
Trial Lawyers Building, Suite 4-R
633 Southeast Third Avenue
Fort Lauderdale, FL 33301

**Re: Fred Morgenstern Case**

Dear Mr. Howes:

In response to your facsimile sent September 28, 2001, I wanted to let you know the following:

I received a telephone call from Ron Wise on Wednesday, September 26, 2001. Mr. Wise identified himself as an investigator for the FBI in Fort Lauderdale. He requested information on this case, specifically the date this job was contracted, who had made commitments to us, where the evidence for this case was located, and how much this was going to cost upon completion. He told me he needed this information to see if his office was responsible for paying for any part of the work.

I told him I would have to check through my file to give him an exact contact, contract, and start date. I let him know we had been provided with a form CJA 21, first by Marcella and then an updated version from Lucy Lara at the US District Court. He asked a few questions about this form I could not answer because I had not been the person who spoke to the court about these forms; it had been our accounting clerk, Sue Power. As his questions became more specific, I began to ask if I was allowed to give him this information. He told me he would call me back in a few minutes.

About fifteen minutes later, the U.S. Attorney, Brian McCormick from Fort Lauderdale called. I was put on a conference call with Diana Fernandez and Ron Wise. Diana identified herself as the assistant to Brian McCormick. Mr. McCormick commented on the work we had done for his office a short while ago. Questions were raised concerning dates, times and dollar amounts. I was told this call was to clarify how much the U.S. Attorneys' Office owed for the work.

I let the three of them know that Paul Jacobs, an investigator for the FBI here in Greenville, had initially contacted our office on June 18, 2001. Then I was asked if you or Fred Morgenstern was in Greenville on that date and viewed the evidence as well. I could not answer this because I had not initially been the person to preview this job. I

was asked if you or Mr. Morgenstern had been back to Greenville to view the evidence recently. I told them you had not.

I was asked on what date you committed to Legal Eagle and when we began production of this job. I was asked how much was currently owed to Legal Eagle and how much would be owed when production was complete. I let Mr. McCormick know that production had begun August 7, 2001 and that your office sent us a CJA 21 form and told us as we completed boxes (we have 110) to submit to your office an invoice with a completed form. I also told the U.S. Attorneys and Mr. Wise I had been sent an instruction sheet for this form explaining how to complete it. I told them I called Marcella concerning this form because I was not clear about a dollar amount that could be submitted with each form. Marcella told me the forms were confusing to her as well. Our accounting clerk, Sue Power had also called Marcella and asked to whom we should address the bills. I had spoken to Sue about my questions concerning this form as well. She in turn contacted the US District Court, as advised by Marcella, and spoke with a lady named Jean who cleared up our initial questions; the main one being do we reproduce this CJA form and use the same voucher number or do we need several forms with different numbers. Jean then referred us to Lucy Lara.

During the course of my conversation with the U.S. Attorney's office, it was suggested to me I should again contact Lucy Lara and inquire about the necessity of several CJA forms versus one at the end of completed production.

The reason for these questions, according to Mr. McCormick and Mr. Wise, was to establish a basis for who was responsible to pay the bills or a part of the bills in addition to asking questions about second copies. However, the U.S. Attorneys began to ask more specific questions about what had been discussed regarding pricing, when was pricing discussed, and if you or Mr. Morgenstern were in possession of any evidence we had processed. At this point, I asked whether this or any of our conversation was privileged and stated that I did not want to disclose any information that might fall into this category. Diane Fernandez assured me if anything was privileged it would be disregarded by their office. I was asked to fax billing information and invoicing and pricing agreements to their office and then to FedEx my complete file, including all notes and emails. I asked for an assurance in writing that this was proper before I committed to send my entire file.

In the statement prepared by the U.S. Attorney's office, it is apparent they are confused as to the details of the conversation and the reconstruction is inaccurate in certain respects. For example, on page 1, it states the evidence is 'presently located in the United States Attorney's office in Greenville,' when in fact the 110 boxes are at Legal Eagle and have been since July.

On page 3 Item 6 Sentence 2, it states, 'Thereafter, Mr. Howes suggested that Legal Eagle was instructed by Mr. Howes to file numerous CJA 21 forms, each in amounts under $1,000, in order to ensure that the copying service would be paid.' This is not correct. I stated several times your office faxed us a CJA21 form and an instruction sheet

and I called your office to inquire if, according to my understanding of the instruction sheet, we were only allowed to invoice in increments less than $1,000. You did not contact me or suggest how to fill out CJA forms in order to be paid. Marcella spoke with Sue Power (of our office) suggesting she contact the court and we did. We were given guidelines by Jean (who works with Lucy Laura at the courthouse). She stated we could use the same voucher number throughout production and a $300 rule and/or $1000 rule will be applied by the courthouse. We presumed, based on this information, we were to invoice in less than $1,000 increments and include each on a separate form. This is what we did.

