UNITED STATES DISTRICT COURT
SOUTERN DISTRICT OF FLORIDA

UNITED STATES COURTS,

VS.

JOSEPH SILVESTRI,　　　　　　　　　CASE NO.: 00-6309-CR-SEITZ

　　　　Defendant.
_____/

### DEFENDANT SILVESTRI'S MOTION TO SEVER FROM ALL OTHER DEFENDANTS ON THE GROUNDS OF FUNDAMENTAL UNFAIRNESS AND DENIAL OF SIXTH AMENDMENT RIGHT OF COMPULSORY PROCESS

COMES NOW, the Defendant, JOSEPH SILVESTRI, by an through undersigned counsel, herein moves this Court for an order which would sever his trial from that of the other co-defendants on the grounds that a joint trial will be fundamentally unfair and deny his Sixth Amendment Right to compulsory process. In support of the motion the defendant would show the following:

### STATEMENT OF THE FACTS

1.　　Defendant, Joseph Silvestri,, was an underwriter for an insurance company known as United States Guaranty Insurance Company. United States Guaranty Insurance Company was a company based out of Scottsdale, Arizona which who had financial statements reflecting assets in excess of 50 million dollars. The insurance company was licensed to do business in The United States. United States Guaranty Company was the insurance company that issued Financial Gurantees to individual investers up to the limit of their investment NOT any returns they may realize from their investment. Mr. Silvestri's role as underwriter for U.S. Guaranty Insurance Company was to verify the accuracy of the

1

information provided by the company seeking investors and negotiate with both parties to arrive at a premium that reflected the level of risk inherent in securing the investment. Mr. Silvestri never met or spoke to a single investor.

2. In 1997, the Defendant met an individual named Virgil Womack in Nassau, Bahamas who was the president of a company known to him as Global Ministries, a not for profit company which was investing significant assets in real estate such as hospitals, housing and other such humanitarian causes. Virgil Womack had traveled to the Bahamas for a meeting with United States Guaranty Insurance Chief Executive Officer, George Williamson for the purpose of seeking insurance coverage for his investors' principal investor. Obviously, having this type of investment insurance is a key aspect of marketing the proposed investment to the targeted public since it makes the investment more "secure." Mr. Silvestri was introduced to Mr. Womack at that time. Mr. Womack was operating out of the State of Georgia and sometime in 1997 The State of Georgia shut down Mr. Vomack's operation. Mr.Womack's company had raised approximately 6 Million dollars from minor investors. Mr. Silvestri met with Mr. Womack's lawyers due to concerns which his principal insurance had regarding the financial stability of the company and the risk they were insuring in light of action taken by the State of Georgia against Womack. Mr. Womack's lawyer gave them assurances that this action by the The State of Georgia had nothing to do with the SEC or the United State Attorneys Office. Nothwithstanding Mr. Womack's assurances to the contrary, The Office of the United States Attorneys Office has indicted Mr. Womack and others, including Mr. Silvestri. That case is scheduled for trial in December, 2001.

2

3. In 1999 Defendant Silvestri was working for U.S. Guaranty, an insurance company having its pincipal place of business in Scottsdale, Arizona. Mr. Womack and his attorney, Mr. Jourigan, approached Mr. Silvestri for a bonding guarantee. The Attorney for Womack, Mr. Jourigan, presented all of the background and information and Mr. Silvestri conveyed the information to The Board of Directors of United States Guarantee Insurance who ultimately approved the pending business.

4. In 1996 The Defendant Joseph Silvestri met co-Defendant David Morgenstern in Florida. Mr. David Morgenstern was the C.E.O. of a company traded on the New York Stock Exchange known as AMQUEST. In August 1999 Mr. Virgil Womack and Mr. David Morgenstern are negotiating a 20 Million dollar "time Share" deal that appeared to be "falling apart". Mr. Silvestri is advised that the time share deal "went bad" and that David Morgenstern and Virgil Womack on the phone conferences continuously in an effort to straighten out the mess. David Morgenstern then brought in his brother, Fred Morgenstern who owns a check cashing business, however, Defendant Silvestri only met Fred Morgenstern socially and knows little, if anything, about him or his business.

