UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,
         Plaintiff,

CASE NO. 00-6309-CR-Dimitrouleas

v.

JOSEPH SILVESTRI
         Defendant.
_____/

**DEFENDANT SILVESTRI'S MOTION
FOR ORDER FOR CARDIOLOGY EXAMINATION AND
CONCOMITANT CONTINUANCE OF SENTENCING**

    Defendant Joseph Silvestri moves this Court for an Order directing FDC Miami to obtain a current cardiology examination of the defendant and for a continuance of his sentencing, presently scheduled for November 14, 2002, until the report of that examination, as well as a complete set of the rest of defendant's relevant medical records, may be presented to the Court. The government does <u>not object</u> to a continuance of three weeks so as to permit FDC Miami to obtain a current cardiology examination and report on the defendant. In support of this motion, undersigned counsel represents as follows:

    1.    On October 28, 2002, undersigned counsel filed a motion seeking at least 30 days continuance of defendant's sentencing so that, *inter alia*, she could obtain relevant medical records and expert opinions documenting the defendant's ill health and needed treatments, including, if possible, a current, complete medical examination of the defendant. On October 31, 2002, the Court continued the sentencing to November 14, 2002 (a 13-day continuance).

    2.    By letters dated November 3 and 5, 2002, undersigned counsel requested of FDC Miami that the defendant be transferred to an emergency room due to the fact that, starting several

1



days previously, he has been waking several times in the night gasping for breath ("paroxysmal nocturnal dyspnea"), a symptom which, in the context of the defendant's history of coronary-artery disease and other symptoms (including an enlarged heart, fluid in his lungs and severe leg and foot swelling) is indicative of congestive heart failure. The first letter was based on medical consultations undersigned counsel was able to obtain over the weekend of November 2-3, the second, on a letter dated November 5, 2002 from Dr. Victor Molina, the private physician who had cared for the defendant for years before his incarceration. Dr. Molina's letter, a copy of which is attached hereto, stated, *inter alia*:

> Based on the history clinically...the patient is going into congestive heart failure, which is a life-threatening condition and [he] should be elevated urgently in the emergency room and also should have an evaluation by a cardiologist.[1]

3. On November 8, 2002, FDC Miami transferred the defendant to Jackson Memorial Hospital, Miami, but apparently the only examination he received there was for his severe arthritic condition; it appears that he did <u>not</u> receive a cardiology examination, nor any treatment responsive to his new symptoms indicative of congestive heart failure.

4. Undersigned counsel now asks the Court to order FDC Miami to provide the defendant with an immediate and complete examination by a cardiologist at Jackson Memorial Hospital. Such an examination is necessary to determine the <u>current</u> state of the defendant's coronary artery disease, first, as a precursor to his receiving necessary medical treatment to prevent

---

[1] Dr. Molina's letter also notes that the medication that Mr. Silvestri is being administered by FDC Miami includes Coumadin (warfarin) and nonsteroidal anti-inflammatory agents between which "[t]here is a known drug-to-drug interaction...possibly creating a life threatening condition by prolonging his prothrombin time/NR."

death from heart failure, second, so that the Court may be adequately and properly informed of the defendant's current medical condition when the Court rules on the defendant's motion for downward departure based on age and infirmity.

5. Despite diligent efforts by undersigned counsel, as of the date of filing this motion, November 12, 2002, two days before the sentencing, undersigned counsel has not been able to assemble a complete set of the defendant's relevant medical records. First, the FDC medical records thus far provided to undersigned counsel go through October 28, 2002. (Undersigned counsel was informed this morning that she will receive subsequent FDC medical records "later today or tomorrow morning.") Second, the FDC medical records do not include the defendant's hospitalization at Broward General Hospital where the defendant was taken by the U.S. Marshals on June 6, 2002, after the defendant's court-room collapse upon hearing the verdict in this case. Undersigned counsel has arranged to obtain but has not yet received the defendant's Broward General Hospital records. Third, undersigned counsel just learned yesterday that Dr. Molina's records do not include records of a hospitalization of the defendant at Palm Beach Gardens Hospital for cardiac problems in the recent past. Undersigned counsel is now in the process of obtaining those records. Fourth, although undersigned counsel has been in repeated contact with, and has received some records from, Dr. Molina's office, she has not yet received a letter that Dr. Molina has agreed to provide, summarizing the defendant's overall medical situation and describing the care that Mr. Silvestri needs at this time. Undersigned counsel considers this letter critical to the defendant's motion for downward departure.

