UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.  00-6309-CR-DIMITROULEAS (S)(S)

UNITED STATES OF AMERICA,

              Plaintiff,

v.

JOSEPH SILVESTRI,

              Defendant.

NIGHT BOX
FILED

NOV 2 5 2002

CLARENCE MADDOX
CLERK, USDC/SDFL/FTL

_____

GOVERNMENT'S SUPPLEMENTAL RESPONSE IN OPPOSITION
TO DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

The United States of America, through its undersigned Assistant United States Attorney, files this supplemental response in opposition to defendant Silvestri's motion for a downward departure. For the reasons set forth below as well as though in the government's original response, the government submits that the defendant's motion should be denied.

In consideration of the defendant's motion for a downward departure, the government submits the two attached letters. The first is a letter from Bureau of Prisons (BOP) physician, Dr. Edwin Lopez, which recounts the medical care being provided to the defendant at FDC-Miami up to the date of the letter, November 15, 2002. Also attached is a letter from Chief Physician Michael B. Nelson, BOP Health Services Division, BOP, Washington, D.C., concerning the ability of BOP to handle Mr. Silvestri's medical



conditions.    That letter also has an attachment entitled "Outline of Medical Designation and Services Procedures."

In light of both of these documents, it appears that the defendant's medical situation is not as dire as is being painted by defense counsel and that even assuming all the health complaints of the defendant, that BOP would be more than capable of handling and treating him, especially through one of the seven Medical Referral Centers should he require it.

<u>CONCLUSION</u>

WHEREFORE, for all the foregoing reasons as well as those contained in the government's original response, the government respectfully requests that this Honorable Court deny the defendant's motion for a downward departure.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY

By: _____
DIANA L.W. FERNANDEZ
Assistant United States Attorney
Court I.D. #A5500017
500 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Fax: (954) 356-7230

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was mailed this _25_ day of _November_ , 2002 to:

Jeanne Baker, Esquire
2937 S.W. 27th Avenue, Suite 202
Miami, Florida 33133

Donald Jefferson, U.S. Probation Officer
299 E. Broward Boulevard
Room 409
Fort Lauderdale, Florida 33301

_Diana W. Fernandez_
DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY

3



**U.S. DEPARTMENT OF JUSTICE**
**FEDERAL BUREAU OF PRISONS**

*33 N.E. Fourth Street*
*Miami, FL 33132-2112*
*Tel: (305) 982-1279*
*Fax: (305) 982-1271*

November 15, 2002

Diana Fernandez, AUSA                    Via Fax: 954-356-7230
500 E. Broward Blvd.
Suite 700
Ft. Lauderdale, FL 33301

     Re:    Joseph Silvestri, register no. 04641-016

Dear Ms. Fernandez:

     Mr. Joseph Silvestri arrived at the Federal Detention Center Miami on June 9, 2002, with a medical history that included the following:

> hypertension (high blood pressure) for eight years;
> post angioplasty (opening of the major blood vessel(s) of the heart) six years prior;
> swollen joints of the knee; and
> nervousness

     Mr. Silvestri's major concern at that time was his knee, which he was scheduled to have knee replacement. His medication included: Norvasc (amlodipine) for hypertension; Lasix (furosemide) a water pill; Zocor (lovastatin) a cholesterol lowering agent and Coumadin (warfarin) for blood clot prevention.

     On June 27, 2002, Mr. Silvestri was evaluated as an emergency because of chest discomfort. Mr. Silvestri stated the chest pains began when he was taken to the Special Housing Unit, stating that the confinement caused him stress. During the evaluation, Mr. Silvestri stated he no longer wanted to live and was referred to the Federal Detention Center's Psychology staff.

     Mr. Silvestri was evaluated on July 25, 2002, at which time Mr. Silvestri stated that his main concern was a knee replacement surgery that was pending prior to his incarceration. The results of his physical exam revealed no cardiac complaints.[1] Mr. Silvestri's blood pressure level was optimal (the maximum best level a person could have regardless of age) and his lipid (fat)

---

     [1] A review of his blood work for his previous chest pain showed normal cardiac enzymes that did not suggest a heart attack on June 27, 2002.

levels were within the recommended guidelines for the American Heart Association. The medication that Mr. Silvestri was taking upon his arrival was continued and Motrin (ibuprofen) was provided for knee discomfort. On July 15, 2002, Mr. Silvestri was again seen by medical staff because Mr. Silvestri was requesting knee replacement surgery.

