UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,   CASE NO. 00-6309-CR-Dimitrouleas
        Plaintiff,
v.
JOSEPH SILVESTRI,
        Defendant.
_____/

### DEFENDANT'S FILING OF UPDATED MEDICAL LETTER

Undersigned counsel attaches hereto, on behalf of defendant Joseph Silvestri, a letter dated March 19, 2003, from Dr. Martin Bilsker, a cardiologist from the University of Miami whose earlier letter is attached as Exhibit B to defendant's Expanded Motion for Downward Departure. In the attached letter, Dr. Bilsker describes the care that defendant has received since February 7, 2003 (the day that defendant was previously scheduled for sentencing) regarding his deep vein thrombosis. Dr. Bilsker's letter concludes that "Mr. Silvestri did not receive necessary care."

                                        Respectfully submitted,

                                        JEANNE BAKER
                                        ATTORNEY AT LAW, P.A.
                                        Florida Bar No. 0880700
                                        2937 Southwest 27th Avenue, Suite 202
                                        Miami, Florida 33133-3703
                                        (305) 443-1600
                                        (305) 445-9666 (fax)
                                        **COUNSEL for JOSEPH SILVESTRI**

                                        By: _____



## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing instrument was delivered by facsimile this ___ 20th ___ day of March 2003, to the following:

>Assistant United States Attorneys
>Brian McCormick and Diana L.W. Fernandez
>United States Attorney's Office
>500 E. Broward Boulevard
>Ft. Lauderdale, Florida 33394
>(954) 356-7255
>(954) 356-7230 (fax)
>**Counsel for the United States**
>
>   and
>United States Probation Officer
>Donald Jefferson
>299 E. Broward Boulevard
>Ft. Lauderdale, Florida 3301-1168
>(954) 769-5515
>(954) 769-5566 (fax)

_____
JEANNE BAKER



# UNIVERSITY OF Miami
SCHOOL OF MEDICINE

March 19, 2003

Jeanne Baker
Attorney at Law, PA
2937 SW 27th Avenue
Suite 202
Miami, FL  33133

RE: **Joseph Silvestri**

Dear Ms. Baker:

As per your request, I reviewed records from Federal Detention Center between 2/7/03 and 3/7/03, in addition to a Larkin Hospital admission 2/13/03 and an outpatient stress test at Cedars Medical Center 3/6/03. I was asked to comment on whether Mr. Silvestri was receiving all the care that was necessary.

Mr. Silvestri is a 71 year-old male with a history of severe coronary artery disease with a coronary artery bypass graft in December 2002. He also has a history of recurrent deep vein thrombosis and pulmonary emboli (blood clots to the lung). The active problem on the medical records enclosed is deep vein thrombosis. This is a condition where the deep veins of the leg develop clots. When this occurs, there is a risk of clots dislodging and going to the lungs, a potentially serious and sometimes fatal occurrence. In addition, deep vein thrombosis can cause permanent damage to the veins of the leg which can result in chronic swelling. Since Mr. Silvestri had a history of deep vein thrombosis and clots to the lung, he should be on coumadin therapy permanently. Coumadin is a blood thinner which causes the blood to take longer to clot. It appears from the records that he was not on coumadin at the Federal Detention Center at the time of the first note, February 7, 2003. It would be the standard of care in this clinical situation to receive coumadin. In addition, even after the swollen leg was noted and thought to be possibly due to deep vein thrombosis, no anticoagulation was given. In this case, the appropriate therapy is intravenous or injections into the skin of drugs to prevent clotting, as coumadin takes several days to work. There was a 6 day delay between the time the swelling of his legs were noted and thought possibly due to blood clots in the leg and obtaining a Doppler test to look for the clots. The Doppler test showed significant clots in the right leg, and he was transferred to Larkin Hospital where an umbrella was placed. The purpose of the umbrella is to catch any clots which become loose from the leg and would normally travel to the lung. They are instead caught by the umbrella device in the vena

cava, the main vein leading to the heart from the lower body. This is not a therapy for the clots in the leg, but to prevent a serious clot from the legs going to the lung. In fact, a test done at Larkin suggested a blood clot in the lung. Anticoagulation (blood thinning) is still needed to treat the clots in the leg. In spite of the need for this standard treatment for deep vein thrombosis (blood clots in the leg), no anticoagulation was given by the Federal Detention Center when he returned from Larkin Hospital. In fact, there is a note from Larkin Hospital on 2/18/03 just prior to his return to the Federal Detention Center stating that the patient was to be switched from intravenous to oral anticoagulation therapy. Mr. Silvestri also told the staff on a note recorded at Federal Detention Center on 2/18/03 that "the doctor said I was going to be on coumadin for the rest of my life." In spite of this he was not started on coumadin until 10 days later on 2/28/03, and was not on any other form of anticoagulation. Coumadin is a potentially dangerous drug with a narrow range between being therapeutic and being toxic. He was started on an arbitrary regimen on 2/28/03. The normal way to manage this would be to get a blood test after 3-4 days to look at the effect in the blood and adjust the dose as needed. According to the staff physician note on 3/3/03, an INR blood test to evaluate the effect of the coumadin was ordered for 3/10/03. Ten days is too long after starting coumadin to check the result. There is a significant risk to the patient that he could have life-threatening bleeding if the coumadin effect on the blood is too high, or on the other hand, no effective treatment for the clots in his leg if the effect is too low.

In summary, Mr. Silvestri did not receive necessary care. He should have been on coumadin permanently and was not at the Federal Detention Center. When he had a swollen right leg, diagnosis and rapid treatment is urgent to prevent life-threatening blood clots to the lung as well as damage to the blood vessels in the leg. He did not receive treatment for 6 days until he was transferred to Larkin Hospital. In addition, after discharge from Larkin he was not given coumadin for 10 days so his clots were not treated. When he was finally given coumadin, appropriate follow-up was not given to adjust the coumadin effect on his blood clotting to prevent either life-threatening bleeding or an ineffective treatment of his blood clots.

Martin S. Bilsker, MD, FACC
Associate Professor of Medicine
Director, Echo/Doppler Laboratory and
JMH Outpatient Cardiology Clinic

MSB/mrp