**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**UNITED STATES OF AMERICA,**                    **CASE NO. 00-6309-CR-Dimitrouleas**
                                Plaintiff,

v.

**JOSEPH SILVESTRI**
                    Defendant.
_____/

**DEFENDANT SILVESTRI'S**
**MEMORANDUM IN SUPPORT OF**
***ORE TENUS* MOTION FOR RECUSAL**

Defendant Joseph Silvestri files this memorandum in support of the *ore tenus* motion for

recusal made by his counsel at the sentencing hearing on March 21, 2003.

**Factual background**

On November 21, 2002, the Court filed and served on the parties a Notice stating:

> The Court hereby gives notice to all parties that on or about June 27,
> 2002, this Court was informed by the U.S. Marshal's Service that the
> prison had intercepted communications between the Defendant and
> his wife wherein there were discussions about harm coming to the
> undersigned. The Court finds no mention of this in the Pre-Sentence
> Investigation Report, and the information will have no impact on
> Defendant's up and coming sentencing, but in an abundance of
> caution, the Court makes this disclosure.

In open court, prior to the commencement of the defendant's sentencing hearing on March

21, 2003, the Court raised the issue of whether a recusal motion was appropriate in light of this

Notice. In response, undersigned counsel -- who had not represented defendant at trial or in the post-

trial period during which the "discussions of harm coming to the [Court]" had occurred -- in an

abundance of caution, made an *ore tenus* motion for the Court to recuse itself pursuant to 28 U.S.C.

§455(a).



Immediately after the Court recessed to provide the parties an opportunity to file memoranda on this motion, undersigned counsel commenced efforts to gather information relevant to the matter.[1] In particular, undersigned counsel sought information from government counsel and from the Marshal's Service, as well as from the defendant and his family.

Government counsel, AUSA Diana Fernandez, explained to undersigned counsel that she did not have any written reports on the matter, and did not know exactly what the Court had been told, but understood that roughly the following had transpired: Sometime after defendant was incarcerated at FDC Miami he and his wife, Dolores Silvestri, engaged in one or more conversations over the telephone (intercepted by FDC Miami) in which the wife made reference to "running the judge over with a car" or otherwise "taking care of the judge," and that, in response, the defendant told his wife not to discuss this matter on the telephone. Ms. Fernandez referred undersigned counsel to FDC and/or the U.S. Marshal's Service, which had conducted a criminal investigation of the matter, for any further information.

Undersigned counsel was not able to obtain any information from FDC but did locate and communicate with one of the Deputy U.S. Marshals who had investigated the matter, Criminal Investigator Rachel O'Malley. However, after checking with her superiors, Deputy O'Malley informed undersigned counsel at the end of the day on March 21, 2003, that she was not able to provide undersigned counsel with any information without a *subpoena*, which would then be referred to higher authority within the Marshal's Service. Undersigned counsel has, this date, served such

---

[1] Although undersigned counsel had briefly discussed the Notice with defendant when she had received it, she had not conducted an investigation into the matter at that time.

2

a *subpoena* (a copy of which is attached hereto).[2]

Undersigned counsel learned from the defendant and his family that in late June 2003 defendant was placed in solitary confinement for approximately two weeks and his wife was barred from visiting him at FDC for approximately <u>two and a half months</u> as a result of the overheard conversation(s). During that period of time, Mrs. Silvestri was visited by two Deputy U.S. Marshals and interrogated. Other than what is stated in the Court's Notice, quoted above, undersigned counsel has no knowledge as to what the U.S. Marshal Service or any other entity or person has reported to the Court.

## ARGUMENT

28 U.S.C. §455(a) provides as follows:

> Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality <u>might reasonably</u> be questioned. [Emphasis added.]

Congress amended §455 in 1974 "for the specific purpose of 'broadening and clarify[ing] the grounds for judicial disqualification." *United States v. Kelly*, 888 F.2d 732, 744 (11th Cir.1989), *quoting Liljeberg v. Health Servs. Acquisition Corp.*, 486 U.S. 847, 849 (1988). Specifically, the amended statute "liberalize[d] greatly the scope of disqualification in the federal courts," *United States v. Murray*, 253 F.3d 1308, 1310 (11th Cir. 2001) [citation omitted], by, *inter alia*, imposing on district judges a "self-enforcing obligation to recuse [themselves] where the proper legal grounds exist." *Id. See also United States v. Torkington*, 874 F.2d 1441, 1446 (11th Cir.1989); *Kelly, supra*, 888 F.2d at 744.

