UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

NIGHT BOX FILED
APR 2003
CLARENCE MADDOX
USDC / SDFL / MIA

UNITED STATES OF AMERICA,    CASE NO. 00-6309-CR-Seitz
            Plaintiff,
v.
JOSEPH SILVESTRI,
            Defendant.
_____ /

## DEFENDANT'S OBJECTIONS TO THE USE OF FRAUD FACTS
## IN DETERMINING HIS GUIDELINES IN THIS MONEY-LAUNDERING CASE

Defendant Joseph Silvestri, through undersigned counsel, hereby files these written objections to the Presentence Investigation Report ("PSI") in response to paragraph 3 of the Court's "Order on March 27, 2003 Status Conference" directing defendant to file a pleading on the limited issue of the new objection-arguments articulated by undersigned counsel at that status conference.

**I.    Preliminary statement.**

Through prior counsel, Richard Sharpstein, Esq., defendant filed two written objections to the recommended calculation of his sentence in the PSI:

> • Objection to ¶74 (Specific Offense Characteristics), seeking to hold defendant responsible for funds that "exceeded $20,000,000 but not more than $35,000,000," resulting in a recommended upward adjustment of ten levels; and

> • Objection to ¶75 (Adjustment for Role in the Offense), seeking to treat defendant as an "organizer of a criminal activity that involved five or more participants," resulting in a recommended upward adjustment of four levels.

These two objections remain, today, defendant's objections to the PSI's recommended calculations.

At the status conference on March 27, 2003, in response to questions by the Court, undersigned counsel articulated an argument in support of these objections that had not been

1

previously articulated by the defense. The gist of this new argument is that the PSI's recommended calculations and the government's support of those calculations are based, not on the facts of the money laundering of which defendant was convicted, but <u>incorrectly</u> on the facts of the underlying fraud. As will be explained below, under the 1998 Guidelines Manual, which indisputably applies to this case (*see* PSI, page 1), the defendant's guidelines must be based on the money-laundering facts of the case, <u>not</u> on the facts of the underlying fraud -- which, although the subject of much testimony at trial, was neither an offense of conviction in this case, nor otherwise a basis for measuring the money-laundering "harm."

**II.    Sentencing for money laundering under the 1998 Guidelines Manual must be based on facts of money-laundering offenses of conviction, not on facts of underlying fraud.**

It is well-established that money laundering is a separate crime from the underlying activity from which the laundered funds are derived. As the Eleventh Circuit explained in *United States v. Christo*, 129 F.3d 578 (11th Cir. 1997):

> Money laundering is an offense to be punished separately from an underlying criminal offense. *United States v. Edgmon*, 952 F.2d 1206, 1213 (10th Cir. 1991) (finding that Congress intended money laundering offenses to be <u>distinct offenses</u> punished separately). The main issue in a money laundering charge, therefore, is determining when the predicate crime becomes a "completed offense" after which money laundering can occur. *United States v. Kennedy*, 64 F.3d 1465, 1477-78 (10th Cir. 1995).

*Christo*, 129 F.3d at 579-80 (emphasis added). *Accord United States v. Nolan*, 223 F.3d 1311 1315 (11th Cir. 2000), *United States v. Majors*, 196 F.3d 1206, 1212 n.13 (11th Cir. 1999) ("Before the primary offense of money laundering can occur, the underlying criminal activity must be complete, generating proceeds to be laundered").

Although money laundering and its predicate offense are "distinct crimes," they are normally

2

prosecuted together, in the same trial. Here, however, that did not occur. Instead, defendant was prosecuted only for money laundering -- under Count 14, for conspiracy to commit money laundering (in violation of 18 U.S.C. §1956(h)) and under Counts 16-45, for specific monetary transactions (in violation of 18 U.S.C. §1957).[1] To be sure, a great deal of the trial was devoted to the presentation of testimony concerning the underlying fraud which generated the proceeds to be laundered; but notwithstanding that testimony, the defendant did not stand trial for fraud, and he was not convicted of it. Accordingly, there can be no dispute that the sentencing guideline that must be applied to defendant is the guideline for the "distinct crime" of money laundering, not the guideline for the "distinct crime" of fraud.[2]

Under the 1998 Guidelines Manual, the sentencing guideline for the crime of money laundering, U.S.S.G. §2S1.1, requires that the offense level be calculated on the basis of "the value of the funds." See §2S1.1(b)(2). That "value" is determined by computing "the value" of the laundered funds, not by computing some "value" relating to the underlying criminal activity.

