## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA,**

                   **Plaintiff,**

**v.**

**JOSEPH SILVESTRI,**

                   **Defendant.**

_____/

**CASE NO. 00-6309-CR-Seitz**

**Magistrate Judge Bandstra**

### *EX PARTE* MOTION OF DEFENDANT
### FOR AUTHORIZATION OF CJA PAYMENTS
### TO EXPERT WITNESSES FOR TESTIFYING AT SENTENCING

Defendant Joseph Silvestri, through undersigned counsel, hereby requests that this Court enter an order authorizing CJA payments to two expert witnesses -- cardiologist Dr. Martin S. Bilsker and psychologist Dr. April Kassover -- who have been identified by defendant as witnesses he wishes to call at sentencing. In support of this motion, undersigned counsel represents as follows:

1.     At a hearing held on May 5, 2003, Magistrate Judge Bandstra ruled that defendant Joseph Silvestri is indigent and qualifies for CJA funding. Magistrate Bandstra will be reducing his finding to a written order imminently.

2.     This motion seeks authorization for limited CJA funding for two expert witnesses -- cardiologist Dr. Martin S. Bilsker and psychologist Dr. April Kassover -- whom defendant wishes to call at sentencing. Both Dr. Bilsker and Dr. Kassover are identified and their testimony is summarized in paragraph 3 of "Defendant's Memorandum in Response to Court's 'Order on March 27, 2003 Status Conference'" (hereafter "Def.Mem."), a copy of which is attached hereto for the Court's convenience.

3.    As is standard with experts, Dr. Bilsker and Dr. Kassover require payment for the time they spend in preparing for and appearing in court to testify. Undersigned counsel noted in Def.Mem. at footnotes 2 and 3, respectively, that in the event that CJA funds are not available to compensate Dr. Bilsker and Dr. Kassover for their time as live witnesses, a defense request would be made for the Court to accept the testimony of these witnesses in letter-form. Undersigned counsel noted that because AUSA Diana Fernandez was out of her office when Def.Mem was filed, undersigned counsel had not had an opportunity to ask Ms. Fernandez the government's position on this request. Undersigned counsel has now had that opportunity. Ms. Fernandez has informed undersigned counsel that although the government would not move to strike the testimony of these witnesses were it to be submitted in letter-form, the government would argue to the Court "against its validity" by virtue of it being in letter-form. Accordingly, it is incumbent upon undersigned counsel to request that CJA funds be authorized to pay the fees of Dr. Bilsker and Dr. Kassover for testifying at defendant's sentencing.[1]

4.    Dr. Bilsker's usual fee for court-related work is $400.00 per hour for out-of-court reviewing and consulting, $500.00 per hour for depositions, and $600.00 per hour for in-court testimony. (Dr. Bilsker, as a faculty member at the University of Miami, shares any fees he receives for court-related work with his department.) However, Dr. Bilsker has informed undersigned counsel that if he is to be paid from CJA funds he is prepared to accept the reduced CJA-rate for

---

[1]Undersigned counsel does not make the same request with respect to Dr. Victor Molina, *see* Def.Mem at paragraph 4, because Dr. Molina's testimony, while providing important background information regarding defendant's health, does not address current conditions and, therefore would appear to be less controversial than the testimony of Drs. Bilsker and Kassover.

specialized physicians of $250.00 per hour[2] for any further work he performs in this case. Dr. Bilsker anticipates that he can prepare, travel to court from his Miami office, and testify at defendant's sentencing in no more than three hours (one hour or less for the testimony itself).

5.    Dr. Kassover's usual fee for court-related work is $150.00 per hour, which is in the range of CJA fees for psychologists.[3] So as to avoid the travel time from West Palm Beach, where Dr. Kassover's office is located, it is respectfully requested that Dr. Kassover be permitted to testify by telephone, which is Dr. Kassover's preference. If she appears by telephone, it is anticipated that Dr. Kassover can prepare and testify at defendant's sentencing in no more than two hours (one hour or less for the testimony itself). At least an additional two, perhaps three, hours would have to be added if Dr. Kassover were required to travel to and from West Palm Beach in order to testify in person.

6.    Based on the forgoing, it is respectfully requested that the Court authorize CJA payments as follows:

- to Dr. Bilsker, not to exceed $750.00;

- to Dr. Kassover, not to exceed $300, unless the Court does not permit her to appear by telephone, in which case, not to exceed $750.00.

---

[2]CJA Administrator Lucy Lara informed undersigned counsel that $250.00 is a rate that has been approved under the CJA for physicians with specialties similar to that of Dr. Bilsker.

[3]CJA Administrator Lara informed undersigned counsel that the range of approved rates for psychologists under the CJA is $125 to 175 per hour.

WHEREFORE, defendant Joseph Silvestri respectfully requests this Court enter an order authorizing CJA payments to cardiologist Dr. Martin S. Bilsker in an amount not to exceed $750.00 and to psychologist Dr. April Kassover in an amount not to exceed $300.00, and permitting Dr. Kassover to testify by telephone.

Respectfully submitted,

**JEANNE BAKER**
ATTORNEY AT LAW, P.A.
Florida Bar No. 0880700
2937 Southwest 27th Avenue, Suite 202
Miami, Florida 33133-3703
(305) 443-1600
(305) 445-9666 (fax)
**COUNSEL for JOSEPH SILVESTRI**

By: _____

4

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA,**
　　　　　　**Plaintiff,**

**CASE NO. 00-6309-CR-Seitz**
**Magistrate Judge Bandstra**

v.

**JOSEPH SILVESTRI**
　　　　　　**Defendant.**
_____ /

### ORDER AUTHORIZING CJA PAYMENTS
### TO TWO EXPERT WITNESSES

This cause, having come on to be heard upon "*Ex Parte* Motion of Defendant For Authorization of CJA Payments to Expert Witnesses for Testifying at Sentencing" it is

**ORDERED AND ADJUDGED** that the said Motion is hereby _____. The Court authorizes expenditure of CJA funds for payment to two defense witnesses to testify at sentencing:

　　1) to cardiologist Dr. Martin S. Bilsker in an amount not to exceed $750.00; and

　　2) to psychologist Dr. April Kassover (who may testify by telephone) in an amount not to exceed $300.00.

DONE AND ORDERED this _____ day of May, 2003.


_____
PATRICIA A SEITZ
UNITED STATES DISTRICT JUDGE


Copies to:
Jeanne Baker, Esq.
CJA Administrator, Lucy Lara

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

**UNITED STATES OF AMERICA,**
                    **Plaintiff,**

v.

**JOSEPH SILVESTRI,**
                    **Defendant.**
_____ /

CASE NO. 00-6309-CR-Seitz

NIGHT BOX
FILED

APR 2 4 2003

CLARENCE MADDOX
CLERK, USDC / SDFL / MIA

### DEFENDANT'S MEMORANDUM IN RESPONSE
### TO COURT'S "ORDER ON MARCH 27, 2003 STATUS CONFERENCE"

Defendant Joseph Silvestri, through undersigned counsel, hereby files this memorandum in response to paragraph 2 of the Court's "Order on March 27, 2003 Status Conference" directing the parties to provide summaries and estimated times needed for testimony of witnesses to be called at sentencing.

