UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 00-6309-CR-SEITZ (S)(S)

UNITED STATES OF AMERICA,

           Plaintiff,

v.

JOSEPH SILVESTRI,

           Defendant.
_____



GOVERNMENT'S RESPONSE IN OPPOSITION TO DEFENDANT'S
OBJECTIONS TO THE USE OF FRAUD FACTS IN DETERMINING
THE DEFENDANT'S GUIDELINES AND INCORPORATED MEMORANDUM OF LAW

    The United States of America, through its undersigned Assistant United States Attorneys, files this response in opposition to defendant Silvestri's objections to the use of fraud facts in determining his guidelines. For the reasons set forth below, the government submits that the defendant's objections should be overruled.

    Defendant contends that the guideline calculations in the presentence investigation report (PSI) are not based on the facts of the money laundering, for which the defendant was convicted, but rather on the facts of the underlying fraud. Defendant complains that the fraud facts should not be the basis for measuring the money laundering "harm" or for establishing the defendant's role in the offense in calculating the guidelines. The government will address both these objections in turn.



A.  **Amount of money laundered**

The defendant states that the amount of money to be considered in the calculations should be the amount of money laundering in which the defendant engaged, not the total fraud amount. Defendant argues that the only amount of money that the defendant can be held responsible for is the approximate $17 million which represents the total of the underlying substantive counts, and that the government must prove any higher amount being considered for the conspiracy.

It is well settled that, for purposes of upward adjustment of sentencing, the defendant in a money laundering conspiracy is responsible for not only the amounts that he handled himself but also for the amounts that he could reasonably have foreseen would be laundered in the conspiracy. U.S.S.G. 1B1.3(a)(1)(B); *United States v. Rivera-Rodriquez*, 318 F.3d 268, 273-74 (1st Cir. 2003).

At trial the government presented clear evidence that justifies between $20 and $35 million as the money laundering amount for which this defendant should be held responsible. After $56 million in fraud proceeds were taken from the victims in South Carolina by the Womack group, a large portion of those funds was transferred to South Florida, where the funds were deposited and laundered through a number of different bank accounts, including Gold Coast Check Cashing (GCCC), Alliance Trust, and Chemical Trust accounts at Admiralty Bank and Americas Resource account at Citibank. As was testified to by S/A Ronald Wise at the trial,

based upon his review of the bank records and the tracing of the investor checks, the total amount of investor funds which was deposited into the three accounts at Admiralty Bank was $17,182,066 (Wise, 5/31/02 at 49-54, 58-59). Further, the total of investor funds deposited into the Americas Resource account at Citibank was $20.9 million dollars, (Wise, 5/31/02 at 56-58), for a total amount of $38,082,066 being deposited/laundered through South Florida accounts. The deposit of this total amount of $38,082,066 serves as the benchmark for the determination of the defendant's liability for the funds laundered in furtherance of the money laundering conspiracy.

The testimony of Peggy Preston, Bruce Mahon, and William Burke at trial established that the defendant assisted the coconspirators in the opening of the Admiralty account as well as in maintaining them when problems arose. (Preston, 5/30/02 at 11-17; Mahon, 5/30/02 at 104-110, 118-19; Burke, 5/30/02 at 167-74). The defendant's assistance at Admiralty Bank--helping both Virgil Womack and Fred Morgenstern open up and maintain bank accounts through which Alliance Trust/Chemical Trust investor/victim checks were negotiated--allowed them to launder the ill-gotten monies from this fraud. The use of the Americas Resources account at Citibank was also foreseeable by the defendant, since the evidence presented at trial established that Citibank was opened by Fred Morgenstern in order to continue the laundering after concerns were raised with

the use of the Admiralty account, concerns which were brought to the attention of the defendant by the bank. During this time-indeed, throughout the conspiracy-the defendant continued to receive "commission" payments from U.S. Guarantee which corresponded to funds being generated by the fraud scheme and deposited into the Americas Resources account. Moreover, the jury convicted the defendant of a number of substantive money laundering transactions occurring into and out of the Americas Resources account, thereby demonstrating their finding of the defendant's direct participation in the use of the Citibank/Americas Resources accounts to launder fraud proceeds.[1]

The defendant also directed the laundering of the fraud proceeds that came to him as "commissions." The defendant instructed U.S. Guarantee in which names to issue the checks which were then overnighted to the defendant, after which the defendant clearly directed their deposit. The total amount that the defendant received and thereafter laundered was $1,521,000 dollars. (Tang, 5/28/02 at 37-38, 131-32; Turner, 5/29/02 at 52-60, 101-04; Wise, 5/31/02 at 120-43).

---

[1] Indeed, the jury convicted the defendant on all of the substantive money laundering counts with which he was charged, which included a variety of laundering transactions occurring over the life of the conspiracy. The nature of those transactions ranged from deposits to the Admiralty and Citibank accounts as well transfers from those accounts to other accounts in England and the Bahamas, thereby demonstrating the jury's finding the defendant was involved in all aspects of the money laundering conspiracy.