Page 3 Item 6 Sentence 4 states: 'Ms. Gossett stated that additional work has already been performed, bringing the total balance outstanding to approximately $82,000 for work performed on nineteen of the boxes.' I think there is some confusion as to the amount actually billed to date and the amount of work actually completed. What I said was we were able to give true figures for the scanning, imaging, bates labeling and some IT work that had been completed and invoiced. However, only about four of the priority boxes had been linked and indexed. I needed to produce a firm dollar figure for you to present the court to complete the priority boxes. I told you my boss, Mr. Carnahan, would statistically base the linking and indexing and give you a solid figure. I also told you the number may be slightly higher than actual costs and if this proved to be true we would invoice accordingly. If we had under-calculated we would just eat the cost. The firm figure I was able to give the U.S. District Attorney's office was $44,544.66. This is for work actually completed for the first 19 priority boxes which has now been invoiced. The statistically based estimate given for the linking and indexing work, which has not yet been completed, is $37,542.00. Since the work has not been completed, the statement on page 3, item 6, sentence 4 'bringing the total balance outstanding to approximately $82,000 for work *performed*', is not accurate.

Page 3, Item 8 states 'The government has been further informed by Ms. Gossett that as of the date of the status conference, Mr. Howes owes in excess of $80,000 to Legal Eagle.' I was asked several times for a firm number for work performed to date but because there are so many processors and staff involved in this production who are all at different stages of completion it was impossible for me to provide the U.S. District Attorney's office with a good answer to this question. In fact, the $82,000 estimate relates to the work on the first 19 boxes only, which is not yet complete. As I stated in our phone conversation, we have scanned and imaged other boxes, but we could not provide a dollar amount for this work because invoicing has not yet been done. The total amount for work completed is unknown. It could be more or less than $80,000 as stated in Page 3 Item 8. At this time we are simply unsure of the total. Until we invoice all work in progress, we have no way of knowing actual figures.

I tried to give the U.S. Attorney's office accurate answers to their questions based upon my understanding that they were going to be responsible for some part of the costs and their assurances that this exchange was proper. Unfortunately, the volume of work and the different stages of production made some answers difficult to give and possibly understand.

Please let me know if you need any additional information.

Best regards,


Julie Gossett
Legal Document Professional
Greenville Office

US presence. It seems necessary to keep some type of US presence and if necessary to let it go at a later date. After looking at the possibility of keeping the Toccoa residence which though would be a good investment, it would be go great a time investment on us to maintain. It would be better to use that investment in Dad's property and have him a) not worry about money, b) keep a presence in Georgia and c) have him keep up with property needs and some mail. Possible good location to store items we want to keep.

SELL:

- Toccoa home                                         $250,000
    - Time: 6 – 12 months
    - Season: Spring through summer
- Mastercraft                                         $15,000
    - Time: 8 months
- Porsche                                             $14,000 - $18,000
    - Time: 8 months
    - Jerry?
- Sable                                               $16,000 - $18,000
    - Time: 3 months
    - Move?
    - Store?
- Bass Boat                                           $5,000
    - Time: 10 months
    - Leave for Dad
- Hobie Cat                                           $600
    - Sell with house
    - Leave at Dad's
    - Move (crated)
- Furniture
    - Piano (Glen)
    - Piano (Kimball) store
    - Trampoline (Dublin)
    - Outdoor furniture
    - Item
    - Item
    - Item
    - Item
- Lawn Mower
    - Reynolds or Dad
- Item
- Item
- Item

STORAGE:
- Space Needed? May be so large that more cost effective to invest in bldg./trailer
- David? Boat storage bldg. Here?
- Need total square foot of items





| | | | |
|---|---|---|---|
| REORDER 893021146-S | QTY 200 | | 9/02/99  3 |

**DHL Shipment Airwaybill**
1-800-CALL-DHL (Non negotiable, in USA only)
WEB ADDRESS: http://www.dhl.com

PPF PPF

Shipment number: **7839913561**
Quote this shipment number in an inquiry

783 9913 561

ORIGIN: **GSP**
DESTINATION:

**Shipper:**
Account no.: **893021146**
Company name: **ALLIANCE TRUST**
Shipper's name:
Address: **SUITE 301**
**290 APPLEWOOD CENTER PL**
**SENECA SC**
Zip code: **296780930**
Phone: **(864) 888-8030**

**Recipient:**
Company name: **ROBERT BOETTCHER**
Delivery address: **156 ALCOTT CT.**
**ELGIN, IL**
Zip/Postcode: **60120**
Phone: **847-931-9774**

Full description of contents: **DOCUMENTS**

Domestic Services: USA OVERNIGHT
International Services: INT'L DOCUMENT EXPRESS, WORLDWIDE PRIORITY EXPRESS, WORLDFREIGHT
WorldMail Services: 1st class, 2nd class
Special Services: SATURDAY DELIVERY, POD, OTHER

Payment Options: Shipper's account, Recipient, Third party
Cash / Check / Credit Card