5. In 2000 Mr. Silvestri was arrested and indicted together with David Morgenstern and others from an indictment arising from The United States Disctict Court for the District of South Carolina in a "sting" operation conducted by undercover agents posing as investors attempting to "recover' their investment by claiming against the insurance company (United States Guarantee Company) for their investment. Mr. Silvestri stepped into the picture as the insurance companies' underwriter in an effort to assist the undercover agents posing as investors trying to recover monies and was arrested and charged. The case has been scheduled for trial on several occasions and has now been

3

postponed indefinitely pending the outcome of this case in the Southern District of Florida.

6.  Mr. Silvestri's only contacts were Virgil Womack and David Morgenstern and accordingly any trial must necessarily contemplate either testimony of these individuals against Mr. Silvestri or monitored telephone recordings between these individuals. Also, the evidence would also consist of checks received by Joseph Silvestri as earned commission premiums paid to United States Guaranty Insurance Company by either Global Ministries or Amquest. Mr. Silvestri has never had any dealings with, and does not know, any of the other defendants in the case. With the exception of Fred Morgenstern he does not even know any of the other individuals at all.

7.  At a joint trial with David Morgenstern and the other defendants who allegedly dealt with co-defendant Morgenstern it is highly unlikely that Mr. Morgenstern would take the stand and Mr. Silvestri would be unable to compel David Morgenstern to testify as a witness against himself. Aditionally, if monitored telepone recordings are introduced between Morgenstern and others, known and unknown, where Mr. Silvestri is either mentioned or a party to the discussion, likewise, Mr. Silvestri would be completely unable to effectively cross examine. Mr. Morgenstern's exculpatory testimony would be unavailable to exonerate Mr. Silvestri if this matter were to proceed to a joint trial as it now stands. If, on the other hand, Joseph Silvestri's case is severed, and David Morgenstern proceeds to trial then Silvestri may be able to establish his innocence if Morgenstern is not deterred from taking the stand and could be compelled to testify.

8.  In addition, this case is based on a 70 count R.I.C.O. conspiracy indictment involving allegations such as loan sharking, pyramid schemes,

4

bribery, gambling and other activities traditionally associated with organized crime known as "cosa nostra" which is generically refferrrded to as the MAFIA business. Mr. Silvestri is charged in the first count of all counts in the indictment. Mr. Silvestri's involvement did not extend beyond the facts layed out in the statement of facts hereinabove detailed. A trial on all the other issues in this case when Mr. Silvestri's involvement is so marginalized would cause great harm and fundamental unfairness to Mr. Silvestri's ability to receive a fair trial based on the spill over affect from all other defendants having nothing to do with Mr. Silvestri.

A severance is therefore essential if Joseph Silvestri is to receive a fair trial.

## MEMORANDUM OF LAW

9. In cases where the Court is presented with a Motion to Sever based on a defendants desire to offer exculpatory testimony to be provided by a co-defendant, or, in the alternative, because a spill over of the evidence against the other defendants will unfairly prejudice the defendant, a trial court may consider the following issues:

(1) a bona fide need for the testimony

(2) the substance of the desired testimony

(3) its exculpatory nature, and,

(4) that a co-defendant would, in fact, testify if the case were severed.

Unites States v. Cobb, 185 f.3d 1193 (11th Circuit 1999), Unites States v. Harris 908 F.2d 728, 739 (11th Circuit, 1990)., Byrd v. Wainwright., 428 F. 2d 1017 (5th Circuit, 1970) The question of whether or not to sever a trial is within the sound discretion of the court and must be evaluated on a case by case basis based on the facts of any one particular defendant. See United States v. Knowles, 66 F. 3d 1146 (11th Circuit 1995) The court should carefully balance the prejudice that

5

Mr. Silvestri would suffer against the economy of one trial. See United States v. Cross, 928 F.2d 1030 (11th Circuit 1991). The balancing test weighs heavily in favor of the Defendant Silvestri getting a trial separate from the other defendants because Mr. Silvestri has no connection or involvement with any of the other defendants and has never entered into any alleged conspirational agreements with any of the other co-defendants.

    10.    David Morgenstern if tried separately from Mr. Silvestri could be called to the stand by Mr. Silvestri to verify that, in fact, Mr. Silvestri never had any knowledge of investors getting scammed or had any involvement with any of this business other than to serve as underwriter for U.S. Guarantee Insurance Company to insure investment principal invested by individual investors. Mr. Silvestri was not involved in any other activities other than underwriting on the insurance. Moreover, Mr. Morgenstern would also testify that Mr. Silvestri was an underwriter who took the normal and customary precautionary measures of due diligence to determine the risk which would be bourne by the insurance company. Mr. Morgenstern would also testify that Mr. Silvestri was never told, indirectly or directly, that this was really all a "scam" and there were virtually no assets backing up the investment. Moreover, Mr. Morgenstern may testify that certain steps were taken to keep the truth from Silvestri. Mr. David Morgenstern would also testify that Mr. Silvestri never met or had any dealings with any of the other indicted alleged co-conspirators. If a trial were granted that was separate from that of the other defendant Mr. Silvestri would most certainly call Mr. Morgenstern as a witness and Mr. Mogerstern since information obtained from Mr. Mogenstern's testimony would tend to exonerate Mr. Silvestri of the charges against him.