6. In addition to needing more time so that FDC can provide the defendant with a cardiology examination and so that undersigned counsel can assemble as complete a set as possible

3

of defendant's relevant medical records for presentation to the Court, undersigned counsel also needs additional time so that she can more adequately prepare to argue in support of defendant's motion for downward departure and objections to the PSI.

7.  Undersigned counsel contacted counsel for the government, AUSA Diana Fernandez, this morning and learned that late last week Ms. Fernandez discussed with FDC Miami the possibility of obtaining a cardiology examination of the defendant and was informed that such examinations generally take two-to-three weeks to schedule. Ms. Fernandez authorized undersigned counsel to represent to the Court that the government does not object to a three-week continuance so that a such an examination and the report of same can be obtained.

WHEREFORE, for all the foregoing reasons, defendant Joseph Silvestri respectfully requests that this Court to enter an Order directing FDC Miami to obtain a current cardiology examination of the defendant and also to continue his sentencing, presently scheduled for November 14, 2002, for at least three weeks so that the report of that examination, as well as a complete set of the rest of defendant's relevant medical records, may be presented to the Court.

Respectfully submitted,

**JEANNE BAKER**
ATTORNEY AT LAW, P.A.
Florida Bar No. 0880700
2937 Southwest 27th Avenue, Suite 202
Miami, Florida 33133-3703
(305) 443-1600
(305) 445-9666 (fax)
**SENTENCING COUNSEL**
  **for JOSEPH SILVESTRI**

By: *[signature]*

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing instrument was mailed and sent by facsimile this 12th day of November 2002, to the following:

Assistant United States Attorneys
Brian McCormick and Diana L.W. Fernandez
United States Attorney's Office
500 E. Broward Boulevard
Ft. Lauderdale, Florida 33394
(954) 356-7255
(954) 356-7230 (fax)
**Counsel for the United States**

and

United States Probation Officer
Donald Jefferson
299 E. Broward Boulevard
Ft. Lauderdale, Florida 3301-1168
(954) 769-5515
(954) 769-5566 (fax)

Jeanne Baker, Esq.

5



# PALM BEACH MEDICAL GROUP
*Quality Health Care Through Teamwork*

SERVING THE COMMUNITY FOR 50 YEARS

November 5, 2002

*Via fax at 305-445-9666*

Ms. Jeanne Baker
Attorney At Law, P.A.
2937 SW 27 Avenue
Suite 202
Miami, FL 33133

Dear Ms. Baker:

As per our conversation earlier, I have spoken with Shannon Materio, the daughter of Mr. Silvestri, she spoke with him yesterday after Mr. Silvestri's evaluation by the prison health care professional. I am not sure if this was a doctor or a physician's assistant or a nurse practitioner. According to Shannon, the daughter, Mr. Silvestri told her that they found that his right leg was swollen but also a chest x-ray revealed a enlarged heart. Apparently Mr. Silvestri was also told that he probably had fluid around the heart and had fluid in the lung. Ms. Materio also tells me that Mr. Silvestri has described to her waking up in the middle of the night for the past ten days gagging and gasping for air and all that was given to him was an extra pillow to elevate his upper torso. Also there was no change in his medication except a bedside nitroglycerin to use on an as need basis. Based on the history clinically and clearly the patient is going into congestive heart failure, which is a life threatening condition and should be evaluated urgently in the emergency room and also should have an evaluation by a cardiologist. At the very least perhaps other tests like an echocardiogram with doppler should be performed to address the competency of his valves cardiac function and to rule out the possibility of a pericardial effusion, which was described previously as the fluid around the heart. His medication regimen should be evaluated and possibly some medications adjusted. He may even need intravenous medications to stabilize him and improve his symptoms. He may need serial cardiac enzymes to rule out the possibility of a heart attack as well as an electrocardiogram and a follow up chest x-ray to compare to the previous one done yesterday and evaluate for changes.

4601 North Congress Avenue ▲ West Palm Beach, Florida 33407
(561) 840-4600 ▲ Fax (561) 840-4678

Page 2

Note also that this patient is on Coumadin (warfarin). There is a known drug-to-drug interaction between Coumadin and nonsteriodal anti-inflammatory agents. This interaction potentiates the effect of Coumadin possibly creating a life threatening condition by prolonging his prothrombin time/INR. This may cause a severe bleed either spontaneously or via trauma no matter how minor it may be. This I come to mention because the patient in his list of medications provided to me through you shows that he is on naproxen and Aleve, which are both nonsteriodal anti-inflammatory agents. Again, this family of medications including aspirin and the like should be totally avoided in patients taking Coumadin because of the potential for life threatening bleeds that may occur.

Sincerely,

Victor M. Molina, M.D.