On September 12, 2002, during a routine follow-up exam, Mr. Silvestri stated "I am fine" and requested to have his Coumadin levels checked. During this exam, Mr. Silvestri's blood pressure and lipid parameters were excellent. The patient had no cardiac complaints, no angina and no shortness of breath.

On October 9, 2002, Mr. Silvestri was evaluated as an emergency because of chest discomfort. A physical exam and electrocardiogram were unremarkable and Mr. Silvestri was returned to his unit. As a result of Mr. Silvestri's request for medical attention, Mr. Silvestri was given an appointment for October 20, 2002, but did not show up for his appointment because he was in the visiting room. At that time, Mr. Silvestri had written that he had unbearable foot pain. Mr. Silvestri was re-scheduled for an appointment on October 28, 2002.

On October 28, 2002, Mr. Silvestri was seen and denied headache, shortness of breath or chest pain. Mr. Silvestri did however complain of foot pain. Mr. Silvestri was able to cross his legs, get on and off the examining table, and had no back pain complaints. The laboratory results to follow Mr. Silvestri's lipid and anticoagulation were once again in the optimal range. Mr. Silvestri's medications were renewed and a different type of medication for muscle-joint discomfort was ordered.

Mr. Silvestri was evaluated on November 4, 2002, with the complaint of shortness of breath after he falls asleep. Mr. Silvestri stated that 'if I drink some water, I get better." Mr. Silvestri was able to walk and talk for more than fifty feet without any shortness of breath. This was observed by Dr. Lopez, who escorted Mr. Silvestri to the medical department. Mr. Silvestri was advised that waking up with the feeling of shortness of breath could be caused by multiple reasons, including anxiety, obesity or congestive heart failure (a slowing of the heart function that can cause fluid to back up to different parts of the body). Because Mr. Silvestri's vital signs were stable and his lungs sounded clear with a stethoscope, it did not appear that there was a problem. However, to confirm this conclusion, a chest x-ray was done that revealed on preliminary exam no signs of overt congestion (Mr. Silvestri has admitted to exposure of asbestos).

Mr. Silvestri lost fourteen pounds since his last visit and neither his legs or his neck were swollen. Mr. Silvestri was told that no change in any medication was required and that the x-ray would be reviewed by a radiologist. Since November 4, 2002, Mr. Silvestri has been followed closely by the Clinical Director. On November 8, 2002, Mr. Silvestri was referred to a local hospital for further tests which were unavailable at the Federal Detention Center. The results of that visit were as follows: Patient to continue current therapy. Patient was found to have arthritis in his right ankle and foot. No new or different medications recommended.

Mr. Silvestri has been followed by myself, Dr. Edwin Lopez, a staff physician at the Federal Detention Center. I have been employed by the Bureau of Prisons since August, 1991. I am a diplomat of the American Academy of family Physicians since 1991 and hold two medical licenses.

Sincerely,

Dr. Edwin Lopez

U.S. Department of Justice

**Federal Bureau of Prisons**

_____

*Washington, D.C. 20534*

November 25, 2002

BY TELEFACSIMILE AND EXPRESS MAIL

Diana Fernandez
United States Attorney's Office
Southern District of Florida
Organized Crime Section
500 East Broward Boulevard, Suite 700
Fort Lauderdale, Florida  33394-3002

　　　**RE:　U.S. v. Joseph Silvestri**

Dear Ms. Fernandez:

　　►This letter responds to your inquiry concerning the Federal
Bureau of Prisons' (BOP) ability to provide health care for
Joseph Silvestri.  We have reviewed the health care information
you have provided from Mr. Silvestri's physician and the letters
sent by his attorney, Jeanne Baker.  Mr. Silvestri, who is being
detained at the Federal Detention Center in Miami, Florida, is a
71-year-old man who has been diagnosed with coronary artery
disease, hypertension, hypercholesterolemia, prostate disease,
dysuria, nocturia, and osteoarthritis.  He has a history of heart
attacks, angina, deep venous thrombophlebitis, pulmonary
embolism, edema of the ankles and lower legs, and hematochezia.
He has had a replacement of his left knee and may require
additional surgery on his right knee and hip.  He has been
prescribed various medications including:  Coumadin, Monorpril,
Cardizem, Lasix, Zocor, Kay Ciel, Restoril, and Percocet.