---

[2]Deputy O'Malley's supervisor informed undersigned counsel that the *subpoena* must be transmitted to the U.S. Marshal's legal department for processing and that she did not know how long that would take.

Focusing on subsection (a) of §455 as amended, the Supreme Court emphasized in *Liljeberg* that "[t]he very purpose of §455(a) is to promote confidence in the judiciary by avoiding even the <u>appearance</u> of impropriety <u>whenever possible</u>." 486 U.S. at 865 (emphasis added). The standard which the district judge must apply to his determination under §455(a) as to whether he should or should not recuse himself is an objective one, focusing on a hypothetical reasonable observer:

> The test of whether to recuse is one of objective reasonableness, that is, whether "an objective, disinterested, lay observer fully informed of the facts underlying the grounds on which recusal was sought would entertain a significant doubt about the judge's impartiality.

*Torkington, supra,* 874 F.2d at 1446; *see also Liljeberg, supra,* 486 U.S. at 859-60. However, to "avoid[ ] even the appearance of impropriety whenever possible," *id.* at 865, this test must be applied liberally, in favor of disqualification. As the Eleventh Circuit stated in *Murray*:

> Most important, <u>the benefit of the doubt [under §455] must be resolved in favor of recusal</u>.

253 F.3d at 1310 (emphasis added) [citation omitted]; *see also Kelly, supra,* 888 F.2d at 744 (§455 "requires judges to resolve any doubts they may have in favor of disqualification").

Before turning to the facts of this case, one further point of law needs to be noted. It has long been the rule in this Circuit that in resolving the question of whether a district judge should or should not recuse himself under §455, the judge must make the decision himself and not delegate the matter to the parties. Thus, the Eleventh Court stated in *Kelly*:

> We hold that, as a general rule, "'a federal judge should reach his own determination [on recusal], *without calling upon counsel* to express their views....The too frequent practice of advising counsel of a possible conflict, and asking counsel to indicate their approval of a judge's remaining in a particular case is fraught with potential coercive elements which make this practice undesirable.'"

*Id.* at 744-745, *quoting Matter of National Union Fire Ins. Co.*, 839 F.2d 1226, 1231 (7th Cir. 1988) (*italics* added by Seventh Circuit) [internal quotations omitted]. Undersigned counsel notes this point, not to suggest that the Court <u>has</u> "call[ed] upon counsel to express their views," but merely to explain in advance that in presenting reasons why the motion for recusal should be granted, undersigned counsel is not expressing her own opinion.

Applying these principles here, undersigned counsel submits that, under §455(a), disqualification is warranted in this case. Although the details of what the Court was told are not known to undersigned counsel at this time, what is known is that the Court was informed that a threat of "harm coming to the [Court]" -- indeed, a threat along the lines of "running the judge over with a car" or otherwise "taking care of the judge" -- was discussed by the defendant and his wife. Plainly, on its face, this was tantamount to a death threat against the Court.

Courts have recognized that, under "unique circumstances," "[a] defendant's alleged death threat against a judge may...sufficiently raise the specter of partiality to warrant the judge's recusal." *United States v. Yousef*, 1999 WL 714103,*2 (S.D.N.Y. 1999). In *United States v. Greenspan*, 26 F.3d 1001 (1994), the Tenth Circuit found just such "unique circumstances." There the FBI had investigated "allegations that defendant had conspired to kill the judge..." and had informed the judge of these allegations, who had then "expedited"defendant's sentencing hearing in order to "get [the defendant] into the federal penitentiary immediately...." *Id.* at 1005. When presented with a motion to recuse himself, however, the judge declined to do so. *Id.* at 1004. .

In concluding that the trial judge in *Greenspan* erred in denying the recusal motion, the Tenth Circuit focused most of its analysis on whether or not there was "any reason to believe that threats were made only in an attempt to obtain a different judge, or for other vexatious or frivolous

5

purpose." *Id.* at 1006. The significance of this focus, *Greenspan* explained, is that "not...all death threats against a judge will mandate that judge's recusal under Section 455....[I]f a judge concludes that recusal is at least one of a defendant's objectives [in making a threat against a judge] (whether or not the threat is taken seriously), then section 455 will not mandate recusal because that statute is not intended to be used as a forum shopping statute." *Id.* at 1006.

*Greenspan* identified two circumstances in which a threat by a defendant against a judge is likely to be considered a "ploy" to attempt to forum shop:

> [1] [I]f a death threat is communicated directly to the judge by a defendant, it may normally be presumed that one of the defendant's motivations is to obtain a recusal, particularly if he thereafter affirmatively seeks a recusal....