Thus, where the underlying criminal activity is fraud, "the value of the funds" laundered is

---

[1] Count 1, charging a RICO conspiracy, included, *inter alia*, an allegation that defendant "assist[ed] a criminal group operating in South Carolina, which engaged in an investment fraud scheme involving mail and wire fraud." However, that count was dismissed by the government, with leave of Court, prior to defendant's trial. (D.E. 1002).

(Count 1 had also included many allegations concerning the "Trafficante Organized Crime Family of La Cosa Nostra" and other matters which have nothing to do with defendant – all of which are included in "The Offense Conduct" and "Role Assessment" sections of the PSI. See PSI, ¶¶ 6-16, 32-48, 51-57, 59-64. At sentencing, defendant will move to strike these paragraphs from the PSI so that as the PSI travels with defendant through the Bureau of Prisons it does not contain references to the "Trafficante Family" and other matters which, while having nothing to do with defendant, are highly prejudicial.)

[2] Under USSG §1B1.2, the offense guideline section that must be applied is the section "most applicable to the offense of conviction...*i.e.*, the offense conduct charged in the count of the indictment...of which the defendant was convicted." (Emphasis added).

3

not the amount of money lost by victims of the fraud. This is explained clearly in *United States v. Thompson*, 40 F.3d 48 (3rd Cir. 1994):

> Section 2S1.1(b)(2) computes the base level according to the "value of the funds" involved in the money laundering scheme, not according to the "loss" incurred....[W]hen considering the impact of fraud on individual victims it is the *loss* which governs the measure of the sentence imposed, whereas in considering a money laundering offense...the amount of the loss is not the measure of the sentence. Rather, it is *the value of the funds* involved in the money laundering transaction. This is so because "[t]he harm from such a transaction does not generally fall upon an individual, but it falls upon society in general. Thus, the measure of harm under §2S1.1 is the total amount of the funds involved [in the money laundering]."

*Id.* at 51 (*italics* in original; citation omitted). *See also United States v. Allen*, 76 F.3d 1348, 1369 (5th Cir. 1996) ("The money laundering guideline does not depend on loss; it depends on 'the value of the funds' that the defendant laundered.....The difference in focus in Section 2S1.1 from...section 2F1.1 depends on the different nature of the harms they measure....In applying Section 2S1.1, courts should follow the guideline's plain language and focus on the value of the funds laundered.")[3]

Under these principles and precedents, the PSI's recommendation as to offense level should have been based on the facts regarding the <u>money laundering</u> in which defendant engaged, not on the facts regarding the underlying fraudulent activity. Concomitantly, the PSI's recommendation as to role adjustment should have been based on the facts regarding the role defendant played in the <u>money laundering</u>, not on the role he played in the fraud. But, as will be shown below, both the PSI

---

[3]In 2001, §2S1.1 was amended to eliminate the distinction between "the value of the funds" laundered and the measure of responsibility used in the underlying criminal activity. Under the amended guideline, the base offense level is defined <u>as</u> "[t]he offense level for the underlying offense from which the laundered funds were derived, if (A) the defendant committed the underlying offense (or would be accountable for the underlying offense under subsection (a)(1)(A) of §1B1.3 (Relevant conduct); and (B) the offense level for that offense can be determined." However, as noted above, there is no dispute that the 1998 Guidelines Manual, not the 2001 Manual, applies in this case. *See* PSI, page 1.