## Defendant's Witnesses for Sentencing

The defense plans as to witnesses for sentencing are as follows:

1. **Possible witnesses regarding guideline calculations and estimated times of direct testimony, if called:**

   - **Defendant**                                                     **20 minutes**

   - **Defendant's son, Joseph R. Silvestri, Jr.**                     **10 minutes**

   These witnesses will only be called if the Court rejects defendant's argument that no consideration should be given to the government's allegations as to defendant's participation in the fraud scheme as a basis for finding "the value of the funds" laundered. *See* "Defendant's Objections to The Use of Fraud Facts In Determining His Guidelines in This Money-laundering Case," separately filed this date, at pages 5-6 & n.5. If called, these witnesses will testify to counter the government's allegations, set forth in "Government's Response in Opposition to Defendant's Objections to the Presentence Investigation Report" (copy attached to Defendant's Objections), page 2, as to the ways in which defendant allegedly "participated directly in the fraud scheme."

1

2. <u>Definite</u> **witness regarding motion for downward departure and estimated time of direct testimony:**

   ● **Dr. Gustavo G. Leon, surgeon (current treating physician)**        **30 minutes**

   Dr. Leon, a physician under contract with B.O.P., has treated and cared for defendant at FDC on a number of occasions over the past few months. His testimony is summarized in a letter dated March 24, 2003, previously filed in court (D.E. 1315), a copy of which is attached hereto marked "A."[1]

3. <u>Possible</u> **witnesses regarding motion for downward departure and estimated time of direct testimony, if called; alternatively, testimony by letter:**

   ● **Dr. Martin S. Bilsker, cardiologist (retained expert)**        **30 minutes**

   Dr. Bilsker, a cardiologist at the University of Miami School of Medicine, was retained by the defense to review defendant's medical records and provide information regarding defendant's cardiovascular diseases. His direct testimony is summarized in two letters dated January 29, 2003 and March 19, 2003, both previously filed in court (D.E. 1251, Exhibit B, and D.E. 1308), copies of which are attached hereto marked "B-1" and "B-2," along with a copy of his *Curriculum Vitae*, marked "B-3."[2]

   ● **Dr. April Kassover, psychologist (retained expert)**        **15 minutes**

   Dr. Kassover, a psychologist with years of experience as a court psychologist in Palm Beach County Court, was retained by the defense to assess the emotional condition of defendant's wife, Dolores Silvestri. Her direct testimony is summarized in a letter dated January 28, 2003, previously filed in court (D.E.1270), a copy of which is attached hereto marked "C."[3]

------

[1]Dr. Leon is under *subpoena* and will appear as a fact-witness. He is tentatively scheduled to appear in court Tuesday May 13, 2003 at 9:30 a.m.

[2]Dr. Bilsker has been paid by defendant's family for his previous work on this case. He will be out of town on Monday May 12, 2003 but is available to appear in court or by telephone Tuesday May 13, 2003 at 8:30 a.m. In the event that CJA funds are not available to compensate Dr. Bilsker for his time as a witness, undersigned counsel requests that the Court accept the attached letters as Dr. Bilsker's testimony on defendant's behalf. As AUSA Diana Fernandez is out of her office this week, undersigned counsel has not had an opportunity to ask Ms. Fernandez her position on this request. However, undersigned counsel notes that Ms. Fernandez has interviewed Dr. Bilsker directly by telephone on more than one occasion.

[3]Dr. Kassover has been paid by defendant's family for her previous work on this case. She is tentatively scheduled to appear in court or by telephone Monday May 12, 2003 at 4:00

4. **Testimony by letter regarding motion for downward departure:**

● **Dr. Victor Molina, internist (previous treating physician).**

Dr. Molina, a private internist who cared for defendant for approximately seven the years prior to his incarceration, was retained by the defense to provide a comprehensive review of defendant's many ailments along with recommended care. That review, set forth in detail in a letter dated November 11, 2002, was previously filed in court (D.E. 1251, part of Exhibit A), and a copy of it is attached hereto marked "D."[4]

Respectfully submitted,

JEANNE BAKER
ATTORNEY AT LAW, P.A.
Florida Bar No. 0880700
2937 Southwest 27th Avenue, Suite 202
Miami, Florida 33133-3703
(305) 443-1600
(305) 445-9666 (fax)
COUNSEL for JOSEPH SILVESTRI

By: _____

---

p.m. So as to avoid the travel time from Palm Beach, Dr. Kassover would prefer to appear by telephone. In the event that CJA funds are not available to compensate Dr. Kassover for her time as a witness, undersigned counsel requests that the Court accept the attached letter as Dr. Kassover's direct testimony on defendant's behalf and that undersigned counsel be permitted to file an additional letter from Dr. Kassover, responding to an attack on her testimony made by AUSA Fernandez based on a telephone interview. *See* "Government's Response in Opposition to Defendant's Expanded Moton for Downward Departure" (D.E. 1262), at page 7. Again, because Ms. Fernandez is out of her office this week, undersigned counsel has not had an opportunity to ask Ms. Fernandez her position on this request.

[4]Dr. Molina has been paid by defendant's family for his previous work on this case. In order to hold down costs, undersigned counsel requests that the Court accept the attached letter as Dr. Molina's testimony on defendant's behalf. Again, because AUSA Fernandez is out of her office this week, undersigned counsel has not had an opportunity to ask Ms. Fernandez her position on this request

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing was mailed this 24th day of April 2003, to the

following:

> Assistant United States Attorneys
> Brian McCormick and Diana L.W. Fernandez
> United States Attorney's Office
> 500 E. Broward Boulevard
> Ft. Lauderdale, Florida 33394
> (954) 356-7255
> (954) 356-7230 (fax)
> **Counsel for the United States**

> and

> United States Probation Officer
> Donald Jefferson
> 299 E. Broward Boulevard
> Ft. Lauderdale, Florida 3301-1168
> (954) 769-5515
> (954) 769-5566 (fax)

_____
JEANNE BAKER

# Gustavo G. Leon, M.D.

**351 NW Le Jeune Rd. Suite 103, Miami, FL 33126**
**Telephone (305) 262-9900 • Fax (305) 631-1419**
*Past Chairman - Florida Board of Medicine 2002-2003*
*Chairperson, Probable Cause Panel, South*

March 24, 2003

Jeanne Baker
Attorney at Law, P.A.
Suite 202
Miami, Fl. 33133

Re: **Joseph Silvestri**

Dear Ms. Baker:

You asked me to describe my background, my contact with your client Joseph Silvestri, and my opinion as to Mr. Silvestri's current state of health and prognosis.