The defendant even opened bank accounts at AIBC[2] in the Bahamas, through which he laundered $538,070 dollars through his accounts. (Harrison, 6/4/02 at 17-18).

The defendant's reliance on *United States v. Christo*, 129 F.3d 578 (11th Cir. 1997), *United States v. Nolan*, 223 F.3d 1311 (11th Cir. 2000), and *United States v. Majors*, 196 F.3d 1206 (11th Cir. 1999) is irrelevant to the issues before this Court. Those cases simply stand for the proposition that in order for a money laundering transaction to occur, proceeds of specified unlawful activity must first be generated. These cases do not address the issue of calculating the defendant's responsibility in a money laundering conspiracy for purposes of the Sentencing Guidelines. Defendant seems to suggest that the government is confused in attempting to apply the fraud facts to the defendant's participation in the money laundering conspiracy.[3] To the contrary, the government's evidence proved beyond a reasonable doubt that at least $38 million dollars was deposited/laundered into bank accounts opened in furtherance of that conspiracy.

---

[2] AIBC was the bank in the Bahamas where coconspirators David and Fred Morgenstern opened and controlled the AFAC account, into which the majority of the fraud monies was transferred offshore from South Carolina and South Florida.

[3] Defendant contends that the amount of money for which the defendant should be held responsible is not the amount of money lost by victims of the fraud, which in this case would be over $56 million dollars; the government agrees with this proposition.

Therefore, the PSI guideline calculation holding the defendant responsible for between $20 to $35 million dollars in laundered funds is appropriate and the defendant's objection should be overruled.

**B.     Role in the Offense**

U.S.S.G. Section 3B1.1 provides for a four level increase if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive. Application Note 4 lists a number of factors that the court should consider: "the exercise of decision making authority, the nature of participation in the commission of the offense, the recruitment of accomplices, the claimed right to a larger share of the fruits of the crime, the degree of participation in planning or organizing the offense, the nature and scope of the illegal activity, and the degree of control and authority exercised over others." Further, as the Note explains, "there can, of course, be more than one person who qualifies as a leader or organizer" in any criminal activity.

Moreover, it should be noted that the second portion of 3B1.1(a) is in the disjunctive. Accordingly, other than finding that the defendant occupied a role of leader or organizer, the Court must also determine that the criminal activity involved five or more participants or that the operation was otherwise extensive.

6

*See United States v. Holland*, 22 F.3d 1040, 1045 (11th Cir. 1994); *United States v. Hall*, 996 F.2d 284, 287 (11th Cir. 1993).

The facts underlying the defendant's conviction clearly qualify him as a leader or organizer of the money laundering conspiracy. The defendant became a part of the conspiracy from the beginning. Once the fraud monies were generated in South Carolina, it was necessary for them to be laundered in order for them to appear to be legitimate funds. The defendant's actions set up the very mechanism which allowed the laundering of millions of fraud monies. The defendant contacted his old friend at Admiralty Bank and cleared the way for Virgil Womack to open accounts which were to be used, and were in fact used, to launder the fraud proceeds. The defendant also used his influence to get accounts opened for Fred Morgenstern at Admiralty Bank, through which millions more of fraud proceeds were laundered. Therefore the defendant's participation in the money laundering conspiracy was substantial since it was clearly him that made the decision to utilize Admiralty Bank.

The defendant, as well, recruited and directed a number of accomplices in the money laundering conspiracy. These would include the unwitting employees at Admiralty Bank, including Mahon, Burke, and the female employee who met with the defendant and Fred Morgenstern, and on defendant's urging opened the GCCC, Alliance and Chemical Trust bank accounts. In addition, the defendant

recruited U.S. Guarantee, which included Tang, Turner, and Franklin, among others, in the money laundering conspiracy. The defendant arranged for their receipt of approximately $3.5 million dollars of fraud proceeds which was laundered through their accounts in Arizona. From that over $1.5 million dollars was then issued as cashier's checks on the defendant's direction and to the payees he designated.

As was found in *United States v. Mesa*, 247 F.3d 1165, 1168-70 (11th Cir. 2001), cited by the defendant, a four level adjustment for leadership was appropriate where the court found that the defendant had directed the activities of at least three people in the drug conspiracy. Here the defendant directed far more individuals in the money laundering conspiracy.

The defendant's share of the fruits of the crime was substantial, well over a million dollars. And finally, the defendant's actions in recruiting U.S. Guarantee to insure the bonds for the fraud, the arrangements for payments of monies to both U.S. Guarantee and himself, the opening and maintaining of the accounts at Admiralty Bank, and even urging a victim to invest more money in the fraud clearly support the defendant's promoting the carrying on of the specified unlawful activity-the very crime for which this defendant stands convicted. Therefore, these facts, among the others that the government has referenced in its previous

pleadings, are appropriately considered by the Court in determining the defendant's role in the offense.