11.  Since the vast majority of the charges are not against Mr. Silvestri and do not involve actions which are in any attributable or foreseeable by the defendant the defendant should also be severed due to the unfairly prejudical effect of spillover from the alleged criminal wrongdoing of the other co-defendants.  Mr. Silvestri is mentioned in Count I of the indictment and again is mentioned in many other <u>separate</u> counts for <u>each one</u> of the insurance checks which were collected on a monthly basis to which he was entitled to a premium as commission for underwriting the policy.  So although he is mentioned in numerous counts it is only through Count I (conspiracy) that the other counts based on the number of monetary instruments that he receive from his premium get incorporated into the indictment.  Mr. Silvestri never received commission checks directly from any of the companies owned or controlled by Womack and/or Morgenstern.  Mr. Silestri's premiums always came from the insurance company as earned premiums.

WHEREFORE, Defendant Joseph Silvestri, respectfully requests that this Court grant this his Motion of Severance of trial and whatever other relief it deems just and reasonable.

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was mailed to the attached service list on this 22nd day of October, 2001.

RESPECTFULLY SUBMITTED,

_____
Emmanuel Perez, Esquire
POLO & PEREZ, LLP
2121 Ponce De Leon Boulevard
Suite 920
Coral Gables, Florida  33134
(305) 442-7442

7

SERVICE LIST IN RE:  USA V. SILVESTRI CASE NO:  00-6309 SEITZ/GARBER

H. BRIAN McCORMICK, AUSA
500 E. BROWARD BLVD. #700
FT. LAUDERDALE, FL  33394

JAMES BENJAMIN, ESQUIRE
1 FINANCIAL PLAZA, #1615
FT. LAUDERDALE, FL  33394

CHARLES G. WHITE, ESQUIRE
2250 SW 3RD AVENUE #150
MIAMI, FL  33129

HOWARD SREBNICK, ESQUIRE
201 S. BISCAYNE BLVD.  #1300
MIAMI, FL  33131

PHILIP R. HOROWITZ, ESQUIRE
9130 S. DADELAND BLVD.
TWO DATRAN CTR-#1910
MIAMI, FL  33156

BRIAN L. TANNENBAUM, ESQ.
FIRST UNION FIN.  CTR.
200 S. BISCAYNE BLVD. #2690
MIAMI, FL  33131

DAVID ROTHMAN, ESQUIRE
FIRST UNION FIN. CTR.
200 S. BISCAYNE BLVD. #2690
MIAMI, FL  33131

MICHAEL TARRE, ESQUIRE
TWO S. BISCAYNE BLVD.
SUITE 3250
MIAMI, FL  33132

DAVID TARLOW, ESQUIRE
801 BRICKELL AVE. #1901
MIAMI, FL  33131

JOHN HOWES, ESQUIRE
633 SE 3RD AVENUE #4F
FT. LAUDERDALE, FL  33302

JON MAY, ESQUIRE
200 E. BROWARD BLVD. #1210
FT. LAUDERDALE, FL  33301

JOSEPH ROSENBAUM, ESQUIRE
2400 S. DIXIE HIGHWAY #105
MIAMI, FL  33133

RICHARD HAMAR, ESQUIRE
2437 BRIARCREST RD.
BEVERLY HILLS, CA  90210

JAYNE C. WEINTRAUB, ESQ.
100 SE 3ND STREET #3550
MIAMI, FL  33131

ANA M. JHONES, ESQUIRE
BAYSIDE PLAZA #625
330 BISCAYNE BLVD.
MIAMI, FL  33132

DAVID VINIKOOR, ESQUIRE
420 SE 12TH STREET
FT. LAUDERDALE, FL  33316

JEFFREY M. HARRIS, ESQUIRE
ONE EAST BROWARD BLVD.
SOUTH TRUST TOWER #925
FT. LAUDERDALE, FL  33301