　　Based on our review of the information we have concerning
Mr. Silvestri's medical status, we believe that the BOP will be
able to continue to provide appropriately for Mr. Silvestri's
health care and prescriptive needs using BOP physician staff and
expert community consultants and facilities, as necessary.

　　Once Mr. Silvestri is sentenced, the BOP will, however,
designate him to a medical referral center (MRC) where his health
needs will be evaluated.  MRCs also provide in-patient care.  The
MRC to which Mr. Silvestri would be designated will depend not

only upon his medical conditions, but also upon his security
classification and the availability of beds at the various MRCs.
Any of the BOP's MRCs, which all have arrangements with hospitals
in the community, can address Mr. Silvestri's medical needs.

For your convenience, I have also attached a general outline
of the BOP's medical and psychiatric capabilities.  If I can
offer any further information on this matter, please do not
hesitate to contact me at (202) 307-2867, extension 107.

Sincerely,

Michael B. Nelson, D.O.
Chief Physician

Attachment

cc:  National Health Services
       Administrator
     Chief, Office of Medical Designations
       and Transportation

Attachment

## OUTLINE OF MEDICAL DESIGNATION AND SERVICES PROCEDURES

The Federal Bureau of Prisons currently houses approximately 140,000 inmates. The Bureau's Health Services Division administers the Office of Medical Designations and Transportation (OMDT) which is responsible for the timely and efficient designation and movement of inmates with health care needs. OMDT medically designates approximately 20,000 inmates per year who have acute, chronic, terminal, and resolved medical illnesses. The BOP provides essential medical, dental, and mental health services to inmates by professional staff consistent with acceptable community standards.

To accommodate the hospitalization needs of our inmate population, the Bureau of Prisons has seven in-patient Medical Referral Centers that have approximately 1993 in-patient/chronic care beds which address the spectrum of inmate health care needs consistent with the community standard of medical care. Additionally, we have an in-patient Psychiatric Referral Center which has 228 in-patient/chronic care beds for inmates with psychiatric illnesses that require hospitalization. All of the Bureau's seven Medical Referral Centers are accredited by the Joint Commission on Accreditation for Health Care Organizations (JCAHO) which sets the medical, surgical, and psychiatric standards for hospitals nationwide. All of the Bureau of Prisons' non-medical institutions are JCAHO-accredited for ambulatory care.

Each non-medical federal prison is staffed by physicians, dentists and other health care providers such as physician assistants/nurse practitioners, nurses, pharmacists, and laboratory and x-ray personnel. Additionally, our institutions make use of consultants in the local communities to provide medical specialty care to the inmate population. Our institutions routinely care for inmates with moderate and severe illnesses such as hypertension, diabetes mellitus, thyroid disorders, arteriosclerotic heart disease, post heart attack and stroke patients, pacemaker patients, congestive heart failure patients, seizure disorders as well as patients with HIV infection, AIDS and psychiatric illness. Non-medical institutions additionally care for inmates requiring emergency medical and non-inpatient psychiatric care. In addition to medical and psychiatric resources available at Bureau of Prisons' institutions, the Bureau has extensive access to such resources in the community.

**Attachment**

When OMDT is notified of a newly sentenced inmate, all
documentation submitted to the office by the courts, federal
prosecutors, and defense attorneys is reviewed and an appropriate
designation to one of our non-medical institutions or to one of
our Medical Referral Centers is made.  OMDT designates inmates to
the institution that best matches the medical and psychiatric
care needs of the inmate.

The BOP routinely cares for inmates with minor to severe
psychiatric illness, HIV, AIDS, chronic illness, and infectious
disease patients in both our general population institutions as
well as our Medical Referral Centers consistent with the
community standard of care.  The BOP provides medical care to
more than 40,000 inmates, per year, with chronic medical and
psychiatric conditions.  Currently, the BOP cares for
approximately 969 HIV positive inmates and 508 inmates with AIDS.