> [2] [I]f a defendant were to make multiple threats to successive judges or even to multiple judges on the same court, there might be some reason to suspect that the threats were intended as a recusal device.

*Id.* The <u>absence</u> of both of these circumstances was central to the decision in *Greenspan* requiring recusal. *Greenspan* explained:

> [1] Here, by contrast, the defendant did not communicate the death threat to the judge, nor is there any suggestion that the defendant ever intended the judge to learn of the threat before it was actually carried out.....

> [2] Once again, that scenario is not presented here as this threat was directed only at a single judge and there is no suggestion that the threat was intended to be communicated to the judge before it was carried out.

*Id.* Based on its finding that neither of these circumstances obtained, the Court in *Greenspan* held that "[i]n a case like this, <u>where there was no inference that the threat was some kind of ploy</u>, the judge should have recused himself pursuant to section 455(a) and allowed another judge to sentence

6

Greenspan." *Id.* at 1006 (emphasis added).

Although not the central basis of its holding, *Greenspan* also discussed the trial judge's handling of the timing of defendant's sentencing in that case -- specifically, the fact that the judge "accelerated the date of Greenspan's sentencing...to get [him] into the penitentiary system as quickly as possible..." and "refused to grant a continuance of the sentencing hearing even though...counsel had been appointed only two days before...." *Id.* Finding that "these actions standing alone would not provide sufficient reason to believe a judge was biased against the defendant," the Court nonetheless concluded that "when considered in light of the judge's knowledge of the alleged threats against him, these [actions] might provide further bases for questioning the judge's partiality." *Id.* (emphasis added). In other words, *Greenspan* did not hold that recusal in a death-threat case would be required only where the judge took such actions or otherwise demonstrated that he "took the threat seriously." *See id.* at 1007. Rather, *Greenspan* held that recusal in a death-threat case would be required "where there was no inference that the threat was some kind of ploy," *id.* at 1006 (emphasis added), and that actions reflecting that the judge "took the threat seriously" were neither necessary nor sufficient[3] for the grant of such a motion.[4]

---

[3]Concomitantly, the failure to "t[ake] the threat seriously" is also neither necessary nor sufficient for the denial of such a motion. That is why, in discussing when recusal is not mandated, *Greenspan* added the words underlined words in the following statement: "[I]f a judge concludes that recusal is at least one of a defendant's objectives [in making a threat against ] (whether or not the threat is taken seriously), then section 455 will not mandate recusal because that statute is not intended to be used as a forum shopping statute." *Id.* at 1006 (emphasis added).

[4]Cases relying on *Greenspan* have failed to understand this subtle but significant point -- namely, that "t[aking] the threat seriously" is neither necessary nor sufficient to require recusal. *See, e.g., Yousef,* 1999 WL 714103 at*3 (wrongly claiming that *Greenspan's* holding was predicated on the fact that "the trial judge's actions manifested an apparent belief in the genuineness of the threat"); *United States v. Yu-Leung,* 51 F.3d 1116, 119-1120 (2d Cir. 1995)

Under *Greenspan*, correctly understood, this Court, too, should recuse itself pursuant to §455(a). Here, as in *Greenspan*, there is "[no] reason to believe that threats were made only in an attempt to obtain a different judge, or for other vexatious or frivolous purpose." *Id.* at 1006. More specifically, as in *Greenspan*, "the defendant [here] did not communicate the death threat to the judge" and there is no "suggestion that the defendant ever intended the judge to learn of the threat before it was actually carried out." *See id.* Indeed, the defendant's instruction to his wife not to discuss this matter over the telephone appears to have been an active effort to keep the threat a secret. It was only because inmate telephone calls are routinely intercepted at FDC that the threat emerged into the open at all and was reported to the Court by the U.S. Marshal Service. Nor did the defendant "make multiple threats to successive judges or...to multiple judges on the same court." *See id.* Moreover, whether or not the Court "took the threat seriously," it appears that FDC and the U.S. Marshal Service did -- at least seriously enough to relegate the defendant to solitary confinement for two weeks, to prohibit his wife from visiting him for two and a half months, and to conduct a criminal investigation.