4

and the government in seeking to support the PSI, failed to adhere to these critical distinctions.

**A. Objection to holding defendant responsible for between 20 and 35 million dollars.**

Paragraph 74 of the PSI recommends that defendant's offense level be increased by ten levels, pursuant to 2S1.1(b)(2), on the purported ground that "the value of the funds laundered exceeded $20,000,000 but not more $35,000,000." Defendant objects to this recommendation on two grounds.

**First**, defendant objects to the 20 to 35 million-dollar figure on the ground that this amount is <u>not</u> based on the evidence of defendant's <u>money laundering</u>. While PSI ¶74 pays lip service to the phrase "value of the funds laundered," the PSI does not provide a factual predicate which distinguishes between the amount of "loss" attributable to the fraud -- which must become a "completed offense" <u>before</u> the money laundering can occur, *see Christo, supra,* 129 F.3d at 579-580 -- and the amount <u>thereafter</u> laundered. *See* PSI ¶¶ 21, 23 (referring to fraud amounts as if they were equivalent to money-laundering amounts).

Moreover, the "Government's Response in Opposition to Defendant's Objections to the Presentence Investigation Report" ("Gov. Resp."), a copy of which is attached hereto for the Court's convenience, seeks to hold defendant responsible for $30 million expressly on the basis of defendant's participation in the <u>fraud</u> as alleged.[4] *See* Gov. Resp, page 2. Indeed, the government expressly identifies the ways in which defendant allegedly "<u>participated directly in the fraud scheme</u>" as justification for holding defendant responsible for "the entire amount that was laundered through the South Florida connection to this fraud." *Id.* (emphasis added). As discussed above, because

---

[4]The use of the term "alleged" is appropriate here -- indeed necessary -- given that defendant has never been convicted of participating in the fraud.

5

money laundering and fraud are "distinct crimes" causing different "harms," defendant may be held responsible for money laundering only on the basis of what he did in connection with that crime, not on the basis of his alleged participation in the fraud.

Defendant thus objects to the Court giving any consideration to the government's allegations as to defendant's participation in the fraud scheme as a basis for finding "the value of the funds" laundered.[5]

**Second**, defendant objects to the 20 to 35 million-dollar figure on the ground that this amount is far greater than the evidence of his involvement in the money laundering conspiracy establishes. The jury convicted defendant of 30 counts of monetary transactions, totaling $17,059,762.43. *See* Counts 16-45. If defendant is to be held responsible for any higher figure, the Court must determine, at least to a preponderance of the evidence,[6] that any amounts beyond those counts -- and any financial institutions used to launder such amounts -- were within the requisite scope of the joint money-laundering activity defendant was proved to have undertaken. *See* U.S.S.G. §1B1.3(a)(1).

It is, of course, the government's burden to establish any factor that would result in an enhancement of a defendant's sentencing range, *United States v. Shriver*, 967 F.2d 572, 575 (11th Cir.1992). Because "the scope of the criminal activity jointly undertaken by the defendant...is not necessarily the same as the scope of the entire conspiracy," *see id.,* comment., n. 2 -- and, indeed,

---

[5]Furthermore, defendant does not agree with the government's allegations as to his participation in the fraud scheme. At sentencing, should the Court decide, over defendant's objection, to consider the fraud facts in determining "the value of the funds," defendant intends to provide evidence through his own testimony and the testimony of his son, Joseph R. Silvestri, Jr., contradicting the allegations set forth at Gov. Resp, page 2.

[6]*See* U.S.S.G. §6A1.3, comment.("Commission believes that use of... preponderance of...evidence standard is appropriate to meet due process requirements and policy concerns in resolving disputes regarding application of...guidelines to...facts of...case.").

may be much narrower -- the government must therefore carry the burden of establishing that "the scope of the specific conduct and objectives embraced by the defendant's agreement," *id.*, extended to whatever financial institutions were used and whatever amounts were laundered <u>beyond</u> the defendant's counts of conviction. This is especially so where, as here, the PSI and government seek to hold defendant responsible for a figure nearly <u>twice</u> as high as the amounts involved in the counts of conviction -- and where that increase will result in an increase in defendant's offense level.