I am a general surgeon with offices at the above address. I have been a surgeon practicing in Miami for twenty years. I have privileges at multiple Miami-area hospitals and perform surgery regularly at Larkin Hospital, South Miami. I am a past member (1997-2003) and Past Chairman (2002-2003) of the Florida Board of Medicine and currently the Chair for the Florida Board of Medicine Probable Cause Panel South (which evaluates physicians in response to complaints). For the past four years, I have had a contract with the Bureau of Prisons to provide care to inmates at FDC Miami, FCI Miami and FCC Miami. Under that contract, I visit those institutions once a week to see and evaluate possible surgical cases. I also have a contract with the State of Florida for the past three years to provide similar care to inmates at state institutions in the Miami area.

I first saw Mr. Silvestri at FDC on Thursday February 6, 2003, at which time I diagnosed his then-current condition as most likely deep vein thrombosis, with evidence of both old and new clots. I told the FDC medical staff at that time that Mr. Silvestri needed immediate anti-coagulation therapy and that he should be transferred to the hospital for evaluation for surgery. Mr. Silvestri was transferred to Larkin Hospital on February 13, 2003 at which time he came under my care, where he remained until February 18, 2003, when he was returned to FDC Miami. During his stay in Larkin, I saw Mr. Silvestri daily, placed him on intravenous anti-coagulation therapy and performed surgery on him on February

Page 2

17, 2003, placing an umbrella in his vena cava (a vein that leads from the lower body to the heart) in order to catch blood clots before they reach the lungs.

Based on my examination and observation of Mr. Silvestri during his stay at Larkin, it is my opinion that his current state of health is very precarious. He has poor cardiac output and, as a consequence, he is very weak and fragile. I view him as a heart cripple – someone who is critically ill due to multiple heart and vascular problems. Among other restrictions on Mr. Silvestri's activities, I strongly recommend that Mr. Silvestri not fly. The stresses on the body, particularly due to changes in cabin pressure, may become catastrophic for Mr. Silvestri.

In my opinion, Mr. Silvestri has a very poor prognosis. I view him as being in a situation similar to a patient who has been diagnosed with terminal cancer: he is dying. If he is placed in the best environment – by which I mean a home environment where he can receive loving care and the support and assistance of family members who can look after him and take him to doctors' appointments as soon as the need arises – I believe he could live a year, give or take. Otherwise, I believe that he will live a shorter time. I am particularly concerned that if he remains in the stressful environment of a prison, his life-expectancy will be shortened and he might not last a year.

I have communicated my concerns about Mr. Silvestri's condition to the Chief Medical Officer at FDC and also to Assistant United States Attorney Diana Fernandez.

Sincerely,

Gustavo Leon, MD



## UNIVERSITY OF
# Miami
## SCHOOL OF MEDICINE

January 29, 2003

Ms. Jeanne Baker
Attorney At Law, P.A.
2937 SW 27 Avenue
Suite 202
Miami, FL  33133

RE: **Joseph Silvestri**

Dear Ms. Baker:

At your request, I have reviewed Joseph Silvestri's records related to his cardiac problems. He has two major areas of cardiovascular disease which will have a significant effect on his life:

1. He has a history of deep vein thrombosis of the deep venous system of the right leg with pulmonary embolism with recurrence. Because he has had recurrence of deep vein thrombosis (clots in the veins in his leg) with pulmonary embolism (breakup of the clots from the legs with travel to the arteries in the lung), he must remain on the drug coumadin (warfarin) indefinitely. This is to prevent further episodes of clotting in his leg with possible embolism to his lungs. Pulmonary embolism is a potentially life-threatening medical problem. Related to this chronic problem, the effect of the coumadin on his blood clotting needs to be monitored carefully. If the blood tests are stable, they need to be monitored at a minimum of once a month. If they deviate from the appropriate range, which is typically very frequent in patients on chronic anticoagulation therapy, the tests may need to be done more frequently, even at times daily until stabilized. If the effect is too great, there is significant risk for severe bleeding which could cause disability or even death. If the effect is too small, there is a risk for recurrent deep vein thrombosis of the leg and possible pulmonary embolism.

2. Mr. Silvestri has severe coronary artery disease and in December, he underwent three vessel coronary artery bypass grafting. He had a partial obstruction of the left main coronary artery. In addition, he had a total obstruction of his right coronary artery which was receiving blood supply from collaterals of the partially obstructed left system. Those lesions were all bypassed. However, as with any patient with significant coronary disease, he is at risk for rupture of a coronary artery plaque which could cause an acute coronary event, including an acute myocardial infarction.

Division of Cardiology (D-39)
P.O. Box 016960
Miami, Florida 33101
305-585-55 ( )

Survival from such an event is closely correlated to the time to treatment by trained personnel in a qualified acute care facility, which could include such therapy as thrombolytic drugs, acute catheterization with angioplasty, intravenous beta blockers, heparin, and other therapies. This must be done within a period of minutes to less than several hours to have maximum positive outcome. In addition, good medical care related to his coronary disease is extremely important in slowing the progression and helping prevent recurrence of acute events. This would include, at the least, beta blocker medications, medical therapy, lipid-lowering drugs with monitoring every 3-6 months, and high quality overall medical care to prevent or control other illnesses which might further put his cardiac status at risk.

Martin S. Bilsker, MD, FACC
Associate Professor of Medicine
Director, Echo/Doppler Laboratory and
JMH Outpatient Cardiology Clinic

MSB/mrp



**UNIVERSITY OF**

# Miami

SCHOOL OF MEDICINE

March 19, 2003

Jeanne Baker
Attorney at Law, PA
2937 SW 27th Avenue
Suite 202
Miami, FL  33133

RE:  **Joseph Silvestri**

Dear Ms. Baker:

As per your request, I reviewed records from Federal Detention Center between 2/7/03 and 3/7/03, in addition to a Larkin Hospital admission 2/13/03 and an outpatient stress test at Cedars Medical Center 3/6/03. I was asked to comment on whether Mr. Silvestri was receiving all the care that was necessary.