Although the government is not obligated to demonstrate that there were five or more participants involved in the criminal activity, it is clearly the case here. These would include Fred Morgenstern, Peggy Preston, Mark Weiss, Jason Crossen, Debbie and Michael Buccinna, Bruce Mahon, William Burke, Alvin Tang, Kenneth Turner, Kimberly Franklin, as well as Gary Christie (President of AIBC), among others.

There is also no question that the money laundering activity of which the defendant was an integral part qualifies as "otherwise extensive." The money laundering activity continued from the summer of 1999 until at least the early part of 2000. Indeed, the defendant continued to cause the transfer of Chemical Trust funds in January 2000, even after he became aware of Womack's arrest on January 7, 2000. Approximately $38 million dollars was received in South Florida, which was then negotiated at a number of local banks as well as check cashing stores. Much of the money was subsequently transferred offshore to other accounts where it was utilized for the personal benefit of the conspirators.

Defendant's reliance on *United States v. Alred*, 144 F.3d 1405 (11th Cir. 1998) is misplaced; it is simply inapplicable to the facts of this case. In *Alred*, the court found that a leadership adjustment was inappropriate because the evidence only established

that in the drug conspiracy the defendant only had a buyer/seller relationship, and was not a leader or organizer. *Id.* at 1422.

Given all the facts presented at trial, it is clear that the defendant qualifies as a four-level adjustment and the defendant's objection should be overruled.

**C.   Inclusion of Trafficante Organized Crime Family**

In a footnote, the defendant also states that he will move to strike at time of sentencing portions of the PSI which contains references to the Trafficante Organized Crime Family. The only basis contained in the defendant's motion is the complaint that this reference has nothing to do with the defendant and was contained in Count One, RICO Conspiracy, which was dismissed by the government prior to trial. The government opposes the removal of this information from the PSI.

Although the government dismissed Count One prior to proceeding to trial, the defendant was originally charged in the RICO Count, which contains all of the contested information. Therefore it is appropriate that the PSI describe the underlying facts of the RICO Conspiracy and the activities of his codefendants. *See United States v. Legrano*, 659 F.2d 17, 18 (4th Cir. 1981) (Rule 32 permits PSI to include information about indicted but not convicted crimes); *see also United States v. Jones*, 856 F.2d 146, 148-49 (11th Cir. 1988) (Not improper to include overall summary of the crime). Further, in its description

of these other activities, the PSI clearly delineates which codefendants were involved and does not inaccurately link the defendant to any of the challenged portions.

Rule 32(c)(1) of the Federal Rules of Criminal Procedure provides that the Court, at sentencing, "must rule on any unresolved objections to the presentence report." However, as the rule states, "[f]or each matter contraverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing." [4] *Id.*

The contested portions of the PSI are properly contained in the PSI since they are accurate statements concerning the crimes charged in the indictment. Therefore they should not be redacted from the PSI.

Other courts have considered challenges to the PSI such as this and have not required any challenged information to be redacted. See e.g. *United States v. Okoronkwo*, 46 F.3d 426, 438 (5th Cir. 1995) (Did not redact challenged portions, did not consider them for sentencing, appended copy of sentencing transcript to PSI); *United States v. Jones*, 856 F.2d 146 (11th Cir. 1988) (PSI contained overall information on conspiracy charge) *United States V. Johnson*, 767 F.2d 1259, 1276 (8th Cir. 1985) (Court

---

[4] Rule 32 also provides that a written record of the court's findings and determinations must be appended to the PSI.

has not obligation to strike material, only need state that not considering for sentencing). As these courts recognized, Rule 32 only requires the court to state whether or not it was considering the challenged portion in imposing sentence.

Although the PSI in this instance makes it abundantly clear which criminal activity this defendant participated in, the defendant's concerns can simply be resolved by appending the sentencing transcript to the PSI as was done in *Okoronkwo*. Rule 32 only requires the Court to make a clear statement as to whether the challenged information is being considered in imposing sentence and does not require redaction of the information.

**CONCLUSION**

WHEREFORE, for all the foregoing reasons as well as those to be raised at the sentencing, the government respectfully requests that this Honorable Court overrule the defendant's objections to the PSI.

Respectfully submitted,

MARCOS DANIEL JIMENEZ
UNITED STATES ATTORNEY


By: *Diana W. Fernandez*
DIANA L.W. FERNANDEZ
ASSISTANT UNITED STATES ATTORNEY
Court I.D. #A5500017
500 East Broward Boulevard
Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Fax: (954) 356-7230


By: *[signature]*
JAMES R. PAVLOCK
SENIOR TRIAL ATTORNEY
DOJ/CRIMINAL DIVISION
Court I.D. #A5500657
500 East Broward Blvd., Suite 700
Fort Lauderdale, FL 33394
Telephone: (954) 356-7392
Fax: (954) 356-7230

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was faxed and mailed to the below named on this 7th day of May, 2003, to

Jeanne Baker, Esq.
2937 Southwest 27th Avenue, Suite 202
Miami, FL 33133-3703
Fax: (305) 445-9666

*Diana W. Fernandez*
DIANA L.W. FERNANDEZ
Assistant United States Attorney