Under these circumstances -- circumstances that are just as "unique" as *Greenspan's* -- "a reasonable person <u>could</u> question the [Court's] impartiality." *Id.* at 1007 (emphasis added). As in *Greenspan*, "[e]ven if this [Court] were one of those remarkable individuals who could ignore the personal implications of such a threat, the public reasonably <u>could</u> doubt his ability to do so." *Id.* (emphasis added). This is particularly so given the uncontrollable public outbursts of defendant's wife and adult children in the courtroom when the verdict was announced. Such behavior, described in detail in the local press at the time, casts negative aspersions on defendant's wife and family

_____

(same); *Marino v. United States*, 1999 WL 39008 (N.D. Ill. 1999) (same).

8

which, especially when coupled with a death-threat, could lead the public reasonably to believe that it will be very difficult, if not impossible, for the Court to remain impartial towards the defendant. In the end, it is "the <u>appearance</u> of impropriety" which is at issue, not a claim of actual bias, and as the Supreme Court emphasized in *Liljeberg*, "[t]he very purpose of §455(a) is to promote confidence in the judiciary by avoiding even the <u>appearance</u> of impropriety <u>whenever possible</u>." 486 U.S. at 865 (emphasis added). To the extent that the Court is not completely convinced that recusal is necessary to avoid even "the <u>appearance</u> of impropriety"of this point, it is well to remember that "the benefit of the doubt [under §455] <u>must be resolved in favor</u> of recusal" (emphasis added).

## CONCLUSION

For all the foregoing reasons, defendant Joseph Silvestri respectfully requests that this Court recuse itself pursuant to 18 U.S.C. 455(a) and permit Silvestri to be sentenced by another judge.

Respectfully submitted,

**JEANNE BAKER**
ATTORNEY AT LAW, P.A.
Florida Bar No. 0880700
2937 Southwest 27th Avenue, Suite 202
Miami, Florida  33133-3703
(305) 443-1600
(305) 445-9666 (fax)
**SENTENCING COUNSEL**
 **for JOSEPH SILVESTRI**

By: _____

9

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing instrument was sent by facsimile this _24th_ day

of March 24 2003, to the following:

> Assistant United States Attorneys
> Brian McCormick and Diana L.W. Fernandez
> United States Attorney's Office
> 500 E. Broward Boulevard
> Ft. Lauderdale, Florida 33394
> (954) 356-7255
> (954) 356-7230 (fax)
> **Counsel for the United States**
>
> and
> United States Probation Officer
> Donald Jefferson
> 299 E. Broward Boulevard
> Ft. Lauderdale, Florida 3301-1168
> (954) 769-5515
> (954) 769-5566 (fax)

Jeanne Baker, Esq.

10

AO 89 (Rev. 7/95) Subpoena in a Criminal Case

# United States District Court

———————— DISTRICT OF ————————

United States
**V.**

Joseph Silvestri

## SUBPOENA IN A CRIMINAL CASE

CASE NUMBER: 00-6309-cr-
Dimitrouleas

TO:    Edward A. Stubbs
U.S. Marshal
301 N. Miami Ave. Room 205
Miami, FL 33128

[x] YOU ARE COMMANDED to appear in the United States District Court at the place, date and time specified below or any subsequent place, date and time set by the court, to testify in the above referenced case. This subpoena shall remain in effect until you are granted leave to depart by the court or by an officer acting on behalf of the court.

| PLACE | COURTROOM |
|---|---|
| U.S. District Court<br>299 E. Broward Blvd.<br>Ft. Lauderdale, FL 33301 | 203E |
| | DATE AND TIME |
| | 3/25/03 at 9:00 a.m. |

[ ] YOU ARE ALSO COMMANDED to bring with you the following document(s) or object(s):

Any and all reports, memos, notes or other documents pertaining to an investigation conducted by your agency of Joseph Silvestri, Reg. No. 04641-016, and/or his wife Dolores Silvestri, in connection with alleged threats made by Mr. or Mrs. SIlvestri, including but not limited to any documentation of what information relating to this matter was transmitted to Judge Dimitrouleas.

The documents sought via this subpoena are needed for a hearing on a motion to recuse Judge Dimitrouleas.

| U.S. MAGISTRATE JUDGE OR CLERK OF COURT | | DATE |
|---|---|---|
| *Carlo* | | 3/24/03 |
| (BY) DEPUTY CLERK | | |

| ATTORNEY'S NAME, ADDRESS AND PHONE NUMBER | |
|---|---|
| Jeanne Baker, Esq.<br>2937 S.W. 27th Ave. Suite 202<br>Miami, FL 33133    (305) 443-1600 | *Jeanne Baker* |