**B. Objection to upwardly adjusting defendant's guidelines for aggravating role.**

Paragraph 75 of the PSI recommends that defendant's offense level be increased by four levels, pursuant to §3B1.1(a), on the purported ground that defendant was an "organizer of a criminal activity that involved five or more participants." Defendant objects to this recommendation on two grounds.

**First**, defendant objects to the characterization of him as an "organizer or leader," *see* §3B1.1(a),[7] on the ground that this characterization is <u>not</u> based on evidence of the role he played in the <u>money-laundering</u> offenses in this case. To the contrary, both the PSI and the government seek to hold defendant responsible for an aggravating role expressly on the basis of evidence of defendant's actions in assisting in the <u>fraudulent scheme</u>. *See* PSI ¶65 (describing steps defendant took to "assist in <u>the...fraud</u>" (emphasis added)); Gov. Resp., pages 4-5 (describing same steps and characterizing defendant as playing a role "without which <u>the fraud</u> could not have taken place"

---

[7]The PSI recommendation in ¶75 refers only to "organizer." But §3B1.1(a), the guideline section that authorizes a four-level enhancement for aggravating role, refers to "organizer or leader," and the government uses the dual description "organizer or leader" in its argument supporting the recommended role adjustment. *See* Gov. Resp., page 3.

7

(emphasis added)).[8]

This focus on the facts of the underlying fraud to seek to justify a guideline enhancement in this money-laundering case not only ignores the principle, discussed above, that money laundering and its underlying criminal activity are "distinct crimes"; it also violates the directive of §3B1.1. That section plainly states that "aggravating role" is to be determined "[b]ased on the defendant's role in the offense" (emphasis added). Especially when read in conjunction with §1B1.3 (Relevant Conduct), which provides that role "adjustments...shall be determined on the basis of...all acts and omissions...[etc.]...that occurred during the commission of the offense of conviction" (emphasis added), there can be no question that "the offense" referred to in §3B1.1 is, indeed, the "offense of conviction" -- not some other offense that is related to but "distinct" from the offense of conviction.[9]

Defendant thus objects to the Court giving any consideration to the government's allegations as to defendant's participation in the fraud scheme as a basis for finding that he played an aggravating role in this case.[10]

---

[8]Both the PSI and the government add, almost as an afterthought, that defendant also "assist[ed]" with laundering money through bank accounts in South Florida, see PSI ¶65, Gov. Resp., page 4. But, as will be discussed below, this evidence, although definitely related to defendant's offenses of conviction, does not support an aggravating role adjustment.

[9]Even under the 2001 amended version of the money-laundering guideline, which eliminates the distinction between "the value of the funds" laundered and the measure of responsibility used in the underlying criminal activity, see §2S1.1(a)(1), role in the offense is still determined based on the money-laundering offense of conviction. Indeed, a special comment is included to ensure this result. See § 2S1.1, comment., n.2(C) ("...in cases in which subsection (a)(1) applies, application of any...[role] adjustment shall be determined based on the offense covered by this guideline (i.e., the laundering of criminally derived funds) and not on the underlying offense from which the laundered funds were derived").

[10]Furthermore, defendant does not agree with the government's allegations as to the role he played in the fraud scheme. At sentencing, should the Court decide, over defendant's objection, to consider the fraud facts in determining defendant's "role" in this case, defendant

8

**Second**, defendant objects to the characterization of him as an "organizer or leader" on the ground that this characterization is <u>not</u> supported by the facts of the <u>money-laundering</u> offenses in this case. As noted above, both the PSI and the government describe defendant as "assist[ing]" with money-laundering activities in South Florida. As summarized by the government, defendant "organized the money laundering aspect of this criminal organization by assisting...[two co-defendants] with the opening and maintaining of bank accounts at Admiralty Bank, which were then used by both to launder sizable amounts of [fraudulent] checks." Gov. Resp., page 4. *See* PSI ¶¶ 22 and 23 (for details). Defendant submits that such assistance simply does not rise to the level of <u>any</u> aggravating role -- and *a fortiori* does not rise to the level of the most serious aggravating role of "organizer or leader." *See* cases cited in n.10, *supra*.