Mr. Silvestri is a 71 year-old male with a history of severe coronary artery disease with a coronary artery bypass graft in December 2002. He also has a history of recurrent deep vein thrombosis and pulmonary emboli (blood clots to the lung). The active problem on the medical records enclosed is deep vein thrombosis. This is a condition where the deep veins of the leg develop clots. When this occurs, there is a risk of clots dislodging and going to the lungs, a potentially serious and sometimes fatal occurrence. In addition, deep vein thrombosis can cause permanent damage to the veins of the leg which can result in chronic swelling. Since Mr. Silvestri had a history of deep vein thrombosis and clots to the lung, he should be on coumadin therapy permanently. Coumadin is a blood thinner which causes the blood to take longer to clot. It appears from the records that he was not on coumadin at the Federal Detention Center at the time of the first note, February 7, 2003. It would be the standard of care in this clinical situation to receive coumadin. In addition, even after the swollen leg was noted and thought to be possibly due to deep vein thrombosis, no anticoagulation was given. In this case, the appropriate therapy is intravenous or injections into the skin of drugs to prevent clotting, as coumadin takes several days to work. There was a 6 day delay between the time the swelling of his legs were noted and thought possibly due to blood clots in the leg and obtaining a Doppler test to look for the clots. The Doppler test showed significant clots in the right leg, and he was transferred to Larkin Hospital where an umbrella was placed. The purpose of the umbrella is to catch any clots which become loose from the leg and would normally travel to the lung. They are instead caught by the umbrella device in the vena

cava, the main vein leading to the heart from the lower body. This is not a therapy for the clots in the leg, but to prevent a serious clot from the legs going to the lung. In fact, a test done at Larkin suggested a blood clot in the lung. Anticoagulation (blood thinning) is still needed to treat the clots in the leg. In spite of the need for this standard treatment for deep vein thrombosis (blood clots in the leg), no anticoagulation was given by the Federal Detention Center when he returned from Larkin Hospital. In fact, there is a note from Larkin Hospital on 2/18/03 just prior to his return to the Federal Detention Center stating that the patient was to be switched from intravenous to oral anticoagulation therapy. Mr. Silvestri also told the staff on a note recorded at Federal Detention Center on 2/18/03 that "the doctor said I was going to be on coumadin for the rest of my life." In spite of this he was not started on coumadin until 10 days later on 2/28/03, and was not on any other form of anticoagulation. Coumadin is a potentially dangerous drug with a narrow range between being therapeutic and being toxic. He was started on an arbitrary regimen on 2/28/03. The normal way to manage this would be to get a blood test after 3-4 days to look at the effect in the blood and adjust the dose as needed. According to the staff physician note on 3/3/03, an INR blood test to evaluate the effect of the coumadin was ordered for 3/10/03. Ten days is too long after starting coumadin to check the result. There is a significant risk to the patient that he could have life-threatening bleeding if the coumadin effect on the blood is too high, or on the other hand, no effective treatment for the clots in his leg if the effect is too low.

In summary, Mr. Silvestri did not receive necessary care. He should have been on coumadin permanently and was not at the Federal Detention Center. When he had a swollen right leg, diagnosis and rapid treatment is urgent to prevent life-threatening blood clots to the lung as well as damage to the blood vessels in the leg. He did not receive treatment for 6 days until he was transferred to Larkin Hospital. In addition, after discharge from Larkin he was not given coumadin for 10 days so his clots were not treated. When he was finally given coumadin, appropriate follow-up was not given to adjust the coumadin effect on his blood clotting to prevent either life-threatening bleeding or an ineffective treatment of his blood clots.

Martin S. Bilsker, MD, FACC
Associate Professor of Medicine
Director, Echo/Doppler Laboratory and
JMH Outpatient Cardiology Clinic

MSB/mrp

October 1, 2002            CURRICULUM VITAE

MARTIN S. BILSKER, M.D.
University of Miami School of Medicine
Division of Cardiology (D-39)
P.O. Box 016960
Miami, Florida 33101

**************************************************************

| | |
|---|---|
| SOCIAL SECURITY NO.: | 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 |
| HOME PHONE: | (305) 665-9438 |
| OFFICE PHONE: | (305) 585-5542 |
| HOME ADDRESS: | 40 Morningside Drive<br>Coconut Grove, FL 33133 |
| CURRENT ACADEMIC RANK: | Full-Time Associate Prof. of Medicine,<br>Division of Cardiology<br>Attached, Division of Clin. Pharmacology |
| PRIMARY DEPARTMENT: | Medicine/Cardiology |
| CITIZENSHIP: | U.S.A. |
| VISA TYPE: | N/A |

HIGHER EDUCATION

           Massachusetts Institute of Technology
           (M.I.T.), Cambridge, Massachusetts
           B.S. in Biology, June 1972

           Duke University Medical School
           Durham, North Carolina
           M.D., May 1976

POST DOCTORAL TRAINING

           Internal Medicine Internship & Residency
           Montefiore Hospital and Medical Center

Albert Einstein School of Medicine
Bronx, New York.  June 1976-1979

Cardiology Fellow,
University of Miami School of Medicine
Miami, Florida  7/80 - 6/82

BOARD CERTIFICATION

Diplomate, American Board of Internal
Medicine, Subspecialty Cardiovascular
Disease, Nov. 1983

Diplomate, American Board of Internal
Medicine, September 1979. No. 071553

Diplomate, National Board of Medical
Examiners, July 1977.  No. 1615088

LICENSURE

New York State No. 133751
Florida State No. ME 0036455

EXPERIENCE

Instructor in Medicine
Albert Einstein College of Medicine
Bronx, New York, 9/1/79 - 6/30/80

Attending in Medicine, Montefiore and
North Central Bronx Hospitals,
Albert Einstein School of Medicine
Bronx, New York, 7/79 - 6/80

Assistant Professor of Medicine,
Division of Cardiology
University of Miami School of Medicine
Miami, Florida - July 1982-1988

Associate Professor of Medicine,
Division of Cardiology,
University of Miami School of Medicine
Miami, Florida
July 1988 to Present

## PUBLICATIONS

1-Ridha, M., Sequeira, R., Bilsker, M., Andrade, S., Chakko, S. "Thrombosed Chamber of
Cor-Triatriatum Mimicking Left Atrial Tumor (Case Report)." Echocardiography: A Journal
Of CV Ultrasound & Allied Tech. Vol. 18, No. 7, 2001.

2-Jurkovich, D., de Marchena, E., Bilsker, M., Fierro-Renoy, C., Temple, D., Garcia, H.
"Primary Cardiac Lymphoma Diagnosed by Percutaneous Intracardiac Biopsy with
Combined Fluoroscopic and Transesophageal Echocardiographic Imaging."
Cathet. Cardiovasc. Intervent. 50:226-233, 2000.

3-Vallenilla, C.T., Parker, M., Kibler, J.L., Bilsker M.S., Brownley, K.A., Llabre, M.M.,
Schneiderman, N., Motivala, S.J. & Hurwitz, B.E. (1999). Myocardial Structural
Determinants of Cardiovascular Performance in Response to Speech Stress.
*Twentieth Annual Proceedings of The Society for Behavioral Medicine,* (pp.R-156)
San Diego: Society of Behavioral Medicine.

4-Havranek EP, Thomas I, Smith WB, Ponce GA, Bilsker MS, Munger MA, Wolf RA.
"Dose-related Beneficial Long-term Hemodynamic and Clinical Efficacy of Irbesartan
in Heart Failure." Journal of the American College of Cardiology, Vol 33, 1999:1174-81.

5-Bilsker MS, Bauerlein EJ, Kamerman ML. "Bullet Embolus from the Heart to the Right
Subclavian Artery after Gunshot Wound to the Right Chest." American Heart Journal,
Vol 132:1093-4, 1996.