---

will demonstrate, through argument, that the PSI and the government mis-characterize what defendant did in connection with the fraud scheme and that, fairly viewed, defendant's conduct was <u>not</u> that of an "organizer or leader." In making this argument, defendant will rely on Eleventh Circuit precedent which establishes, *inter alia,* that application of §3B1.1(a) "requires...a <u>leadership</u> role," not a role of "mere management or supervision," *United States v. Alred*, 144 F.3d 1405, 1421 (11th Cir.1998)(emphasis added); that a leadership role requires "<u>controll[ing]</u> a sufficient number of other people....," *United States v. Mesa*, 247 F.3d 1165, 1169 (11th Cir. 2001) (emphasis added); and that an adjustment under §3B1.1(a) "does <u>not</u> apply to a defendant who merely <u>suggests</u> committing the offense," *Alred*, 144 F.3d at 1421, or to one whose "status [is that of] a middleman" who puts two willing parties together, *see id.* at 1422.

9

## CONCLUSION

For all the foregoing reasons, defendant Joseph Silvestri submits that: 1) "the value of the funds" laundered for which he is to be held responsible should be no more than the amounts for which he was convicted; and, 2) he should receive no upward adjustment for aggravating role.

Respectfully submitted,

**JEANNE BAKER**
ATTORNEY AT LAW, P.A.
Florida Bar No. 0880700
2937 Southwest 27th Avenue, Suite 202
Miami, Florida  33133-3703
(305) 443-1600
(305) 445-9666 (fax)
**COUNSEL for JOSEPH SILVESTRI**

By: /s/ Jeanne Baker

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed this 24th day of April 2003, to the following:

>Assistant United States Attorneys
>Brian McCormick and Diana L.W. Fernandez
>United States Attorney's Office
>500 E. Broward Boulevard
>Ft. Lauderdale, Florida 33394
>(954) 356-7255
>(954) 356-7230 (fax)
>**Counsel for the United States**
>
>and
>
>United States Probation Officer
>Donald Jefferson
>299 E. Broward Boulevard
>Ft. Lauderdale, Florida 3301-1168
>(954) 769-5515
>(954) 769-5566 (fax)

_____
JEANNE BAKER

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-DIMITROULEAS (S)(S)

UNITED STATES OF AMERICA,

        Plaintiff,

v.

JOSEPH SILVESTRI,

        Defendant.
_____

GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
OBJECTIONS TO THE PRESENTENCE INVESTIGATION
REPORT AND INCORPORATED MEMORANDUM OF LAW

The United States of America, through its undersigned Assistant United States Attorney, files this response in opposition to defendant Silvestri's objections to the presentence investigation report (PSI). For the reasons set forth below, the government submits that the defendant's objections should be denied.

    A.    <u>Specific Offense Characteristics</u>

Defendant complains that he should only be held responsible for 1.5 million dollars as the amount of commission he received or 5 million dollars as the fees paid to U.S. Guarantee rather than the 20 to 35 million dollars currently contained in the PSI.

The defendant does not challenge the fact that the total fraud loss under Alliance Trust and Chemical Trust was approximately 56 million dollars (PSI ¶ 19). From that, approximately 30 million



dollars was forwarded to the Morgensterns in South Florida to be laundered (PSI ¶ 21).