6- Kloner RA, Sowers JR, DiBona GF, Gaffney M, Wein M and the Study Group. "Effect of
Amlodipine on Left Ventricular Mass in the Amlodipine Cardiovascular Community Trial."
The Journal of Cardiovascular Pharmacology, Vol 26, 1995:471-476.

7- Nash MS, Bilsker MS, Kearney HM, Ramirez JN, Applegate B, Green BA. "Effects of
electrically-stimulated exercise and passive motion on echocardiographically-derived wall
motion and cardiodynamic function in tetraplegic persons". Paraplegia, Vol 33, 1994:80-89.

8- Reyes-Iglesias Y, Kelley RE, Bilsker MS, Nedd KJ, Bauerlein EJ.

3

"Unmasking a Patent Foramen Ovale During Recurrent Paradoxical Cerebral Embolism." <u>Southern Medical Journal</u>, Vol 87, No. 1, January 1994:84-6.

9- Horowitz MD, Zager W, <u>Bilsker MS</u>, Perryman RA, Lowery MH. "Cor Triatriatium in Adults". <u>American Heart Journal</u>, Vol. 126, No. 2, August 1993:472-74.

10- Czerwiec FS, <u>Bilsker MS</u>, Kamerman M, Bisno AL. "Long-term Survival after Fluconazole Therapy of <u>Candida</u> Prosthetic Valve Endocarditis." <u>The American Journal of Medicine</u>, Vol. 94, May 1993:545-6.

11- Parmley WW, Nesto RW, Singh BN, Deanfield J, Gottlieb SO and <u>The N-Cap Study Group</u>. "Attenuation of the Circadian Patterns of Myocardial Ischemia With Nifedipine GITS in Patients With Chronic Stable Angina". <u>Journal of the American College of Cardiology</u>, Vol. 19, No. 7, June 1992:1380-9.

12- Nifedipine GITS Reduces Angina and Ambulatory Ischemia Over 24 Hours: Results of the Nifedipine Circadian Anti-Ischemic Program (N-Cap) Multicenter Trial. William Parmley, UC San Francisco, For <u>The N-Cap Study Group</u>. <u>JACC</u> 17 (2):107A, Feb 1991.

13- Nash MS, <u>Bilsker MS</u>, Marcillo AE, Isaac SM, Botelho LA, Klose KJ, Green BA, Roundtree MT, Shea JD. "Reversal of Adaptive Left Ventricular Atrophy Following Electrically-Stimulated Exercise in Human Tetraplegics". <u>Paraplegia</u> 29(9), Nov 1991.

14- K. Banovac, S.A.B. Carrington, S. Levis, M.D. Fill and <u>M.S. Bilsker</u>. "Determination of Replacement and Suppressive Doses of Thyroxine". <u>J Int Med Res</u>   18:210-18, January 1990.

15- Banovac K, Papic M, <u>Bilsker MS</u>, Zakarija M, McKenzie JM. "Evidence of Hyperthyroidism in Apparently Euthyroid Patients Treated with Levothyroxine". <u>Arch Intern Med</u> 149:809-12, April 1989.

16- Chandra R, <u>Bilsker MS</u>, Myerburg RJ, Kessler KM. "Echocardiographic Diagnosis of Outlet Strut Fracture of a Bjork-Shiley Prosthesis in the Mitral Position". <u>American Journal of Cardiology</u> 58(7):1117-18, November 1986.

17- Stafford WJ, Trohman RG, <u>Bilsker MS</u>, Zaman L, Castellanos A, Myerburg RJ. "Cardiac Arrest in an Adolescent with Atrial Fibrillation and Hypertrophic Cardiomyopathy". <u>Journal of the American College of Cardiology</u> 7(3):701-4, March 1986.

18- Kessler KM, <u>Bilsker MS</u>, Manasa M, Laighold M, Myerburg RJ. "Pericardial Web: Extensive Pericardial Adhesions Associated with Idiopathic Pericarditis". <u>American Heart Journal</u> 111:602-3, March 1986.

4

19-Kessler KM, Pina IL, Green B, Burnett B, Laighold M, <u>Bilsker MS</u>, Myerburg RJ.
"Comparison of Cardiovascular Findings in Quadriplegia and Paraplegia to Normal Subjects".
<u>American Journal of Cardiology</u> 58(6):525-530, September 1986.

20-Nguyen XN, Kessler KM, <u>Bilsker MS</u>, Myerburg RJ.
"Echocardiographic Demonstration of Satellite Lesions in Aortic Valvular Endocarditis".
<u>American Journal of Cardiology</u> 55:1433-35, May 1985.

21- Kessler KM, Cotler R, <u>Bilsker MS</u>, Myerburg RJ.
"Narrow-Based Left Ventricular Thrombosis: An Unstable Intermediate Form". <u>American
Journal of Cardiology</u> 53:645-6, February 1984.

22- Kayden D, Ariza NS, <u>Bilsker MS</u>, Laighold M, Myerburg RJ,
Kessler KM. "Pseudodyskinesis of the Left Ventricular Free Wall". <u>American Journal of
Cardiology</u> 53:985-6, 1984.

23- Echeverria H, Ariza NS, <u>Bilsker MS</u>, Myerburg RJ, Kessler KM.
"Central Venous Line Location in Patients with Tricuspid Valve Endocarditis". <u>American
Heart Journal</u> (Letter to Editor)
106:1171-3, 1984.

24- Echeverria H, <u>Bilsker MS</u>, Myerburg RJ, Kessler KM. "Congestive Heart Failure:
Echocardiographic Insights". <u>American Journal of Medicine</u> 75:750-755, 1983.

25- Pinero J. Casanas L, <u>Bilsker MS</u>, Kessler KM. "Compression of Superior Vena Cava and
Right Atrium in Cardiac Tamponade". <u>American Journal of Cardiology</u> 51:1804, 1983.

26- Van De Sande H, <u>Bilsker MS</u>, "Phosphorylation of N-Protected Deoxynucleotides by T4
Polynucleotide Kinase". <u>Biochemistry</u> 12:25-29, 1973.


PUBLISHED ABSTRACTS

1-Hurwitz, B.E., Bilsker, M.S., Hart, C.T. & Schneiderman, N. (2000). Cardiac and Vascular
Stress Reactor Type: Heart Structure, Low-Flow Circulatory Status, and Preclinical
Cardiovascular Risk. *International Journal of Behavioral Medicine,* 7 (suppl.1), 18.

2-Hurwitz, B.E., Bilsker, M.S., Parker, M., Hart, C.T. & Schneiderman, N. (2000). Heart
Structure and Function in Cardiac and Vascular Reactors to Stressful Challenge,
*Psychosomatic Medicine,* 62, 134.

3-Vallenilla, C.T., Parker, M., Kibler, J.L., Bilsker, M.S., Brownley, K.A., Llabre, M.M.,

Schneiderman, N., Motivala, S.J. & Hurwitz, B.E. (1999). Myocardial structural determinants of cardiovascular performance in response to speech stress. *Twentieth Annual Proceedings of The Society for Behavioral Medicine,* (pp. R-156) San Diego: Society of Behavioral Medicine.

4-M. Klapholz, I. Thomas, C. Eng, B.J. Iteld, G.A. Ponce, A.L. Niederman, M. Bilsker, J.T. Heywood, J.L. Pettis. Omapatrilat, a Novel Cardiovascular Agent, Improves Hemodynamics in Patients with Heart Failure. The Second Annual Scientific Meeting. Journal of Cardiac Failure, Vol. 4 #3, September 1998 supplement.

5-M.S. Nash, FACSM, P.L. Jacobs, M.S. Bilsker, and L. Parker. Circuit Resistance Training May Alter Catecholamine-Induced Cardiac Stress But Not LV Mass in Paraplegics. 1998 Annual Meeting of the American College of Sports Medicine (ACSM), submitted for publication in Medicine and Science in Sports and Exercise, 30:5, 1998.

6- Vallenilla, C.T., Hurwitz, B.E., Bilsker, M.S., Nagel, J.H., Kibler, J.L., Motivala, S.J., Gellman, M.D., & Schneiderman, N. (1997). Stroke volume validation of impedence cardiography compared with pulsed-Doppler echocardiography in healthy men and women. *Annals of Behavioral Medicine,* (suppl), S156.

7-Havranek EP, Thomas I, Smith WB, Ponce G, Bilsker M, Munger M, Mann K, Frangin G: Dose-related Beneficial Long-term Hemodynamic and Clinical Effects of Irbesartan in Heart Failure. 70th Scientific Sessions of the American Heart Association. Circulation, 96:8, I-1 to I-901, October 1997.

8-McKenney MG, Bilsker MS, Civetta JM, Hudson-Civetta JA, Wong C: Comparison of Cardiac Outputs and Estimates of Left Ventricular Filling Pressures Using Doppler Echocardiography and Right Heart Catheterization. Critical Care Medicine, 20:S70, April 1992.

9- De la Hera A, Castellanos A, Asch JA, Bilsker MS, Bauerlein EJ, Myerburg RJ: Reevaluation of an Electrocardiographic Index for the Diagnosis of Left Ventricular Hypertrophy in Presence of Left Anterior Fascicular Block. Proceedings from the XIV Interamerican Congress of Cardiology, 148, Page 44, Orlando, Florida. May 23-27, 1992.

10-De la Hera A, Castellanos A, Asch JA, Bilsker MS, Bauerlein EJ, Myerburg RJ: Reevaluation of an Electrocardiographic Index for the Diagnosis of Left Ventricular Hypertrophy in Presence of Left Anterior Fascicular Block. Clinical Research, 39:871A, 1991.

11-Joseph A. Asch, Martin S. Bilsker, Maureen H. Lowery, Anthony Lai, Donald Willis, Christina M. Asch, Robert J. Myerburg, Kenneth M. Kessler. Left Ventricular Hypertrophy in Pregnancy-

Induced Hypertension. University of Miami, Miami, Fl. <u>Circulation</u>. 84(4):II-51, Oct 1991.

12- W.I. Ganz, P. Smart, A. Serafini, A. Friden, <u>M. Bilsker</u>, M. Dewanjee, G. Sfakianakis. "Adjunctive    Role of Nuclear Medicine for Cardiac Pathology Seen on MR Images and Echocardiograms". <u>J Nucl. Med.</u> 31:934, 1990.

13- Jallad N, <u>Bilsker MS,</u>, Weidler D. "Monitoring Labetalol Reactivity with Echocardiography in Hypertensives During Exercise and at Rest". <u>J Clin. Pharm.</u> 30(1):92, 1 Jan 1990.

14- Jallad NS, <u>Bilsker MS</u>, Weidler DJ. "Acute and Chronic Effects of Moderate Dose Labetalol on Ventricular Function in Young and Elderly Hypertensives During Exercise and at Rest". <u>J Clin. Pharm.</u> 29:856, 1989.

15- William Ganz MD, Paul Smart MD, Aldo Serafini MD, <u>Martin Bilsker MD</u>, Mrinal Dewanjee PhD, Robert Rothbart MD. "Nuclear Medicine in the Investigation of Questionable Cardiac Masses Seen on MR Images and Echocardiograms". <u>Radiology</u> 73:482., 1989.

16- Papic M, Banovac K, <u>Bilsker MS</u>, Zakarija M. "Evidence for Hyperthyroidism in Clinically Euthyroid Patients on `Normal' T4 Replacement Therapy". <u>American Thyroid Association</u>, Sept. 1986.

17- Weidler DJ, Carg DC, NG KF, Kessler KM, <u>Bilsker MS</u>, Jallad NS, Singh S. "Pharmacokinetics and Efficacy of Pirmenol, A New Antiarrhythmic Drug. <u>Clinical Pharmacology Ther.</u> 35:281, 1984.

18- <u>Bilsker MS</u>, Echeverria HJ, Myerburg RJ, Kessler KM. "Usefulness of Echocardiography in the Evaluation and Management of Patients with Congestive Heart Failure". <u>Clinical Research</u> 31:169A, 1983.

19- <u>Bilsker MS</u>, Echeverria H, Kessler KM, Myerburg RJ. "Primary Diastolic vs. Systolic Dysfunction in Patients with Hypertensive Heart Disease and Congestive Heart Failure". <u>Clinical Research</u> 31:169A, 1983.

20- <u>Bilsker MS</u>, Echeverria H, Kessler KM, Myerburg RJ. "Prevalence of Pericardial Effusion in Patients with Congestive Heart Failure". <u>Clinical Research</u> 31 168A, 1983.

CONFERENCE PRESENTATIONS:

1- Hurwitz, B.E., Bilsker, M.S., Hart, C.T. & Schneiderman, N. (2000). Cardiac and Vascular Stress

Reactor Type: Heart Structure, Low-Flow Circulatory Status, and Preclinical Cardiovascular Risk. <u>Paper presented at the Sixth International Congress of Behavioral Medicine</u>, Brisbane, Queensland, Australia.

2- Hurwitz, B.E., Bilsker, M.S., Parker, M., Hart, C.T. & Schneiderman, N. (2000). Heart Structure
and Function in Cardiac and Vascular Reactors to Stressful Challenge. <u>Paper presented at the 58th Annual Scientific Meeting of the American Psychosomatic Society</u>, Savannah, GA.

3- Vallenilla, C.T., Parker, M., Kibler, J.L., Bilsker, M.S., Brownley, K.A., Llabre, M.M., Schneiderman, N., Motivala, S.J. & Hurwitz, B.E. (1999). Myocardial structural determinants of cardiovascular performance in response to speech stress. <u>Paper presented at the 20th Annual Meeting of the Society of Behavioral Medicine</u>, San Diego, CA.

4- Vallenilla, C.T., Hurwitz, B.E., Bilsker, M.S., Nagel, J.H., Kibler, J.L., Motivala, S.J., Gellman, M.D., & Schneiderman, N. (1997). Stroke volume validation of impedance cardiography compared with pulsed-Doppler echocardiography in healthy men and women. <u>Paper presented to the eighteenth annual proceedings of the Society of Behavioral Medicine</u>, San Francisco, CA.

Other Professional Items

    <u>Audio - Tapes</u>

        Medical Portfolio, 5/7/83, Pulmonary Hypertension.

<u>PROFESSIONAL</u>

GRANTS

        Broward Heart Association, 1982-1989

        "Clinical Multi-Center Evaluation of
Nifedipine GITS in Reducing the Total
Ischemic Burden and Suppressing the
Circadian Ischemic Surge in Patients
with Symptomatic Coronary Artery Disease"
(Pfizer Labs)
Principal Investigator: Martin Bilsker, MD
$28,000

        The Multi-Center Outpatient Evaluation of the
Safety and Efficacy of Spirapril (TI 211-950)
in the Treatment of Patients with Congestive

8

Heart Failure - (Clinical Sciences)
Principal Investigator: Martin Bilsker, M.D.
$30,000

Amlodipine Cardiovascular Community Trial
(ACCT) - (Pfizer Labs)
Principal Investigator: Martin Bilsker, M.D.
$30,000

Irbesartan in CHF
Principal Investigator: Martin Bilsker, M.D.
$200,000

NEP/ACE in CHF (Bristol-Myers-Squibb)
Principal Investigator: Martin Bilsker, M.D.
$150,000

NEP/ACE in CHF (Bristol-Myers-Squibb)
with Dr. Sequeira
$200,000

Azimilide in Atrial Fibrillation
Principal Investigator: Martin Bilsker, M.D.
$35,000

NEP/ACE and lisinopril in CHF
with Dr. Sequeira
$35,000

A Randomized, Double-Blind, Placebo-Controlled, Two Year
Parallel Group Study of the Efficacy and Safety of GI 198745
0.5 mg in the Treatment and Prevention of Progression of Benign
Prostatic Hyperplasia (Glaxo Wellcome, Inc)

EDITORIAL RESPONSIBILITIES:  Reviewer, Journal of the American
College of Cardiology 1992.

PROFESSIONAL SOCIETIES AND MEMBERSHIPS

Fellow                    American College of Cardiology

Member                    American College of Physicians

9

| | |
|---|---|
| Member | American Society of Echocardiography |
| Member | American Heart Association |
| Member | Greater Miami Society of Echocardiography |

## HONORS AND AWARDS

Harry Botwick Award for Superior Performance
as a Cardiology Fellow, June 1982

## OTHER PROFESSIONAL ACTIVITIES

Organized or Co-Organized Meetings of Greater Miami
Echocardiography Society, 1982, 1983, 1985; invited
speaker at all biannual meetings.

Faculty Participant, Department of Medicine Review

Course "Fundamental and Clinic Aspects of Internal
Medicine", 1983 - 1993

Faculty Participant, University of Miami School of
Medicine "Teaching Conference in Clinical
Cardiology", 1983 - 1993

Faculty Participant, University of Miami School of
Medicine "Tutorial Courses of Instruction in Acute
Cardiac Care for the Practicing Physician", 1982 -
Present (Seven Courses Each Year)

Faculty Participant, Department of Medicine,
"Review Course for Certification in Internal
Medicine", 1985-1986

Faculty Lectures in Mechanisms of Disease for
Sophomore Medical Students, 1983-1988; CPC
1986-1992

Faculty Lectures for Mechanisms of Disease, PhD. -
M.D. Students, 1983-1988

CURRENT TEACHING RESPONSIBILITIES (See also Professional Activities)

Sophomore Physical Diagnosis Course (1983-1995)

Cardiology Ward Attending 1 month yearly.

Coronary Care Unit Attending on-call periods.

Cardiology Consult Attending 1-2 months yearly

Cardiology Clinic Attending 7-9 months yearly

Echo Lab Attending 12 months/year

Senior Cardiology Elective - Lecturer 1986-1998

Noon Echocardiography Lecture Series for Fellows 1983 -1998

Tutorial Courses in Acute Cardiac Care - lecturer 1985 - 1998

Preceptorship in Transesophageal Echo for outside cardiologists 1992 - Present.

THESIS & DISSERTATION ADVISING (chairman or committee member; topic; student name; date):  Committee Member 1997 1998 - Nadar Jallad, PhD., Candidate in Clinical Pharmacology 1988-1989 (see abstracts 6,7) Candice

DEPARTMENTAL ADMINISTRATIVE AND COMMITTEE RESPONSIBILITIES

Director, Cardiology Clinic, Jackson Memorial Hospital,
April 1983 - Present

Director, Echocardiography/Doppler Laboratory,
Jackson Memorial Hospital, 1985 - Present;
Assistant Director, 1982 - 1985

EXTRA-DEPARTMENTAL ADMINISTRATIVE AND COMMITTEE RESPONSIBILITIES

11

Department of Medicine Representative, Medical Sciences
Subcommittee for the Protection of Human Subjects,
1987 - Present (12 Hours/Month)

Advisory Committee, Program in Diagnostic Medical
Sonography, JMH
Admissions Committee, Program in Diagnostic Medical
Sonography, JMH

## COMMUNITY SERVICES

Member, Scientific Careers Committee, American Heart
Association of Greater Miami, 1987-Present; Chairman
6/88 - 9/90

Educational Council, Massachusetts Institute of
Technology; Interview and Advise High School Applicants
to M.I.T.  1985-present.

Active Member - Sierra Club

12



**April Kaссаuеr, Ph.D.**
Licensed Psychologist
515 NorthBridge Center
Pavilion Suite 300
West Palm Beach, FL 33401
561-650-2233

Name  Delores Silvestri                                    dob; 8 / 23/ 31

Dot;   1 / 28/ 03                                          dor; 8 / 24 / 03

Psychological Consultation

Ms Silvestri was referred for a forensic related issue and was referred by a colleage since I spent 12 ½ years as a court psychologist in Palm Beach County Courthouse and now am doing further assignments in my private practice over the last 9 months.

Behavioral Observations

Ms Silvestri was brought to the office with her daughter Shannon Materio.  Initially they were seen together and then later the mother was seen privately.  The daughter provided a history of a federal conviction with her father 20 yrs ago requiring 18 months incarceration, and then more recently in 2000,  Mr Silvestri was convicted on 23 counts relating to financial transactions.

Since then the father's health has deteriorated and he recently underwent cardiac bypass surgery.  Because of this, his family fears that he will be sent to a prison with special medical facilities which will be far away from Miami. The family currently only gets to visit for 2 hrs on Sat morning so they have to leave WPB hours earlier.  Once he is out of state this will be even more distressing since they  will no longer be able to see him each weekend.  The family is concerned about the failing health and age (71) of both parents.  The family has spent their life's savings on attorneys fees.  Ms Silvestri now lives on her $500 social security check and the family will have to sell her home.  She has high blood pressure, cholesterol and hormone problems all requiring medications which she cannot afford.

Ms Silvestri is undergoing a major depressive disorder since her husband's conviction.  She raised 5 children and nephews and nieces.  Now she is alone.  She feels suicidal.  There are ideations (thoughts, intent and plan) of overdosing pills.  (i.e. "I will save them up" for higher potency).  There are bouts of uncontrollable crying.  Her hands shake with tremors.  She is angry with the system.  She feels her children would be better off without her since she feels like she is a burden.  Her daughter has 3 children and works full time with her husband.  Ms Silvestri did not eat for months after the trial.  She has lost 9 lbs and looked a bit gaunt.  Ms Silvestri has at times has been abusing alcohol to minimize her distress.  She often feels nausea in the morning when she goes to brush her teeth and wants to "regurgitate".  She gets dizzy spells.  Her doctor gave her 4 anxiety/"nerve" pills of Zanax they believe. .

Further psychiatric medications, unfortunately, cannot be prescribed safely since she could be at heightened vulnerability for a suicide attempt. Supportive counseling would also be recommended but they have no insurance to cover this. Ms Silvestri states she lives for her 9 yr old grandson "PJ" but she feels by ago 10 he'd get over her suicide attempt if she were to do so. Ms Silvestri is at heightened risk for a successful suicide due to the ideation, plan and intent, depression, anxiety, anger, desire for retaliation, low self esteem and age (there is little to hope for since she realizes her husband may die in jail). Ms Silvestri evidenced no antisocial behaviors so should not pose any threat to society. Subsequently due to the severity of symptoms any legal mitigating facts to minimize her husband's sentence could in essence save her life.

DIAGONSTIC IMPRESSION:    MAJOR   DEPRESSION,   SINGLE   EPISODE, MODERATELY SEVERE.

Please do not hesitate to contact me if I can be of any further assistance.

April Kassover, P  h  D
Lic PY 4158



# PALM BEACH MEDICAL GROUP
*Quality Health Care Through Teamwork*

SERVING THE COMMUNITY FOR 50 YEARS

November 11, 2002

Ms. Jeanne Baker
Attorney At Law, P.A.
2937 SW 27 Avenue
Suite 202
Miami, FL 33133

Re:    Joseph Silvestri

Dear Ms. Baker:

I have been Joseph Silvestri's primary care physician since September 5, 1995. He has a fairly complicated past medical history with multiple medical problems requiring many medications and close attention to detail.

Mr. Silvestri's medical history includes atheroschlerotic cardiovascular disease for many years. This was documented in his history by the abnormal cardiolyte stress test done in September 15, 1995. The test revealed rather extensive areas of scar and ischemia in the left ventricle, a reasonable aerobic performance for his age, and a hypertensive response. A cardiac catherization done in October 1995 revealed a total occlusion of the right coronary artery with collaterals from the proximal right coronary artery and left anterior descending circumflex system perfussing the area of the right heart beyond the total occlusion. The left coronary angiogram revealed diffused plaques throughout the coronary tree but no significant stenosis. His history also includes thrombosis of the deep venous system of the right leg with pulmonary embolism and recurrence, which has required for him to be treated with chronic anticoagulation with Coumadin (warfarin) for life. He also has a history of hypertension and hyperlipdemia, which needs to be aggressively treated not only with dietary manipulation but also with medications. These medications require close monitoring with blood tests to assess for potential liver and muscle toxicity. His obesity affects his health in general. He has a history of osteoarthritis in the lumbosacral spine and both knees, which required surgery replacing the right knee. He has a past history of sciatica syndrome and hematuria (blood in the urine). Fortunately the work up did not reveal tumors or cancers in the genitourinary tract. This condition requires urologic evaluation once a year and more often if clinically indicated.

Mr. Silvestri also suffers from gastroesophageal reflux disease, which causes considerable heartburn at times and has a history of skin cancers specifically basal cell carcinoma, which requires a visit to the dermatologist every six months. He has benign prostatic hypertrophy and also hypoglycemia for

4601 North Congress Avenue ▲ West Palm Beach, Florida 33407
(561) 840-4600 ▲ Fax (561) 840-4678

which he should avoid concentrated sweets and eat frequent small meals. He has a history of renal cysts and calcified pleural plaques in the thoracic cavity probably from previous asbestos exposure. This requires close monitoring with chest x-rays at least yearly and/or cat scan of the thorax if clinically indicated.

Mr. Silvestri will need monitoring monthly for his prothrombin time/INR and adjust the dose of Coumadin (warfarin), an anticoagulant, when clinically indicated. He should avoid the risk of situations that may expose him to any type of injury since his blood may not clot properly. Especially if trauma to the head is sustained, the patient can develop an intracraneal bleed that may go unnoticed for some time and may cause severe neurologic problems even death. I would recommend monitoring of his chemistry profile with the specific attention to the liver function test, cpk, and lipid panel every two months for the first year then every three to four months for the second year and if all remains stable every six months thereafter. This is to monitor for the potential liver and muscle toxicity from his cholesterol lowering medication Lovastatin. The chemistry panel would also help monitor for the potential effects of the electrolytes and kidney function that are seen with furosemide and lisinopril. The dosage of his cholesterol lowering medication should be adjusted to maximize lowering his LDL level and total cholesterol while minimizing its toxicity. Mr. Silvestri should be seen by a primary care physician (an internist or family physician) every three months for routine follow up visits and also for his yearly comprehensive evaluation for which he is due now. This should include a comprehensive chemistry panel, complete blood count, urine analysis, lipid profile, createnine phosphokinase, prostatic specific antigen, fecal occult blood on three samples, electrocardiogram, and a follow up chest x-ray. This x-ray should be compared to his previous ones monitoring for changes on the pleural plaques previously noticed. He may also need a cat scan of the thorax for further delineation. I also recommend a yearly influenza vaccine and a pneumonia vaccine every six years. The next pneumovax is due in the year 2005-2006. Dermatologically he is due for follow up for his skin cancers (basal cell carcinoma) and every six months thereafter. Note he is also due for a cardiologic evaluation now.

I am reviewing Mr. Silvestri's medication list provided to me by Ms. Baker and there are some differences from what he was being treated as an out patient in his last visit of April 18, 2002. As long as the patient's cardiovascular system, hypertension and his other medical problems are well controlled I see no major problems with the exception that Mr. Silvestri was on potassium supplement as an out patient and a potassium level should be monitored periodically and the dose adjusted when clinically indicated. Also, I would not recommend for him to take naproxen, Aleve, or any other nonsteriodal anti-inflammatory agents like aspirin or ibuprofen or the like because of its potential interaction with the Coumadin (warfarin) elevating its anticoagulant effect and run the risk of severe bleeding internal or external either from trauma or spontaneous. A situation like this could be detrimental to his health and if severe enough may lead to death.

If I can be of further assistance, please do not hesitate to contact me.

Sincerely,

Victor M. Molina, MD