It is entirely proper for the defendant to be held responsible for the 30 million dollar figure. It was solely through the actions of this defendant that the investment fraud was able to be accomplished. As the trial evidence disclosed, the Alliance Trust/Chemical Trust fraud could not have even begun operation without the backing of U.S. Guarantee, which issued worthless bonds to the investor/victims, convincing them that their investment was secure. It was the defendant who had the contact at U.S. Guarantee in Arizona, convinced that company to issue bonds for Alliance Trust/Chemical Trust, assisted them in the preparation of the bonds and the handling of investor/victim question, thereby allowing the investment fraud to operate.

Further, as was testified to by victim Dennis Dostert, the defendant had direct contact with him by telephone when Mr. Dostert had concerns about the validity of the investment scheme. The defendant mollified Mr. Dostert's concerns, assuring him that the investment was safe as well as falsely stating that he himself, the defendant, had invested his own money. Therefore the defendant participated directly in the fraud scheme which generated the large sums of money which were then laundered with the help of the defendant.

2

The defendant's assistance at Admiralty Bank, helping both Virgil Womack and Fred Morgenstern open up and maintain bank accounts through which Alliance Trust/Chemical Trust investor/victim checks were negotiated, allowed them to launder the ill-gotten monies from this fraud.

For all of these reasons it is clear that the defendant should not merely be held responsible for the commissions paid to U.S. Guarantee (actually 1.6 million dollars), or the 5 million dollars that was laundered through U.S. Guarantee, but rather for the entire amount that was laundered through the South Florida connection to this fraud.

B.  <u>Role in the Offense</u>

Defendant complains that he should not receive a four level increase for his role in the offense as an organizer or leader. Defendant submits that he was merely a worker in this conspiracy.

U.S.S.G. Section 3B1.1 provides for a four level increase if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Application Note 4 lists a number of factors that the court should consider: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the

3

degree of control and authority exercised over others." Further, as the Note explains, "there can, of course, be more than one person who qualifies as a leader or organizer" in any criminal activity.

The trial evidence clearly justifies the four level adjustment for this defendant's role in this conspiracy. As discussed above, it was solely through this defendant's actions that the fraud and then subsequent money laundering succeeded. The defendant recruited accomplices by convincing U.S. Guarantee to issue the worthless bonds to the investor/victims, without which the fraud could not have taken place. The defendant also advised U.S. Guarantee on the preparation of a financial statement which was then used to convince investor/victims of the legitimacy of the fraud as well as providing employees of U.S. Guarantee advice on how to answer investor/victim questions when they contacted U.S. Guarantee.

The defendant further organized the money laundering aspect of this criminal organization by assisting both Virgil Womack and Fred Morgenstern with the opening and maintaining of bank accounts at Admiralty Bank, which were then used by both to launder sizable amounts of Alliance Trust/Chemical Trust checks.

The defendant's participation in this criminal conspiracy was extensive, he recruited accomplices (U.S. Guarantee), he clearly helped to organize and plan the money laundering aspect of the

conspiracy.[1] The defendant also represented Womack for the purpose of soothing investor/victims who raised questions about the legitimacy of the investment with coconspirators in Seneca, South Carolina.

## CONCLUSION

WHEREFORE, for all the foregoing reasons, the government respectfully requests that this Honorable Court deny the defendant's objections to the PSI.

Respectfully submitted,

GUY A. LEWIS
UNITED STATES ATTORNEY

By: *Diana W. Fernandez*
DIANA L.W. FERNANDEZ
Assistant United States Attorney
Court I.D. #A5500017
500 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Fax: (954) 356-7230

---

[1] Defendant's argument that he should not receive the adjustment because he did not manage or supervise five or more participants is unavailing. Section 3B1.1(a) also provides for an adjustment if the criminal activity was otherwise extensive, which is clearly the situation here.

5

## CERTIFICATE OF SERVICE

I HEREBY certify that a true and correct copy of the foregoing was mailed this 23rd day of October, 2002 to:

Richard Sharpstein, Esq.
777 Brickell Avenue, Suite 500
Miami, Florida 33131

Donald Jefferson, U.S. Probation Officer
299 E. Broward Boulevard
Room 409
Fort Lauderdale, Florida 33301

DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY